Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RUDY'S BARBERSHOP HOLDINGS, LLC, *et al.*,[1] | Case No. 20-10746 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 10** |

### INTERIM ORDER PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507
### (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING (A) LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN PREPETITION LENDERS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") pursuant to sections 105(a), 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rules 2002-1(b) and 4001-2 of the Local Bankruptcy Rules (the "**Local Rules**") for the United States Bankruptcy Court for the District of Delaware (this "**Court**"), *inter alia*, requesting, among other things:

---

[1] The Debtor in these cases, along with the last four digits of their federal tax identification number, are (i) Rudy's Barbershop Holdings, LLC (3198); Rudy's Barber Shop, LLC (6037); Rudy's Portland, LLC (7237); Rudy's Southeast, LLC (5113); Rudy's Hollywood, LLC (2941); and Rudy's New York, LLC (7034). The Debtors' headquarters is located at 1605 Boylston Avenue, Suite 2020, Seattle, Washington 98122.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(1)     authorization for the Debtors to obtain up to $1,749,050 (the "**DIP Commitment**") in senior secured postpetition financing on a superpriority basis (the "**DIP Facility**") pursuant to (and in accordance with the terms of) that certain *Superpriority Debtor-In-Possession Secured Promissory Note,* by and among the Borrower, as the borrower, RBS Salon Holdings, Inc. (in such capacity, the "**DIP Lender**"), on the terms and conditions substantially in the form annexed hereto as **Exhibit A** (as the same may be amended, restated, amended and restated, supplemented, waived, extended, or otherwise modified from time to time, the "**DIP Loan Agreement**," and the DIP Loan Agreement, together with any other related agreements, budgets, documents, security agreements, or pledge agreements, including the Interim DIP Order and the Final DIP Order, collectively, the "**DIP Loan Documents**"), which DIP Facility shall be available as a multi-draw term loan (the "**DIP Loan**") to the Borrower and the other Debtors upon entry of this interim order (the "**Interim DIP Order**") and satisfaction of the other conditions set forth in the DIP Loan Documents in an initial amount not to exceed $715,000.00 (the "**Initial DIP Loan**"), and the remainder of the DIP Facility available upon entry of the Final DIP Order and satisfaction of the other conditions set forth in the DIP Loan Documents;

(2)     authorization for Rudy's Holdings ("**Borrower**") and the other Debtors to enter into the DIP Loan Agreement and the other DIP Loan Documents and to take such other and further acts as may be required in connection with the DIP Loan Documents;

(3)     authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Loan Documents, including, without limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, or other fees, costs, expenses, charges, and disbursements

EAST\173427356.2EAST\173427356.4

of the DIP Lender (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, including, without limitation, any and all obligations in connection with any interest rate, currency swap, or other hedging agreement or arrangement, in each case, to the extent constituting obligations of any kind under the DIP Loan Documents (such obligations, the "**DIP Obligations**") subject to the terms of this Interim DIP Order;

(4)　　authorization for the Debtors, immediately upon entry of this Interim DIP Order and the closing under the DIP Loan Documents, to use proceeds of the Initial DIP Loan as expressly provided in the DIP Loan Documents and solely in accordance with this Interim DIP Order and the applicable Approved Budget (*as defined below*) (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) to: (A) pay costs, premiums, fees, and expenses incurred to administer or related to the above-captioned cases (collectively, the "**Cases**") or in connection with the DIP Facility; and (B) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents);

(5)　　granting and approving superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lender in respect of all DIP Obligations, subject to the Carve-Out (*as defined below*) and Permitted Liens (*as defined below*);

(6)　　granting the DIP Lender valid, enforceable, non-avoidable, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including,

EAST\173427356.2EAST\173427356.4

without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code and defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the relative rankings and priorities set forth herein;

(7)     authorizing the Debtors to use, among other things, solely in accordance with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the limitations provided herein, any Cash Collateral in which any of the Prepetition Secured Parties (*as defined below*) may have an interest, and granting adequate protection to the Prepetition Secured Parties solely to the extent of any postpetition diminution in the value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, as a result of (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral as set forth in this Interim DIP Order, (iii) the subordination of the Prepetition Secured Note Obligations (*as defined below*) and the Demand Loan Obligations to the Carve-Out and DIP Obligations, (iv) any other diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (v) the priming of the Prepetition Liens to the extent set forth herein, and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "**Diminution in Value**");

(8)     the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim DIP Order and the other DIP Loan Documents;

EAST\173427356.2EAST\173427356.4

(9)     subject to entry of a final order granting the relief requested in the Motion on a final basis (the "**Final DIP Order**") waiving the Debtors' ability to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral, and (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(10)    this Court waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim DIP Order;

(11)    scheduling a final hearing on the Motion (the "**Final Hearing**") to consider entry of the Final DIP Order granting the relief requested in the Motion on a final basis, and approving the form of notice with respect to the Final Hearing; and

(12)    granting the Debtors such other and further relief as is just and proper.

The interim hearing on the Motion having been held by this Court on April 6, 2020 (the "**Interim Hearing**"), and upon the record made by the Debtors at the Interim Hearing, including the Motion, the First Day Declaration; any exhibits in connection with the foregoing, and the filings and pleadings in these Cases, the Court having found that the interim relief requested in the Motion is fair and reasonable and is in the best interests of the Debtors, the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "**Estates**"), their stakeholders and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the orderly liquidation and preservation of the value of the Debtors' Estates; it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their Estates pending the Final Hearing; and appropriate notice of the Motion, the interim relief requested therein, and the Interim Hearing (the "**Notice**") having been given under the

EAST\173427356.2EAST\173427356.4

circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules on: (i) the Office of the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) DLA Piper LLP (US), counsel to the DIP Lender; (vi) counsel to the Prepetition Lenders; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (vii) any other party in interest entitled to notice of the Motion(collectively, the "**Notice Parties**"); and the opportunity for an interim hearing on the Motion was appropriate and no other notice need be provided under the circumstances; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    <u>Petition Date</u>.  On April 2, 2020 (the "**Petition Date**"), each Debtor filed a voluntary petition (each, a "**Petition**") under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in any of the Cases.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

EAST\173427356.2EAST\173427356.4

B.      _Jurisdiction and Venue_.  This Court has jurisdiction over these Cases, the Debtors, property of the Debtors' Estates and this matter under 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference from the United States District Court for the District of Delaware_, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.      _Committee Formation_.  As of the date hereof, no official committee of unsecured creditors under section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Cases.

D.      _Notice_.  The Notice was given in the manner described in the Motion.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, and the relief granted under this Interim DIP Order constitutes sufficient notice and the Notice complies with Bankruptcy Rule 4001 and the Local Rules.

E.      _Parties' Acknowledgments, Agreements, and Stipulations_.  In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender and the Prepetition Secured Parties to agree to provide, or consent to, the DIP Facility, the use of Cash Collateral, and subordination of the Prepetition Liens to the Carve-Out, as provided herein, and as a condition to providing financing under the DIP Facility and consenting

EAST\173427356.2EAST\173427356.4

to the use of Cash Collateral as set forth in this Interim DIP Order, subject to the rights of any committee appointed in these Cases or other parties in interest (other than the Debtors) set forth in Section 5.10 of this Interim DIP Order, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows:

(i) <u>Prepetition Secured Notes</u>. Rudy's Holdings, as borrower, and Northwood Ventures LLC ("**Northwood Ventures**"); Northwood Capital Partners LLC ("**Northwood Capital**"), PCG-Ares Sidecar Investment LP ("**PCG**"), Partnership Capital Growth III Main Blocker, LP ("**Blocker**"), Partnership Capital Growth Investors III Direct AIV, L.P. ("**Direct**"), and Partnership Capital Growth Investors III Blocked AIV, L.P. ("**Blocked**" and together with Northwood Ventures, Northwood Capital, PCG, Blocker and Direct, "**Prepetition Lenders**"), as lenders, are parties to those certain Subordinated Secured Convertible Promissory Notes dated between October 17, 2017, and February 22, 2019 (collectively, the "**Prepetition Secured Notes**" and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lenders with respect to the Prepetition Secured Notes, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "**Prepetition Secured Notes Documents**"). The Prepetition Secured Notes are secured by a subordinated first priority security interest (the "**Prepetition Secured Note Liens**") in all assets of the Company (the "**Prepetition Secured Note Collateral**"). As of the Petition Date, the outstanding balance due on the Prepetition Secured Notes was $2,662,547.32 (collectively, the "**Prepetition Secured Note Obligations**").

EAST\173427356.2EAST\173427356.4

(ii)     Prepetition Demand Loan.  On March 20, 2020, the Prepetition Lenders, as lenders, and Rudy's Holdings, as borrower, entered into a Senior Secured Demand Loan Agreement (the "**Demand Loan Agreement**", and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lenders with respect to the Prepetition Secured Notes, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "**Demand Loan Documents**"), whereby the Prepetition Lenders advanced $200,000.00 to the Company (the "**Demand Loan**").  The Demand Loan bears interest at 15% per annum and is secured by a lien (the "**Demand Loan Liens**") on all assets of Rudy's Holdings (collectively, the "**Demand Loan Collateral**").  As of the Petition Date the outstanding balance due on the Demand Loan was $200,904.11 (the "**Demand Loan Obligations**").

(iii)    Prepetition Bridge Loan Facility. On March 24, 2020, Rudy's Holdings executed a Senior Secured Multi-Draw Term Promissory Note (the "**Bridge Note**" and, together with all other agreements, documents, and instruments executed and/or delivered with, to or in favor of the Prepetition Lenders with respect to the Prepetition Secured Notes, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements, documents, and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto, the "**Bridge Loan Documents**") in favor of RBS Salon Holdings, Inc. ("**RBS Holdings**" or the "**Bridge Lender**") to provide Rudy's Holdings with one or more loans in an aggregate principal amount not to exceed $250,000.00 (the "**Bridge Loan**").  The Bridge Loan is secured by a first priority security interest (the "**Bridge Loan Liens**", and together with the Prepetition Secured Note Liens and

EAST\173427356.2EAST\173427356.4

Demand Loan Liens, the "**Prepetition Liens**") in all assets of the Company and is guaranteed by all of the Debtor subsidiaries (the "**Bridge Loan Collateral**", and together with the Prepetition Secured Note Collateral and Demand Loan Collateral, the "**Prepetition Collateral**"). The Bridge Loan matured on March 31, 2020 and bears paid in kind ("**PIK**") interest at 10% per annum, compounding $376.28 in interest. As of the Petition Date, the outstanding balance due on the Bridge Loan was $237,295.93, including interest (the "**Bridge Loan Obligations**" and together with the Prepetition Secured Note Obligations and the Demand Loan Obligations, collectively, the "**Prepetition Secured Obligations**").

(iv)     Prepetition Secured Obligations. The Prepetition Secured Obligations owing to the Prepetition Lenders and Bridge Lender (collectively, the "**Prepetition Secured Parties**") constitute legal, valid, and binding obligations of the Debtors and their applicable affiliates, enforceable against them in accordance with their respective terms (other than in respect of any insolvency laws), and no portion of the Prepetition Secured Obligations owing to the Prepetition Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(v)     Prepetition Collateral. To secure the Prepetition Secured Obligations, the Debtors entered into certain guaranty and collateral agreements and certain other security documents governing the Prepetition Secured Parties' respective security interests in the Prepetition Collateral. Pursuant to the Prepetition Secured Note Documents, Demand Loan Documents, and Bridge Loan Documents (collectively, the "**Prepetition Loan Documents**"),

EAST\173427356.2EAST\173427356.4

and on the terms set forth therein, the Debtors granted to the Prepetition Secured Parties the Prepetition Liens on the Prepetition Collateral.

(vi)  <u>Prepetition Liens</u>.  The Prepetition Liens granted to the Prepetition Secured Parties constitute legal, valid, binding, enforceable, and perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(vii)  <u>No Challenges/Claims</u>.  No offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors and their Estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code) objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.   The

Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(viii) Indemnity. The DIP Lender has acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and consent to the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens (*as defined below*), and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the Prepetition Secured Parties and the DIP Lender shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from such parties' gross negligence or willful misconduct. No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph E(viii), in the Prepetition Loan Documents, or in the DIP Loan Documents, to the Debtors' obligation to indemnify and/or hold harmless the DIP Lender, as the case may be.

(viii) (ix) Sale and Credit Bidding. The Debtors admit, stipulate, acknowledge, and agree that, in connection with any sale process or sale authorized by the Court, (i) the DIP Lender and (ii) subject to the entry of a Final DIP Order and to the rights preserved in Section 5.10, the Prepetition Secured Parties, or any assignee or designee of the foregoing, shall have the right to credit bid for the entirety (or any portion) of the Prepetition Collateral pursuant to section 363(k) of the Bankruptcy Code.

- 12 -

(x) Release.  Subject to Section 5.10 and entry of the Final DIP Order, each of the Debtors, their Estates, the Borrower and the Guarantors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Prepetition Released Parties**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to the Prepetition Secured Obligations or the Prepetition Loan Documents, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or common law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the Prepetition

- 13 -

~~Secured Obligations, the Prepetition Loan Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Prepetition Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim DIP Order.~~

(ix) ~~(xi)~~ <u>Cash Collateral</u>.   The Debtors admit, stipulate, acknowledge, and agree that all of the cash of the Debtors, wherever located, and all cash equivalents, including any cash in deposit accounts, now existing or after acquired proceeds of Prepetition Collateral, constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**").

<u>(x)</u>      <u>The Prepetition Secured Parties stipulate and agree that</u> <u>each of the Prepetition Secured Parties will not raise as a defense in any Challenge Proceeding or any adversary proceeding or contested matter challenging or otherwise objecting to the</u> <u>amount, validity, enforceability, priority, security or</u> <u>perfection of any of the Prepetition Secured Obligations the ability of creditors to file derivative suits on behalf of limited liability companies.</u>

F.      <u>Findings Regarding the Postpetition Financing and Use of Cash Collateral</u>.

(i)      <u>Postpetition Financing</u>.   The Debtors have requested from DIP Lender, and the DIP Lender is willing, subject to the terms of this Interim DIP Order and satisfaction of the conditions set forth in the DIP Loan Agreement, to extend the Initial DIP Loan on the terms and conditions set forth in this Interim DIP Order and the DIP Loan Documents, and subject to the entry and terms of the Final DIP Order and satisfaction of the conditions set forth in the DIP

Loan Agreement, to extend the remainder of the DIP Loan on the terms and conditions set forth in the Final DIP Order and the DIP Loan Documents, respectively.

(ii)     Need for Postpetition Financing and the Use of Cash Collateral.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility, in each case, as set forth in this Interim DIP Order, in order, among other things, to maintain, administer and preserve their businesses and maximize the value of their assets.  Without the ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender and the use of Cash Collateral as set forth in this Interim DIP Order, the Debtors, their Estates, and parties-in-interest would be immediately and irreparably harmed. Accordingly, the Debtors have an immediate need to obtain the postpetition financing and to use Cash Collateral as set forth in this Interim DIP Order to, among other things, minimize the disruption of their business operations and preserve and maximize the value of the assets of the Debtors' Estates to maximize the recovery to all creditors of the Estates.

(iii)     No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors assert in the Motion, the First Day Declaration, and demonstrated at the Interim Hearing, that it would be futile under the circumstances for the Debtors to seek, and they would not obtain, the necessary postpetition financing, let alone on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.  In light of the

EAST\173427356.2EAST\173427356.4

foregoing, and considering the futility of all other alternatives, the Debtors have reasonably and properly concluded, in the exercise of their business judgment, that the DIP Facility represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their Estates, and all of their stakeholders.

(iv)    Budget.  The Debtors have prepared and delivered to the DIP Lender and the Prepetition Secured Parties an initial budget (the "**Initial Budget**"), a copy of which is attached hereto as **Exhibit B**.  The Initial Budget reflects the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the sixth calendar week following the Petition Date (the Initial Budget and each subsequent budget approved by the DIP Lender and the Prepetition Secured Parties then in effect, an "**Approved Budget**").  The Debtors believe that the Initial Budget is reasonable under the facts and circumstances.  The DIP Lender and the Prepetition Secured Parties are relying upon the Debtors' agreement to comply with the terms set forth in the DIP Loan Documents, the Approved Budget, and this Interim DIP Order in determining to enter into the postpetition financing arrangements provided for herein and the DIP Loan Documents and to consent to the Debtors' use of Cash Collateral.

(v)     Certain Conditions to DIP Facility.  The DIP Lender's willingness to make the DIP Loan is conditioned upon, among other things:  (a) the Debtors obtaining Court approval to enter into the DIP Loan Documents and to incur all of the obligations thereunder, and to confer, as applicable, upon the DIP Lender all rights, powers, and remedies thereunder in each case as modified by this Interim DIP Order; (b) the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; (c) the DIP Lender being granted, as security for the prompt

EAST\173427356.2EAST\173427356.4

payment of the DIP Facility and all other obligations of the Debtors under the DIP Loan Documents, subject to the Carve Out and Permitted Liens, priming superpriority perfected security interests in and liens upon all property and assets of the Debtors, including, but not limited to, a valid and perfected security interest in and lien upon all of the now existing or hereafter arising or acquired assets, including: (i) assets constituting Prepetition Collateral, and (ii) any assets of the Debtors that, as of the Petition Date, were not otherwise subject to a valid, perfected, enforceable, and unavoidable security interest (collectively hereinafter referred to as the "**DIP Collateral**," and for avoidance of doubt, the DIP Collateral shall include, subject to the entry of the Final DIP Order, the proceeds (the "**Avoidance Proceeds**") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "**Avoidance Actions**")).

(vi) <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.   Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Interim DIP Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Bankruptcy Code section 364(e), and the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (*as defined below*) shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

G. <u>Adequate Protection</u>.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection against

any ~~Diminution in Value~~diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), to the extent set forth in this Interim DIP Order.

H.    <u>Sections 506(c) and 552(b)</u>.  Subject to the entry of the Final DIP Order, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral as set forth in this Interim DIP Order that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth in this Interim DIP Order, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve-Out, as provided herein, (c) the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out and DIP Liens, as provided herein, and (d) the consensual use of Cash Collateral consistent with the Approved Budget, which is adequate to provide for the anticipated expenses that may accrue during the period this Interim DIP Order shall be in effect, the terms of the  DIP Loan Agreement, and the terms of this Interim DIP Order, the DIP Lender (solely in its capacity as DIP Lender), the Prepetition Secured Parties shall receive (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (3) other statutory or equitable claims of, relief or surcharge against the Prepetition Collateral or DIP Collateral.

I.    <u>Good Cause</u>.  Good cause has been shown for the entry of this Interim DIP Order. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (1) minimize

~~EAST\173427356.2~~EAST\173427356.4

disruption to the Debtors' remaining operating businesses and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. The terms of the DIP Facility and this Interim DIP Order are fair and reasonable, reflect each Debtor's exercise of its business judgment, and are supported by reasonably equivalent value and fair consideration. The DIP Facility and this Interim DIP Order are the product of reasonable, arm's length, good faith negotiations between the Debtors, the DIP Lender and the Prepetition Secured Parties.

     J.    <u>Immediate Entry</u>. Sufficient cause exists for immediate entry of this Interim DIP Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections that were made (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled on the merits.

     K.    <u>Interim Hearing</u>. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required for the relief to be granted in this Interim DIP Order.

     Based upon the foregoing, and upon the record made before the Court at the Interim Hearing, and after due consideration and good cause appearing therefor;

     **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.    <u>Motion Approval</u>

EAST\173427356.2EAST\173427356.4

1.1    <u>Interim Approval of Motion</u>.  The Motion is granted on an interim basis to the extent provided in this Interim DIP Order.  Any objections to the entry of this Interim DIP Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein (except to the extent reserved to be presented at the Final Hearing), are hereby denied and overruled on the merits.

Section 2.    <u>DIP Facility Authorization</u>

2.1    <u>Authorization of DIP Facility</u>.

(a)    The Debtors are hereby authorized and empowered to immediately execute and deliver the DIP Loan Documents and to incur and perform the DIP Obligations, pursuant to the terms and conditions of the DIP Loan Documents and this Interim DIP Order, ~~in an aggregate principal amount not to exceed $1,749,050.00,~~ with the Initial DIP Loan<u>, in the amount of $715,000.00,</u> to be made upon entry of this Interim DIP Order and satisfaction of other conditions set forth in the DIP Loan Documents.  Subject to the entry of the Final Order, the Debtors are authorized to use the DIP Loan to repay the Bridge Loan Obligations (the "**Roll-Up Payment**").

(b)    The Debtors are hereby authorized to (i) borrow under the DIP Facility during the Interim Financing Period (*as defined below*) in accordance with, and for the purposes permitted by, the DIP Loan Documents, the Interim DIP Order and the Approved Budget and (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the  DIP Loan Agreement and other DIP Loan Documents, pursuant to the terms and conditions of this Interim DIP Order, the DIP Loan Agreement, and the other DIP Loan Documents, in each case during the period commencing on the date of this Interim DIP Order through and including the earlier to occur of (x) entry of the Final DIP Order and (y) a DIP

~~EAST\173427356.2~~<u>EAST\173427356.4</u>

Termination Event (*as defined herein*) (the "**Interim Financing Period**"). The Debtors shall use the proceeds of the DIP Facility solely in a manner consistent with the Approved Budget (subject to permitted variances and other exclusions set forth in the DIP Loan Documents) and the terms and conditions of the DIP Loan Documents and this Interim DIP Order.

    2.2    <u>Financing Documents</u>.

    (a)    <u>Authorization</u>. The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Loan Documents. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or common law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

    (b)    <u>Approval; Evidence of Borrowing Arrangements</u>. Upon effectiveness, the DIP Loan Documents shall evidence the DIP Obligations, which DIP Loan Documents and DIP Obligations shall be valid, binding, and enforceable against the Debtors, their Estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Cases (collectively, the "**Successor Cases**"), and their creditors and other parties-in-interest, in each case, in accordance with the terms of this Interim DIP Order and the DIP Loan Documents.

EAST\173427356.2EAST\173427356.4

(c)　　Payment of DIP Fees and Other Expenses.　Any and all fees and expenses payable pursuant to the DIP Loan Documents (collectively, any and all such fees and expenses, the "**DIP Fees**") are hereby approved and the Debtors are hereby authorized and directed to pay, currently in cash or as otherwise provided on the DIP Loan Documents and Approved Budget, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender incurred at any time, as provided by the DIP Loan Documents, Approved Budget and this Interim DIP Order in accordance with Section 5.13 hereof.　The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

2.3　　Indemnification.　The Debtors are authorized to indemnify and hold harmless the DIP Lender, and, solely in its capacity as such, its successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (each, an "**Indemnified Party**"), in accordance with, and subject to, the DIP Loan Documents, which indemnification is hereby authorized and approved.

2.4　　Postpetition Liens.

(a)　　Postpetition DIP Lien Granting.　To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively,

the "**DIP Liens**") upon all DIP Collateral, subject to the rankings and priorities set forth in Section 2.4(b) below.

EAST\173427356.2EAST\173427356.4

(b)     DIP Lien Priority in DIP Collateral.  The DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided*, *however*, that the DIP Liens on (A) the Prepetition Collateral (whether in existence on the Petition Date or hereafter arising) shall be subject and subordinate to the Carve-Out, Permitted Liens (as such term is defined in the DIP Credit Agreement), the Adequate Protection Liens (as defined herein); and (B) any unencumbered assets as of the Petition Date shall be subject and subordinate to the Carve-Out.

2.5     Superpriority Administrative Expenses.  Subject to the Carve-Out, all DIP Obligations now existing or hereafter arising pursuant to this Interim DIP Order, the DIP Loan Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), 546(c), 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final DIP Order, Avoidance Proceeds) (such superpriority administrative expense claim, the "**DIP Superpriority Claims**").

EAST\173427356.2EAST\173427356.4

Section 3.    Use of Cash Collateral

        3.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim DIP Order and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral as set forth in this Interim DIP Order until the occurrence of a DIP Termination Event (*as defined herein*); provided, however, that during the Remedies Notice Period (*as defined herein*) the Debtors may use Cash Collateral solely to pay expenses critical to the administration of the Debtors' Estates strictly in accordance with the Approved Budget, or as otherwise agreed by the DIP Lender and Prepetition Secured Parties, each in their sole discretion.

        3.2    Termination Date.  Upon the DIP Termination Date, without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral hereunder will automatically terminate; (2) Debtors shall be prohibited from using Cash Collateral for any purpose except to pay expenses critical to the preservation of the Debtors and their estates strictly in accordance with the Approved Budget, or as approved by DIP Lender and the Prepetition Secured Parties in their sole discretion.

Section 4.    Prepetition Secured Parties' Adequate Protection

        4.1    Adequate Protection Liens, Payment and Superpriority Claims.  The Prepetition Secured Parties are entitled, pursuant to sections 361, and 363(e) of the Bankruptcy Code and *nunc pro tunc* to the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate ~~Diminution in Value~~diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date.  On account of such adequate protection claims, the Prepetition Secured Parties are hereby granted the following, in each case

- 25 -

subject to the Carve-Out and Permitted Liens (collectively, the "**Adequate Protection**"):

(a) <u>Prepetition Secured Parties Adequate Protection Liens</u>. The Prepetition Secured Parties are hereby granted (effective and perfected upon the date of this Interim DIP Order and without the necessity of any Perfection Act) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral (the "**Adequate Protection Liens**"), which liens shall: (i) be subject and subordinate to the Carve-Out, Permitted Liens (as such term is defined in the DIP Loan Agreement) and the DIP Liens; and (ii) be senior to all other security interests in, liens on, or claims against the Prepetition Collateral, whether now existing or hereafter arising or acquired.

(b) <u>Adequate Protection Cash Payments</u>. Subject to reallocation or recharacterization as payment of principal under section 506(a) and (b) of the Bankruptcy Code <u>or disgorgement</u> as may be ordered by the Court in connection with a timely and successful Challenge pursuant to paragraph 5.10 herein, the Prepetition Lenders shall receive current payment in cash upon entry of this Interim Order in an amount equal to $50,000.00 (the "**Adequate Protection Payment**").

(c) <u>Adequate Protection Superpriority Claims</u>. The Prepetition Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**"), which Adequate Protection Superpriority Claims shall be allowed claims against each of the Debtors (jointly and severally), with priority (except they shall be junior to the Carve-Out and as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors, other than the DIP Superpriority Claim, now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the

Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment. The Adequate Protection Superpriority Claims shall be *pari passu* with each other and be payable from and have recourse to all pre- and post-petition property (including all claims and causes of action) of the Debtors, subject to the Carve-Out.

Section 5.  Provisions Common to DIP Facility and Use of Cash Collateral

       5.1  Postpetition Lien Perfection.

            (a)  This Interim DIP Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution(s) party to a Control Agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Lender or any Prepetition Secured Parties, as applicable, shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Lender or the Prepetition Secured Parties, as applicable, are authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Loan Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Interim DIP Order

EAST\173427356.2EAST\173427356.4

notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law. The DIP Lender and the Prepetition Secured Parties, as applicable, may choose to file, record, or present a certified copy of this Interim DIP Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Interim DIP Order in accordance with applicable law. Should the DIP Lender or Prepetition Secured Parties, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Interim DIP Order.

(b)     Nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens. By virtue of the terms of this Interim DIP Order, to the extent that the DIP Lender or Prepetition Secured Parties, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Interim DIP Order without further action by the DIP Lender or Prepetition Secured Parties, as applicable.

(c)     Except as provided in section 5.9 herein and with respect to the Carve-Out and Permitted Liens, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in

- 28 -

x

x

x

any of these Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their Estates, any trustee, or any other estate representative appointed or elected in these Cases or any Successor Cases and/or upon the dismissal of any of these Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise; or (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

        5.2    <u>Amendments to DIP Loan Documents</u>.  Subject to the terms and conditions of the applicable DIP Loan Documents, the DIP Lender may waive any provisions or conditions contained in the DIP Loan Documents, without further approval of the Court; *provided* that Debtors and the DIP Lender may make amendments, modifications, or supplements to any DIP Loan Document shall be subject to an order of this Court authorizing the same.  Any amendments, modifications, or supplements to any DIP Loan Documents that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Loan Documents (collectively, the "**Material DIP Amendments**"), shall be filed with the Court, and subject to notice and an opportunity for a hearing, and subject to notice and an opportunity for a hearing, in advance of the effective date of such Material DIP Amendments, and the Debtors shall provide prior written notice of the Material DIP Amendment to (i) counsel for each of the Prepetition Secured Parties, (ii) counsel to the Committee, or, in the event no such Committee is appointed at the time of such Material DIP Amendment, the twenty (20) Largest Unsecured Creditors, and (iii) the U.S. Trustee; *provided, further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP

EAST\173427356.2EAST\173427356.4

Amendment subject to a timely and unresolved objection must be approved by the Court.

        5.3    <u>DIP Termination Event</u>.  The occurrence of one or more of the following shall constitute a "**DIP Termination Event**" (unless waived in writing by the DIP Lender and the Prepetition Secured Parties): (i) any "Event of Default" as that term is defined in the DIP Loan Agreement; (ii) any failure to meet or satisfy any Milestone (as defined in the DIP Loan Agreement) in accordance with the DIP Loan Agreement; (iii) the Maturity Date under the DIP Loan Agreement; (iv) Debtors' failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Interim DIP Order; (vi) Debtors, without the consent of Prepetition Secured Parties, seek the use of Cash Collateral other than in accordance with the terms of this Interim DIP Order; (vii) the DIP Loan Documents are terminated, or if this Interim DIP Order or DIP Loan Documents are modified in a manner adverse to Prepetition Secured Parties, without Prepetition Secured Parties' prior written consent; (viii) ~~the DIP Lender's breach its obligation to make a committed advance as required to be made by the DIP Lender pursuant to the terms of this Interim DIP Order or DIP Loan Documents; (ix)~~ entry of any order authorizing any party in interest to reclaim any of the DIP Collateral, granting any party in interest relief from the automatic stay with respect to the DIP Collateral, or requiring that Debtors turnover any of the DIP Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Secured Obligations; (~~x~~ix) any Case is converted to a case under chapter 7 of the Code; (~~xi~~x) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtors' businesses is appointed in any Case; (~~xii) commencement~~xi) any ruling in favor of the plaintiff or movant of an adversary proceeding or contested matter challenging or otherwise objecting to the extent, validity or priority of any Prepetition Secured Obligations and/or the Prepetition Liens; (~~xiii~~xii) the date that is twenty-five (25) days following

the Petition Date if a Final DIP Order is not entered in form and substance acceptable to the Prepetition Secured Parties by such date; (~~xiv~~xiii) the date of the Final Hearing, if this Interim DIP Order is modified at the Final Hearing in a manner unacceptable to the Prepetition Secured Parties; or (~~xv~~xiv) this Interim DIP Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by DIP Lender.

        5.4     <u>Rights and Remedies upon a DIP Termination Event</u>.  During the period covered by this Interim DIP Order, after five (5) business days following the delivery of a written notice by the DIP Lender or the Prepetition Secured Parties of the occurrence of and during the continuance of a DIP Termination Event (the "**Remedies Notice Period**"), (a) the DIP Lender shall be entitled to independently take any act or exercise any right or remedy as provided in this Interim DIP Order or any DIP Loan Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the extent any such commitment remains; (iii) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Loan Documents; and/or (v) stop lending or making advances under the DIP Loan Agreement.

        5.5     <u>Debtors' Waivers</u>.

        (a)     Prior to the payment in full of all Prepetition Secured Obligations (other than the Roll-Up Payment upon entry of the Final DIP Order) and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event:  (i) to obtain postpetition loans or other financial accommodations pursuant to

section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations and the Prepetition Secured Obligations, other than as provided in this Interim DIP Order or, with respect to the DIP Obligations, as may be otherwise permitted pursuant to the DIP Loan Documents; (ii) to challenge the application of any payments authorized by this Interim DIP Order pursuant to section 506(b) of the Bankruptcy Code; or (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lender or the Prepetition Secured Parties, from exercising their credit bid rights in connection with the sale of any assets of the Debtors; or (iv) to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would restrict or impair (A) the rights and remedies of the DIP Lender or the Prepetition Secured Parties against the Debtors as provided in this Interim DIP Order or any of the DIP Loan Documents or Prepetition Loan Documents or (B) the exercise of such rights or remedies by the DIP Lender or the Prepetition Secured Parties against the Debtors in accordance with the DIP Loan Agreement, this Interim DIP Order or the Prepetition Loan Documents; *provided, however,* that the DIP Lender or Prepetition Secured Parties, as applicable, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Lender or any Prepetition Secured Party.,.

(b)     It shall also be a DIP Termination Event if, prior to the payment in full of the DIP Facility or the Prepetition Secured Obligations, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the payment of the DIP Obligations (other than indemnities then due and payable) and the Prepetition Secured Obligations in full in cash and the payment of the Debtors' obligations with respect to the

adequate protection hereunder, in full in cash, without the written consent of the DIP Lender and the Prepetition Secured Parties, as applicable.

        5.6        <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the Debtors and each of the DIP Lender or the Prepetition Secured Parties, as applicable, to perform any act authorized or permitted under or by virtue of this Interim DIP Order, the DIP Loan Agreement, or the other DIP Loan Documents, as applicable, including, without limitation, (A) to execute, deliver and implement the postpetition financing arrangements authorized by this Interim DIP Order, (B) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral, (C) to assess, charge, collect, advance, deduct and receive payments with respect to the Prepetition Secured Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Loan Documents, the Prepetition Loan Documents (including, subject to the entry of the Final DIP Order, the Roll-Up Payment) and apply such payments to the applicable obligations, and (D) subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to it by this Interim DIP Order, the DIP Loan Documents, or applicable law.

        5.7        <u>Reporting</u>.  The Debtors shall deliver a report, on 4:00 p.m. (*prevailing Eastern Time*) on the 4th business day of each calendar week (beginning on the 4th business day after completion of the first 2 calendar weeks after the Petition Date), in a form and in substance reasonably satisfactory to the DIP Lender, of the: (i) then current cash balance calculations as of the immediately preceding Friday; and (ii) cash flow reconciliations showing actual payments

versus the Approved Budget items for prior periods ended.

5.8    Budget Maintenance.  The use of borrowings under the DIP Facility and the use of Cash Collateral shall be in accordance with the Initial Budget for the first [six] week period from and after the Petition Date, which shall be in form and substance satisfactory to, and approved by, each of the DIP Lender in its sole discretion (as so approved, the Approved Budget).  The Approved Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Lender from time to time in accordance with the DIP Documents.  No such updated, modified or supplemented budget shall be effective until so approved by each of the DIP Lender, and once approved shall be deemed the "Approved Budget".  A copy of any Approved Budget shall be delivered to counsel for Prepetition Secured Parties, a Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Lender.

5.9    Carve-Out Provisions.

(a)    For purposes of this Interim DIP Order, "Carve-Out" shall mean the sum of:  (i) until the delivery of a Carve-Out Trigger Notice (*as defined below*) all fees required to be paid to the Clerk of the Court (or in lieu thereof, fees and expenses incurred by the Debtors to any noticing claims and solicitation agent appointed in the Cases) and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (ii) subject to and only to the extent such amounts are included in the Approved Budget, to the extent allowed at any time, whether by Interim DIP Order, procedural order, or otherwise, subject to the Approved Budget, all unpaid fees, costs, disbursements and expenses (the "**Allowed Professional Fees**") incurred or earned by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "**Committee**

**Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Lender of a Carve-Out Trigger Notice (*as defined below*), whether allowed by the Court prior to, on or after delivery of a Carve-Out Trigger Notice (the "**Pre-Trigger Carve-Out Cap**"); and (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $50,000.00, and Allowed Professional Fees of Committee Professionals in an aggregate amount not to exceed $25,000.00, in each case incurred after the first business day following delivery by the DIP Lender of the Carve-Out Trigger Notice (such date, the "**Trigger Date**"), to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**" and such amounts set forth in clauses (i) through (iv), the "**Carve-Out Cap**"); provided that nothing herein shall be construed to impair any party's ability to object to court approval of the fees, expenses, reimbursement of expenses or compensation of any Professional Person. For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Lender or the Prepetition Secured Parties to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to each other Prepetition Secured Party, counsel to the DIP Lender (if such notice was sent by a Prepetition Secured Party), and counsel to the Committee, if any (collectively, the "**Carve-Out Trigger Notice Parties**"), which notice may be delivered following the occurrence and during the continuation of a DIP Termination Event, and shall describe in reasonable detail such DIP Termination Event that is alleged to have occurred and be continuing and stating that the Post-Carve-Out Trigger Notice Cap has been invoked. Notwithstanding the foregoing, the Carve-Out shall not include any fees or expenses incurred in connection with the investigation, commencement or continuation of any action challenging any obligations or indebtedness arising

EAST\173427356.2EAST\173427356.4

under the DIP Loan, challenging the validity, extent or priority of the DIP Liens, or any other action seeking recovery from or equitable relief against the DIP Lender (collectively, the "**Committee DIP Actions**"); provided, however, that no more than an aggregate of $25,000.00 of the Carve-Out may be used by any Committee, if appointed, to investigate the Committee DIP Actions.

(b) No portion of the Carve-Out, DIP Collateral (including Cash Collateral) or proceeds of the DIP Loan may be used to pay any fees or expenses incurred by any entity (as defined in the Bankruptcy Code), including, without limitation, the Debtors, any Committee or the Professional Persons (as well as each and every creditor or party in interest), in connection with claims or causes of action adverse to the DIP Lender's or the Prepetition Secured Parties' interests in the DIP Collateral, including (1) ~~preventing, hindering or delaying~~ solely upon the occurrence and continuation of a DIP Termination Event which DIP Termination Event has not been cured by the Debtors in accordance with the terms and conditions set forth herein and in the DIP Loan Documents, taking any affirmative actions to prevent, hinder or delay any Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral ~~once a DIP Termination Event has occurred~~; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any DIP Collateral without the DIP Lender's and the Prepetition Secured Parties' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Secured Obligations or any mortgages, liens or security interests with respect thereto or any other rights or interests of Prepetition Secured Parties, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Prepetition Secured Parties; *provided, however*, that the foregoing shall not apply

~~EAST\173427356.2~~EAST\173427356.4

to costs and expenses, in an amount not to exceed $25,000.00, incurred by the Committee's professionals in connection with the investigation of a potential Challenge Proceeding in accordance with Paragraph 5.10 of this Order; *provided, further*, however, that the Carve-Out may be used to pay fees and expenses incurred by the Professional Persons in connection with the negotiation, preparation and entry of this Interim DIP Order or any amendment hereto consented to by the DIP Lender and the Prepetition Secured Parties.

        5.10    <u>Reservation of Third-Party Challenge Rights</u>.  The stipulations, releases, agreements, and admissions contained in this Interim DIP Order, including, without limitation, paragraph E hereof, and the releases contained in clause (x) thereof (collectively, the "**Debtors' Stipulations**"), shall be binding on the Debtors in all circumstances.  The Debtors' Stipulations shall be binding on all entities (as defined in the Bankruptcy Code), including without limitation, each and every creditor and party in interest, including, without limitation, the Committee (if any), unless, and solely to the extent that (a) any such creditor or party in interest, including the Committee (if any), with standing and requisite authority has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, *inter alia*, in this Section 5.10) by no later than (i) the earliest of (A) if no Committee has been appointed, 75 calendar days from the date of entry of this Interim DIP Order, (B) if a Committee has been appointed, 60 calendar days after the date of formation of such Committee, and (ii) any such later date as has been agreed to, in writing, without further order of the Court by the Prepetition Secured Parties or the Bridge Lender, as applicable (such time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**"), against any Prepetition Secured Party in connection with matters related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Collateral, including

by (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Obligations or Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims, or causes of action, objections, contests, or defenses with respect to the Prepetition Secured Obligations, Prepetition Liens or the acts or omissions of any Prepetition Secured Party (a "**Challenge Proceeding**") and (b) there is a final, non-appealable order in favor of the plaintiff sustaining any Challenge Proceeding in any such timely filed adversary proceeding or contested matter. If no such Challenge Proceeding is timely commenced, then: (v) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim DIP Order, including, without limitation, those contained in paragraph E of this Interim DIP Order, and the releases contained in clause (x) thereof, shall be binding on all parties in interest, (w) any and all Challenge Proceedings by any party (including, without limitation, the Committee, any chapter 11 trustee, or any examiner and/or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (x) to the extent not theretofore repaid, the Prepetition Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, for all purposes in these Cases and any subsequent chapter 7 case; (y) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph E hereof, not subject to defense, counterclaim, recharacterization, subordination or avoidance; and (z) the obligations under the Prepetition Loan Documents and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further

EAST\173427356.2EAST\173427356.4

challenge by the Debtors, the Committee (if any) or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto). If any Challenge Proceeding is timely commenced, the stipulations, releases, agreements, and admissions contained in paragraph E of this Interim DIP Order, and the releases contained in clause (x) thereof, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Committee (if any), and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

Nothing in this Interim DIP Order vests or confers on any entity (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, claims and defenses with respect to the Prepetition Credit Agreements or the Prepetition Liens on the Prepetition Collateral. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Period, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the end of the Challenge Period or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as applicable, to commence a Challenge Proceeding, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge Proceeding prior to expiration of the Challenge Period, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge Proceeding. Notwithstanding anything to the contrary herein, the Prepetition Secured Parties shall not raise as a defense in any

Challenge Proceeding or any adversary proceeding or contested matter challenging or otherwise objecting to the amount, validity, enforceability, priority, security or perfection of any of the Prepetition Secured Obligations the ability of creditors to file derivative suits on behalf of limited liability companies.

5.11    **No Modification or Stay of this Interim DIP Order**.  The DIP Lender has acted in good faith in connection with the DIP Facility and with this Interim DIP Order, and their reliance on this Interim DIP Order is in good faith, and the DIP Lender is entitled to the protections of Bankruptcy Code section 364(e).

5.12    **Power to Waive Rights; Duties to Third Parties**.

(a)    Subject to the terms of the DIP Loan Documents, the DIP Lender shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim DIP Order that are in favor of the DIP Lender (the "**DIP Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s); *provided* that the DIP Lender shall obtain the prior written consent of the Prepetition Secured Parties, as applicable, for any waiver that affects any rights of the Prepetition Secured Parties (other than the Bridge Lender), as applicable, hereunder or any treatment of the Prepetition Secured Obligations other than the Bridge Loan.  Any waiver by the DIP Lender of any DIP Lender Rights shall not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

(b)     Each of the Prepetition Secured Parties shall have the right to waive any of the terms, rights, and remedies provided or acknowledged in this Interim DIP Order that are in favor of the Prepetition Secured Parties, respectively (as applicable, the "**Prepetition Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Lender Right(s); *provided* that the Prepetition Secured Parties, as applicable, shall obtain the prior written consent of the DIP Lender for any waiver that affects any rights of the DIP Lender hereunder or any treatment of the DIP Obligations.  Any waiver by either the Prepetition Secured Parties of any Prepetition Lender Rights shall not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any Prepetition Lender Right shall neither constitute a waiver of such Prepetition Lender Right, subject the Prepetition Secured Parties to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the Prepetition Secured Parties.

5.13    DIP and Other Expenses; Procedures for Payment of DIP Lender's and Prepetition Secured Parties' Professional Fees and Expenses.  Any time that professionals for the DIP Lender seek payment of postpetition fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to be maintained in any particular format, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney

EAST\173427356.2EAST\173427356.4

work product doctrine) to the Debtors, the U.S. Trustee and counsel for a Committee (if appointed). If no written objection is received by the applicable professional by 12:00 p.m., *prevailing* Eastern Time, on the date that is ten (10) business days after delivery of such invoice to the Debtors, the U.S. Trustee, and any Committee, such fees and expenses shall be deemed allowed in full, and with respect to a DIP Lender or DIP Lender professional, paid promptly by the Debtors. If an objection to a professional's invoice is timely received by such professional, such fees and expenses shall be deemed allowed in the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Pending such resolution, the undisputed portion of any such invoice will be deemed allowed and paid promptly by the Debtors. Notwithstanding the foregoing, subject to and only to the extent such amounts are included in the Approved Budget, the Debtors are authorized and directed to pay on the Closing Date (as defined in the DIP Documents) all reasonable, undisputed and documented pre-petition fees, costs and expenses, including fees and expenses of counsel, of the DIP Lender incurred on or prior to (including prior to the Petition Date) such date without the need for any professional engaged by the DIP Lender to first deliver a copy of its invoice as provided for herein. The DIP Lender professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts). ~~Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.~~

5.14    No Unauthorized Disposition of Collateral. The Debtors shall not sell, transfer, encumber, otherwise dispose of, or enter into any lease post-Petition Date for, any portion of the DIP Collateral (including equipment and Cash Collateral), other than in ordinary

~~EAST\173427356.2~~EAST\173427356.4

course of the Debtors' businesses or pursuant to the terms of this Interim DIP Order or as permitted by the DIP Loan Documents or further order of the Court.

5.15    No Waiver.  The failure of the DIP Lender or the Prepetition Lenders, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Loan Documents, the DIP Facility, the Prepetition Loan Documents, the Prepetition Secured Obligations, or the Interim DIP Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or Prepetition Lenders' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the DIP Lender and the Prepetition Lenders to: (a) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Lenders.

5.16    Maintenance of Collateral.  Unless the DIP Lender and Prepetition Secured Parties otherwise consent in writing, until (i) the payment in full or otherwise acceptable satisfaction of all DIP Obligations and the Prepetition Secured Obligations and (ii) the termination of the DIP Lender's and the DIP Lender' obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the DIP Loan Documents regarding the maintenance and insurance of the DIP Collateral.  Upon entry of this Interim DIP Order and to the fullest extent provided by applicable law, each of the DIP Lender and Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or

EAST\173427356.2EAST\173427356.4

notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

        5.17    <u>Reservation of Rights</u>.  The terms, conditions, and provisions of this Interim DIP Order are in addition to and without prejudice to the rights of DIP Lender and Prepetition Secured Parties, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, the Prepetition Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estates.

        5.18    <u>Binding Effect</u>.

        (a)    All of the provisions of this Interim DIP Order and the DIP Loan Documents, the DIP Obligations, all liens, and claims granted hereunder in favor of DIP Lender and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Lender, and Prepetition Secured Parties set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in Section E of this Interim DIP Order, subject to Section 5.10 hereof (without each of which the DIP Lender would not have entered into or provided funds under the DIP Loan Documents and the Prepetition Secured Parties would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or acknowledged in

this Interim DIP Order, and any actions taken pursuant thereto, shall be effective and enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Interim DIP Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of the Cases to any other chapter under the Bankruptcy Code, dismissing one or more of the Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Interim DIP Order or any provision hereof<del>.</del>*; provided that in the event a Final DIP Order is entered, the terms and conditions of such Final DIP Order shall control over this Interim DIP Order; provided further that such Final DIP Order must affirm each of the provisions, protections, grants, statements, stipulations, and agreements in this Interim DIP Order in order for such provisions, protections, grants, statements, stipulations and agreements to remain in effect after* entry of the Final DIP Order.

      (b)      No order dismissing one or more of the Cases under section 1112 or otherwise may impair the DIP Superpriority Claim, the Adequate Protection Superpriority Claim, and the DIP Lender's and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Interim DIP

Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Secured Obligations are indefeasibly paid and satisfied in full.

(c)    Except as set forth in this Interim DIP Order, in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Interim DIP Order or any of the DIP Loan Documents, such modifications, reversals, vacatur, or stays shall not affect the (i) validity, priority, or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender or Prepetition Secured Parties, as applicable, of the effective date of such modification, reversal, vacatur, or stay, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims or (iii) rights or priorities of the DIP Lender or the Prepetition Secured Parties pursuant to this Interim DIP Order with respect to the DIP Collateral or any portion of the DIP Obligations. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Lender and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)    This Interim DIP Order shall be binding upon the Debtors each borrower, guarantor, or other obligor under the Prepetition Loan Documents, all parties in interest in the Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law. This Interim DIP Order shall also inure to the benefit of the Debtors, DIP Lender, Prepetition Secured Parties, and each of their respective successors and assigns.

EAST\173427356.2EAST\173427356.4

5.19    Discharge.    Subject to the entry of the Final DIP Order, the DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Lender or the Prepetition Secured Parties, as applicable, has otherwise agreed in writing.

5.20    Section 506(c) Waiver.    ~~No~~ Subject to the entry of a Final DIP Order, no costs or expenses of administration which have been or may be incurred in these Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of value by the DIP Lender upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against the DIP Lender, or Prepetition Secured Parties, or any of the DIP Obligations or Prepetition Secured Obligations or the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender and/or affected Prepetition Secured Parties, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).  ~~Notwithstanding the foregoing, the waiver provided in this Section as to the Prepetition Secured Parties, the Prepetition Secured Obligations, and the Prepetition Collateral is subject to the entry of a Final DIP Order providing such relief.~~

5.21    Section 552(b) Waiver.  The Debtors have agreed as a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Interim DIP Order that, subject to entry of the Final DIP Order, the Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and that the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender, the DIP Obligations, and, subject to entry of the Final DIP Order, the Prepetition Secured Parties, or the Prepetition Secured Obligations.

5.22    No Marshaling/Application of Proceeds.

(a)    In no event shall the DIP Lender, or, subject to the entry of the Final DIP Order, the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and applied in accordance with the DIP Loan Documents and the Prepetition Loan Documents, as applicable.

(b)    Notwithstanding anything to the contrary in this Interim DIP Order, the DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

5.23    Relief Subject to a Final DIP Order.  For the avoidance of doubt, nothing in this Interim DIP Order shall be deemed to grant or approve (a) a waiver of the Debtors' ability to surcharge against any Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code; (b) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code with respect to any of the Prepetition Secured Parties; (c) except as provided in Section 5.23 hereof, the application of the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral; or (d) a lien on or superpriority claim against the Avoidance Proceeds.

EAST\173427356.2EAST\173427356.4

5.24    Limits on Lender Liability.

(a)    Subject to entry of the Final DIP Order and Section 5.10 hereof, in determining to make any loan under the DIP Loan Agreement, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim DIP Order or the DIP Loan Documents, the DIP Lender and the Prepetition Secured Parties shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors. Furthermore, nothing in this Interim DIP Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Lender or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)    Nothing in this Interim DIP Order or the DIP Loan Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

EAST\173427356.2EAST\173427356.4

(c)     As to the United States, its agencies, departments, or agents, nothing in this Interim DIP Order or the DIP Loan Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

5.25     Release.  Subject to section 5.10 of this Interim DIP Order and the Final DIP Order, each of the Debtors, their Estates, the Borrower and the Guarantors, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit each of the DIP Lender and the Prepetition Secured Parties and (in such capacity) each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Released Parties**") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the DIP Facility or the DIP Loan Documents or (ii) the Prepetition Loan Documents, as applicable, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action

EAST\173427356.2EAST\173427356.4

arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Loan Documents, or the DIP Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim DIP Order. Notwithstanding anything to the contrary herein, the Prepetition Secured Parties shall not raise as a defense in any Challenge Proceeding or any adversary proceeding or contested matter challenging or otherwise objecting to the amount, validity, enforceability, priority, security or perfection of any of the Prepetition Secured Obligations the ability of creditors to file derivative suits on behalf of limited liability companies.

5.26    Release of Liens.  Subject to entry of the Final DIP Order and Section 5.10 hereof, upon the date that repayment of Bridge Loan Obligations occurs as a result of the Roll-Up Payment and prior to the release of the Bridge Loan Obligations, Debtors shall execute and deliver to Bridge Lender a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Bridge Loan Documents.

5.27    Survival.  The provisions of this Interim DIP Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Cases, (b) converting any or all

EAST\173427356.2EAST\173427356.4

of these Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Cases, (d) terminating the joint administration of these Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents), or (f) pursuant to which the Court abstains from hearing any of these Cases. The terms and provisions of this Interim DIP Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and the Prepetition Secured Parties pursuant to this Interim DIP Order, notwithstanding the entry of any such order, shall continue in any of these Cases, following dismissal of any of these Cases or any Successor Cases, and shall maintain their priority as provided by this Interim DIP Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Loan Documents and this Interim DIP Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Secured Obligations, all of the adequate protection obligations owed to the Prepetition Secured Parties provided for in this Interim DIP Order and under the Prepetition Credit Agreements have been indefeasibly paid in full in cash.

5.28    Proofs of Claim.  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of these Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s).  Notwithstanding the foregoing, any Prepetition Lender is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) proofs of claim or a master proof

EAST\173427356.2EAST\173427356.4

of claim for any claims of any Prepetition Lender arising from the Prepetition Loan Documents or in respect of the Prepetition Secured Obligations; *provided*, *however*, that nothing in this Order shall waive the right of any Prepetition Lender to file its own proof of claim against any of the Debtors.

5.29    No Third-Party Rights. Except as specifically provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

5.30    No Avoidance. Subject to Section 5.10 hereof, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Lender or the DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

5.31    Reliance on Order. All postpetition advances under the DIP Loan Documents are made in reliance on this Interim DIP Order.

5.32 Payments Free and Clear.  Any and all payments or proceeds remitted to the DIP Lender or, subject to Section 5.10 hereof, the Prepetition Secured Parties, pursuant to the provisions of this Interim DIP Order, any subsequent order of this Court or the DIP Loan Documents, shall, subject to the terms of this Section 5.33, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and in the case of payments made or proceeds remitted after the delivery of a Carve-Out Trigger Notice, subject to the Carve-Out in all respects.

5.32     ~~5.33~~ Limited Effect.   In the event of a conflict between the terms and provisions of any of the DIP Loan Documents and this Interim DIP Order, the terms and provisions of this Interim DIP Order shall govern.

5.33     ~~5.34~~ Headings.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim DIP Order.

5.34     ~~5.35~~ Bankruptcy Rules.   The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

5.35     ~~5.36~~ General Authorization.   The Debtors, the DIP Lender, and the Prepetition Secured Parties are authorized to take any and all actions necessary to effectuate the relief granted in this Interim DIP Order.

5.36     ~~5.37~~ Retention of Jurisdiction.   This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Interim DIP Order, the DIP Loan Agreement, and the other DIP Loan Documents.

5.37     ~~5.38~~ Final Hearing and Response Dates.   The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) will be held on ~~_____~~ April 30, 2020, at ~~__:__~~ 10:30 a.m., prevailing Eastern Time.   The Debtors shall promptly mail copies of this Interim DIP Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or the Committee's counsel if same shall have filed a request for notice.   The Debtors may serve the Motion and the Interim DIP Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at                                            , and such notice is deemed good and sufficient and no further notice need be given.   Any party in interest

- 54 -

objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) the Debtors, Rudy's Barbershop Holdings, LLC, 1605 Boylston Avenue, Suite 202, Seattle, Washington 98122 (*Attn*: Kathleen Trent and Ryan Kyle); (b) *proposed* counsel for the Debtors, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (*Attn*: William E. Chipman, Jr., Esquire [chipman@chipmanbrown.com] and Mark D. Olivere, Esquire [olivere@chipmanbrown.com]); (c) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Lockbox 35, Wilmington, Delaware 19801 (*Attn*: Jane Leamy, Esquire [jane.m.leamy@usdoj.gov]); (d) counsel to the proposed DIP Lender, DLA Piper (US) LLP, 1251 Avenue of the Americas, New York, New York 10020 (*Attn*: Richard A. Chesley, Esquire [richard.chesley@us.dlapiper.com] and Jamila Justine Willis, Esquire [jamila.willis@us.dlapiper.com]); and (e) counsel to any official committee of unsecured creditors appointed in this case; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than 4:00 p.m. (*prevailing* Eastern Time), on ~~——————~~April 27, 2020.

EAST\173427356.2EAST\173427356.4

**<u>EXHIBIT A</u>**
**DIP Loan Agreement**

# EXHIBIT B

**Initial Budget**

| Summary report: Litéra® Change-Pro TDC 10.1.0.700 Document comparison done on 4/7/2020 5:08:27 PM | |
|---|---|
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://USDMS.PIPER.ROOT.LOCAL/EAST/173427356/2 | |
| **Modified DMS:** iw://USDMS.PIPER.ROOT.LOCAL/EAST/173427356/4 | |
| **Changes:** | |
| Add | 43 |
| Delete | 49 |
| Move From | 8 |
| Move To | 8 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 108 |