IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>RUDY'S BARBERSHOP HOLDINGS, LLC. *et al¹*<br><br>        Debtors | Ch. 11 Case No. 20-10746 (LSS)<br><br>(Jointly Administered) |
| WADE WEIGEL and DAVID PETERSEN,<br><br>        Plaintiffs<br>  v.<br><br>NORTHWOOD VENTURES LLC;<br>NORTHWOOD CAPITAL PARTNERS LLC;<br>PCG-ARES SIDECAR INVESTMENT LP;<br>PARTNERSHIP CAPITAL GROWTH III MAIN BLOCKER, LP;<br>PARTNERSHIP CAPITAL INVESTORS III AIV, L.P.; PARTNERSHIP CAPITAL GROWTH INVESTORS III BLOCKED AIV, L.P.; SK PARTNERS,<br><br>        Defendants. | AdvProc. No. |

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Rudy's Barbershop Holdings, LLC (3198); (ii) Rudy's Barber Shop, LLC (6037); (iii) Rudy's Portland, LLC (7237); (iv) Rudy's Southeast, LLC (5113); (v) Rudy's Hollywood, LLC (2941); and (vi) Rudy's New York, LLC (7034). The Debtors' headquarters is located at 1605 Boylston Avenue, Suite 202, Seattle, Washington 98122.

# COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE SUBORDINATION, INJUNCTION AND FOR OTHER RELIEF

The Plaintiffs, Wade Weigel ("**Weigel**") and David Petersen ("**Petersen**"), (the "**Plaintiffs**"), respectfully allege as follows:

## Parties

1

The Plaintiffs are individuals who along with others were the founders of the Debtor, Rudy's Barbershop Holdings, LLC (the "**Founders**") The Plaintiffs hold two of the outstanding founders' notes (the **"Founders' Notes"**), totaling $882,000 plus interest, attorneys' fees and costs. *See*, Proofs of Claim Nos. 1 and 2. The Plaintiffs also hold 7.93% ownership interest in the Common Units of Rudy's.

2

The Defendants, Northwood Ventures LLC; Northwood Capital Partners LLC; PCG-Ares Sidecar Investment LP; Partnership Capital Growth III Main Blocker, LP; Partnership Capital Investors III AIV, L.P.; Partnership Capital Growth Investors III Blocked AIV, L.P.; SK Partners (collectively, the "**Defendants**"), in their corporate capacities, along with Paul Homer, Allison Wilson and Brendon Lynch in their individual capacities own and hold all of the Series A Preferred Units and the controlling interest in the Debtor, Rudy's Barbershop Holdings, LLC (herein "**Rudy's**" or the "**Debtor**"). The actions of the Defendants alleged herein have damaged the Plaintiffs.

**Jurisdiction and Venue**

3

The Court has jurisdiction over the parties hereto and this is a Core Proceeding under 28 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), (b)(2)(K), and (b)(2)(O). Venue is proper in the Bankruptcy Court for the District of Delaware pursuant to 28 U.S.C. § 1409(a). This action is authorized under Sec. 5.10 Reservation of Third-Party Challenge Rights under the Final DIP Financing Order [ECF No. 144].

4

The Plaintiffs consent to the Jurisdiction of the Court and consent to it making a final decision in this case.

**Background and Common Facts**

5

On or about May 27, 2014, the Plaintiffs and the Defendants (herein collectively, the **"Parties"**) executed a purchase and sale agreement, to purchase the Founder's interest in Rudy's for $4.25 million plus reimbursement of expenses. This deal entailed Rudy's redeeming all of the Founders' Common Units for $3,725,200.96 cash, issuance of minority ownership interests in the Debtor and the Founders' Notes, which started as a $1,500,000 subordinated promissory notes, and which the parties subsequently amended.

6

The Plaintiffs are still creditors of the Debtor awaiting payment on their Founder Notes.

7

Among the Parties' transactional documentation, was a Redemption Agreement which, in its Schedule I, discloses that Northwood brought in ten new equity investors for a total capital raise

of $9,249,000. Given that the Defendants caused the Debtor to pay $3,725,200.96 in cash for its redemption of the Founders' ownership interests, as of the summer of 2014, the Debtor should have had $5,523,799.04 of capital for payment of its expenses and ongoing working capital. Sec. 7.01 of the Redemption Agreement confirms Rudy's sound capital position in the summer of 2014, describing the use of $4,500,000 of the proceeds from the sale of new units as funds for growth, expansion, and general working capital.

8

Notwithstanding that the Defendants raised $9,249,000 through a sale of new equity, and incurred a concurrent obligation to pay the Founders $4.5 million, the records the Debtor has furnished do not offer any obvious explanation to the Plaintiffs' accounting consultant, a retired CPA, as to the disposition of the nearly $5,523,799.04 of additional funds the Debtor raised. The Debtor's tax returns have not been helpful to the Plaintiffs in analyzing the whereabouts or use of these funds.

9

Starting in 2015, the Defendants or some of them, made capital contributions to the Debtor in irregular intervals in what appear to be capital calls, which the Defendants and the Debtor memorialized as senior secured promissory notes. During these times, the Debtor appears to have been balance sheet insolvent and cash flow insolvent. Ultimately, by the time the Debtor filed its chapter 11 bankruptcy cases, the Defendants claim that the Debtor, owed them $2,662,547.32 memorialized in instruments titled Subordinated Secured Convertible Promissory Notes.

10

On March 20, 2020, on the eve of the filing of this Bankruptcy Case, the Defendants, or some of them, loaned the Debtor an additional $200,000. The borrower on all of these purported

secured loans was the Debtors' holding company. The only meaningful assets the Debtors' holding company owns are the five Rudy's Barbershop insolvent operating companies. Therefore, it appears that the Defendants' loans were never actually secured, because these were insider loans made when the borrower was insolvent and purportedly secured by insolvent entities with no collateral value.

11

Each of the Subordinated Secured Convertible Promissory Notes are in violation of the Founders' Notes, which *inter alia* contain the following clause:

> 7. <u>Subordination</u>. (a) the indebtedness represented by the Note is unsecured and expressly subordinated in right of payment to the prior payment in full of all of the Company's Senior Indebtedness (as defined below). "Senior Indebtedness" shall mean the principal of and unpaid interest and premium, if any, on (i) indebtedness of the Company or with respect to which the Company is a guarantor, whether outstanding on the date hereof of hereafter created, to <u>banks, insurance companies or other lending institutions</u> regularly engaged in the business of lending money, whether or not secured …."

(Emphasis added).

12

The funds the Defendants lent to the Debtor, are in direct violation of paragraph 7 of the Founders' Notes. The Defendants and the Subordinated Secured Convertible Promissory Notes do not meet the terms of "Senior Indebtedness" as set forth in the Founders' Note. This is because the Defendants are not akin to a bank or insurance company to fall within the ambit of the other "lending institution" definition and instead, are owners and insiders of the Debtor who disguised capital contributions as loans to the Debtor after diluting the sound financial position that the Founders left the Debtor in in the summer of 2014.to the Debtor.

13

From its inception in 1997, the Debtor enjoyed an excellent credit relationship with its bank. That changed after 2014, when the Defendants' made capital contributions to the Debtor which they characterized as 18% interest rate secured loans. The terms of the Defendants' purported loans were on usurious terms and were much worse than the credit terms available from banks, insurance companies or other lending institutions regularly engaged in the business of lending money, whether or not secured.

14

The Subordinated Secured Convertible Promissory Notes should not be treated as secured debt until such time as the Defendants produce contemporaneously executed security agreements, documentation of perfection of their purported security agreements, and proof that the Debtor has equity in the assets that purportedly constitute the collateral of the Defendants.

15

The Debtor, its owner, the Defendants, and the DIP lender/Stalking Horse Purchaser, have pre-engineered a rocket docket bankruptcy situation to frustrate third -party good faith bidders from making bids.  The Bidding Procedures order at ECF 103, seems to grant senior secured status to the Defendants' purported claims.

16

The Plaintiffs' transactional documents with defendant Northwood Capital allow for the recovery of attorneys' fees and costs to the prevailing party.

**FIRST CAUSE OF ACTION**

(Injunctive Relief – 11 U.S.C. § 105)

17

The Plaintiffs reallege paragraphs 1 through 16.

18

The Defendants' created the alleged debt represented by the Subordinated Secured Convertible Promissory Notes at a time when the Debtor was insolvent, and in an attempt to wrongfully leapfrog in debt priority over the Founders Notes. This conduct justifies recharacterization of the Defendants' alleged debt as equity and / or equitable subordination of the Debtor's debt to the Defendants, pursuant to 11 U.S.C. § 510.

19

The Court has entered an order at ECF 103 that provides for the sale of substantially all of the Debtor's assets and establishes bidding procedures under 11 USC 363 (the "**Bidding Procedures Order**"). The Bidding Procedures Order approved a stalking horse bid and provides that competing bids are due by May 5, 2020. The Bidding Procedures Order allows secured creditors' bids to include credit bids based on approved secured claims.

20

The Bidding Procedures Order allows one or more of the Defendants to submit bids that will include credit bids based on the Subordinated Secured Convertible Promissory Notes.

21

The Founders are concerned about the Debtors' employees and creditors and the future of the Rudy's business, and therefore intend to bid on May 5, 2020, in accordance with the provisions of the Bidding Procedures Order.

22

If the Defendants are allowed to submit credit bids based on debt that that should be recharacterized as equity and / or equitably subordinated under 11 U.S.C. § 510, the Debtor will be unable to adequately assess the "highest or otherwise best Qualified bid" as required by the Bidding Procedures Order. Moreover, this will be unduly prejudicial to the Plaintiffs, because the Defendants or any purchaser of their claims, may unfairly bid $2.6 million of what appears to be equity, while the Plaintiffs, in their capacity as unsecured creditors, will need to bid with real money. To remedy this, the Court should enjoin any bids that incorporate any purported secured credit from their Subordinated Secured Convertible Promissory Notes .

## SECOND CAUSE OF ACTION

(Equitable Subordination / Debt Recharacterization - 11 U.S.C. § 510)

23

The Founders reallege paragraphs 1 through 23.

24

Pursuant to 11 U.S.C. § 510. The Defendants' conduct in creating the debt represented by the Subordinated Secured Convertible Promissory Notes justifies recharacterization of this alleged debt as equity and / or equitable subordination of the debt owed to the Defendants to a debt class with lower priority than the Founders' Notes.

## REQUEST FOR RELIEF

Wherefore the Plaintiffs pray for the following relief

1. That the Defendants or their successors, as holders of the Subordinated Secured Convertible Promissory Notes, not be allowed to credit bid these notes in the auction set forth in the Bidding Procedures Order.

2. A declaration that the Subordinated Secured Convertible Promissory Notes be recharacterized as equity, or alternatively, subordinated to general unsecured claims and to the claims of the Plainitffs, and the holder of the non-plaintiff founder's note.

3. For their attorneys' fees and costs.

4. for such further and other relief as the Court deem just in the premises.

Dated this 3rd day of May 2020

Sternberg Thomson Okrent & Scher, PLLC

By  /s/ Craig S Sternberg
Craig S Sternberg, WSBA 521
2033 Sixth Avenue, Ste. 251
Seattle, WA 98121
206 386-5438 // 206 374-2868 FAX
craig@stoslaw.com

Field & Jerger, LLP

By  /s/ Joseph Field
Joseph Field, WSBA 24702[2]
621 W. Morrison, Ste. 510
Portland, OR 97205
503 228-2665 // FAX 503 225-0276
joe@fieldjerger.com

Local Counsel:

Drescher & Associates, PA
Ronald J. Drescher
One Commerce Center
1201 N. Orange Street, Ste. 732
Wilmington, DE 19801
410 484-9000
Rrondrescher@drescherlaw.com

Counsel for the Plaintiffs

---

[2] Pro Hoc Vice Application Pending