# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RUDY'S BARBERSHOP HOLDINGS, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10746 (LSS)<br><br>(Jointly Administered) |

### DECLARATION OF WAYNE P. WEITZ IN SUPPORT OF SALE MOTION

Pursuant to 28 U.S.C. § 1746, Wayne P. Weitz declares as follows:

1. I am a Principal of GlassRatner Advisory & Capital Group LLC ("**GlassRatner**"), a financial advisory firm that specializes in, among other things, turning around troubled businesses and marketing and selling such businesses and their assets.

2. I submit this declaration ("**Declaration**") in support of the above-captioned debtors' (the "**Debtors**" or the **"Company"**) *Motion of Debtors for Entry of Orders (I)(a) Establishing Bidding Procedures; (b) Approving Bid Protections; (c) Establishing Procedures Relating to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts; (d) Approving Form and Manner of Notice; (e) Scheduling a Hearing to Consider any Proposed Sale; and (f) Granting Certain Related Relief; and (II)(a) Approving a Sale; (b) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With the Sale; and (c) Granting Related Relief* (the **"Sale Motion"**)[D.I. 12, Filed 4/2/20].

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Rudy's Barbershop Holdings, LLC (3198); (ii) Rudy's Barber Shop, LLC (6037); (iii) Rudy's Portland, LLC (7237); (iv) Rudy's Southeast, LLC (5113); (v) Rudy's Hollywood, LLC (2941); and (vi) Rudy's New York, LLC (7034). The Debtors' headquarters is located at 1605 Boylston Avenue, Suite 202, Seattle, Washington 98122.

Unless otherwise stated herein, I have personal knowledge of the facts set forth in this declaration.

## PROFESSIONAL BACKGROUND AND QUALIFICATIONS

3. I received my B.A. in economics and politics from Brandeis University and my MBA in finance and accounting from the University of Chicago Booth School of Business. I have over 30 years' business experience as an investment banker, corporate financial executive, private equity acquisitions executive and restructuring and insolvency professional. In the restructuring and insolvency arena I have served as financial advisor or investment banker in nearly 100 situations involved distressed or challenged organizations. I have run many section 363 sale processes both as an agent of debtors and as an advisor to statutory committees. I have overseen and augmented sale processes successfully boosting purchase prices in many cases.

4. GlassRatner is a full-service financial advisory firm with over 100 professionals located in approximately 15 offices throughout the U.S. GlassRatner brings together a unique combination of financial and operating insight collectively gained from decades of experience working in crisis situations, along with practical transaction experience. GlassRatner specializes in interim management, fiduciary services, turnaround consulting, operational due diligence, debtor and creditor advisory services include distressed investment banking services, and financial and operational restructurings. GlassRatner is an indirect, wholly-owned subsidiary of B. Riley Financial, Inc. (NASDAQ: RILY), a publicly traded, diversified financial services company, and an affiliate entity of B. Riley FBR, Inc.

5.      On March 26, 2020, GlassRatner was selected to serve as financial advisor to the Debtors.  At the time we began our work the Debtors had negotiated the principal terms of a stalking horse purchase agreement (the **"Original Stalking Horse APA"**) with RBS Salon Holdings, Inc., an affiliate of Tacit Capital LLC (the **"Stalking Horse"**).

6.      I understand that prior to the Petition Date, the Company engaged in a marketing process (the **"Prepetition Marketing Process"**) for the sale of all or substantially all of the Company's assets with Cascadia Capital, LLC (**"Cascadia"**). Details of the Prepetition Marketing Process are set forth more fully in the *Declaration of Kathleen Trent in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**").

7.      Immediately after we were engaged, we reached out to Cascadia and requested the list of potential bidders they contacted in the Prepetition Marketing Process (the **"Potential Bidders"**).  The list of Potential Bidders included thirty-one (31) parties categorized by Cascadia as "strategic buyers" and eighty-one (81) parties categorized as "financial buyers".  Ninety-nine (99) of these Potential Bidders declined interest prior to our involvement.  We were given contact information from Cascadia for nine (9) Potential Bidders that had shown interest in the Company during the Prepetition Marketing Process. We were not provided with contact information for the remainder of Potential Bidders; however, we were able to identify email addresses for approximately 60 of these Potential Bidders.

8.      Shortly after the Petition Date, GlassRatner sent notice of the bankruptcy filing and proposed bid procedures to the Potential Bidders set forth above as well as to eleven (11) additional parties identified by GlassRatner.  We received signed non-

disclosure agreements (each an **"NDA"**) from thirteen (13) Potential Bidders, all of whom were granted access to the electronic data room established and maintained by the Debtors (the **"Diligence Information"**).  The Diligence Information provided all Potential Bidders with detailed information on, among other things, the Debtors' business, assets, liabilities and historical financial performance and was updated regularly with additional information during the sale process.

9. Between the Petition Date and the May 5, 2020 Bid Deadline, while Potential Bidders were reviewing documents in the data room, multiple Potential Bidders held informational conference calls with the Debtors' CEO.  Throughout this entire process, I and other representatives of GlassRatner participated in numerous calls and meetings with the Potential Bidders, the Debtors' management and advisors regarding the status of the sale process, and have provided updates to the Debtors and advisors to the Official Committee of Unsecured Creditors on the sale process in real time.  Just before the Bid Deadline, there were four (4) parties still active in the data room.

10. Prior to the May 5, 2020 Bid Deadline, the Debtors received an Amended and Restated Asset Purchase Agreement from the Stalking Horse (the **"Amended Stalking Horse APA"**).  The Amended Stalking Horse APA increased the consideration offered by the Stalking Horse by $200,000 plus the assumption of certain 503(b)(9) claims as a result of negotiations with the Committee.

11. Also, prior to the Bid Deadline, the Debtors received a Non-Qualified Bid from Rudy's Reloaded, LLC, a to-be-formed Delaware limited liability company, backed by the two surviving Rudy's Barbershop founders Wade Weigel and David Peterson (the **"Founders"**) and Tom Bailiff and Butch Bannon.  The Founders also disclosed that should

they be the Successful Bidder at the Auction, they will sell some of the assets or entities they acquire to Fellow Barber.

12.  Pursuant to paragraph 6 of the Bidding Procedures Order, the Bid Deadline was extended by the Debtors, in consultation with counsel to the Committee, to allow the Founders an opportunity to improve their bid so that it could be considered a Qualified Bid for the Auction.

13.  On May 6, 2020, the Founders submitted a revised bid from Malden Avenue Associates, LLC, a Washington State limited liability company, or assigns, doing business as "Rudy's Reloaded" (**"Rudy's Reloaded"**) that the Debtors, in consultation with counsel to the Committee, determined to be a Qualified Bid when measured against the Original Stalking Horse APA approved by the Court in the Bidding Procedures Order and not against the Amended Stalking Horse APA.

14.  As a result of allowing Rudy's Reloaded to submit a Qualified Bid, measured against the Original Stalking Horse APA and not the Amended Stalking Horse APA, the Stalking Horse purported to withdraw the Amended Stalking Horse Agreement.

15.  On May 7, 2020, the Debtors conducted the Auction and determined at the outset that the highest and best initial bid for the Debtors' assets was offered by Rudy's Reloaded.

16.  After several rounds of bidding between the Stalking Horse and Rudy's Reloaded during the Auction, the Debtors determined, in consultation with counsel to the Committee, that: (i) Rudy's Reloaded was the Successful Bidder and its final bid was the Successful Bid; and (ii) that the Stalking Horse was the Back-Up Bidder and its final bid

was the Back-Up Bid under the Bidding Procedures Order. The Stalking Horse has reserved all its rights as to whether it should be deemed the Back-Up Bidder.

17. The Successful Bid will pay off all the DIP Obligations in full in cash at closing and repay the Demand Loan in the amount of $204,700 due to the Prepetition Noteholders in full in cash at closing. The Prepetition Noteholders will receive, at their choice, either $200,000 in cash or 10% of the equity in the Successful Bidder in exchange for assumption and/or release of their $2,662,547.32 in Prepetition Secured Note Obligations. In addition, all the Debtors' leases will be assumed, including attempting to enter into new leases with the three leases previously rejected by the Debtors. All stub rent will be assumed (up to a cap of $165,000), all section 503(b)(9) claims will be assumed (up to a cap of $35,000) and all obligations for priority and general unsecured claims listed in the Debtors' schedules and statements (that are not contingent, unliquidated or disputed) are being assumed by the Successful Bidder. Finally, the Successful Bidder is providing $130,000 in cash to the Debtors' estates plus $100,000 in cash at closing to fund the bidding protections due to the Stalking Horse.

18. The Back-Up Bid provides many of the same terms as the Successful Bid. However, while it provides $170,000 more in cash consideration to the Debtors' estates, it only assumes 20 of 25 leases, and only assumes $169,000 in trade payables, leaving the Debtors estates with large rejection damages and other unfulfilled claims. A chart that I prepared during the Auction showing the final bid comparisons is attached hereto as **Exhibit A**.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on May 8, 2020

GLASSRATNER ADVISORY & CAPITAL GROUP LLC

/s/ Wayne P. Weitz
Wayne P. Weitz, Principal

## **EXHIBIT A**