## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| RUDY'S BARBERSHOP HOLDINGS, LLC, *et al.*,[1] | Case No. 20-10746 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Related Docket Nos. 12, 103** |

**ORDER (A) APPROVING AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS PURSUANT TO THE ASSET PURCHASE AGREEMENT, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF**

This matter is before the Court on the motion (the "Sale Motion")[2] of the above-captioned debtors (the "Debtors") for the entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court for the District of Delaware (the "Local Rules") (a) authorizing the sale of the Acquired Assets free and clear of liens, claims, encumbrances, and other interests, except as provided by the Final APA, to Malden Avenue Associates, LLC, DBA Rudy's Reloaded. (the "Buyer"), (b) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief; and the Court having

---

[1]    The Debtor in these cases, along with the last four digits of their federal tax identification number, are (i) Rudy's Barbershop Holdings, LLC (3198); Rudy's Barber Shop, LLC (6037); Rudy's Portland, LLC (7237); Rudy's Southeast, LLC (5113); Rudy's Hollywood, LLC (2941); and Rudy's New York, LLC (7034). The Debtors' headquarters is located at 1605 Boylston Avenue, Suite 2020, Seattle, Washington 98122.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion or in the Final APA (as defined herein).

heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before the Court on May 11, 2020 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

I.     **Jurisdiction, Final Order and Statutory Predicates**

A.     The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This order ("Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014.

D.     The Court entered the Bidding Procedures Order on April 17, 2020 [D.I. 103].

E.    The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

F.    To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

G.    In the absence of a stay pending appeal, the Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the transaction contemplated by this Sale Order and that certain Asset Purchase Agreement, dated as of April 13, 2020 (together with any schedules, exhibits and any other documents or instruments related thereto, the "Final APA", a copy of which is attached hereto as **Exhibit A**, as modified, amended or supplemented from time to time) at any time after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

II.    **Notice of the Sale, Auction and the Cure Amounts**

A.    In compliance with the Bidding Procedures Order, actual written notice of the Sale Motion and the Sale Hearing and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' twenty (20) largest unsecured creditors as identified on the voluntary petitions; (c) the United States Attorney's Office for the District of Delaware; (d) counsel to the DIP Lender; (e) all applicable federal, state, and

local taxing and regulatory authorities having jurisdiction over the Assets; and (f) all parties known to the Debtors who hold any liens or security interest in the Debtors' Assets who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on the Debtors' Assets.

B.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Sale Notice [D.I. 106] (the "Sale Notice") on the following parties: (a) the U.S. Trustee, (b) counsel to any statutory committee appointed in these cases, (c) any parties requesting notices in these cases pursuant to Bankruptcy Rule 2002, (d) all known creditors of the Debtors, (e) counsel to the Stalking Horse Purchaser, (f) counsel to all prepetition secured parties, and (g) all parties known to the Debtors to have expressed interest in purchasing all or a portion of the Acquired Assets.

C.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Contract Assumption Notice [D.I. 107], as applicable, upon the contract counterparties (the "Contract Counterparties") to the executory contracts and unexpired leases that the Debtors seek to assume and assign to the Buyer (the "Assumed Executory Contracts") as of April 17, 2020 (or such other date on which the transactions contemplated by the Buyer's Final APA are consummated, the "Closing Date") and setting forth the proposed Cure Amounts, if any, for such Assumed Executory Contracts.  Pursuant to Fed. R. Bankr. P. 6006(c), the Court finds that the service of such Contract Assumption Notice was good, sufficient and appropriate under the circumstances, in compliance with the Bidding Procedures Order, and no further notice need be given in respect of establishing the Cure Amount for the Assumed Executory Contracts. The Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the Contract Assumption Notice, as applicable.

4

D.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors also have complied with all obligations to provide notice of the Auction, the Sale Hearing, and the Sale required by the Bidding Procedures Order.  Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, or assumption and assignment of the Assumed Executory Contracts is required.

E.      The Debtors have articulated good and sufficient reasons for the Bankruptcy Court to grant the relief requested in the Sale Motion.

F.      The disclosures made by the Debtors concerning the Sale Motion, the Final APA, the Auction, the Sale, and the Sale Hearing were good, complete and adequate.

## III.    Good Faith of the Buyer

A.      The BuyerBuyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

B.      The Buyer ispurchasing the Acquired Assets in good faith and is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the full protection of section 363(m) of the Bankruptcy Code, and otherwise have proceeded in good faith in all respects in connection with these Chapter 11 Cases in that, *inter alia*: (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring any or all of the Acquired Assets; (b) the Buyer complied with the provisions in the Bidding Procedures Order; (c) the Buyer agreed to subject their bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filing by

any of the Debtors; (e) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (f) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (g) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; and (h) the negotiation and execution of Final APA and any other agreements or instruments related thereto were at arms' length and in good faith.

## IV.    Highest or Best Offer

A.      Prior to selecting the Buyer as the Successful Bidder, the Debtors solicited offers to acquire the Acquired Assets from a wide variety of parties.  In doing so, the Debtors afforded Potential Bidders confidential due diligence access to provide any such bidders an opportunity to submit a Qualified Bid.

B.      The Bidding Procedures were designed to obtain the highest value for the Acquired Assets for the Debtors and their estates, and the Final APA constitutes the highest or best offer for the Acquired Assets. The Debtors' determination, in consultation with the Consultation Parties, that the Final APA constitutes the highest or best offer for the Acquired Assets was a reasonable, valid and sound exercise of the Debtors' business judgment.

C.      The Final APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value or otherwise better terms to the Debtors' estates than the Buyer.

D.      Approval of the Sale Motion and the Final APA and each of its exhibits, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

E.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

## V.      No Fraudulent Transfer

A.      The consideration provided by the Buyer for the Acquired Assets, Assumed Executory Contracts and Assumed Liabilities pursuant to the Final APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

## VI.     Method of Effecting the Sale

A.      The Final APA provides that the Buyer shall acquire the Acquired Assets in exchange for certain cash amounts as well as assumption of certain debts, including(the "DIP Obligations"), pursuant to that certain *Superpriority Debtor-in-Possession Secured Promissory Note* dated as of April 2, 2020, by and among Debtor Rudy's Barbershop Holdings, LLC ("Rudy's"), as the Borrower, and Salon Holdings, as the lender party thereto (the "DIP Lender") (as amended, modified, or supplemented, the "DIP Agreement").  The Cash amounts to be paid by the Debtor at or prior to the Closing Date shall be as follows: : (1) all Liabilities arising under the DIP Agreement; (2) the balance due on Seller's corporate American Express cards; (3) Buyer's cash bid and overbid payment of $130,000; (4) Buyer's Break-Up Fee due of $100,000; (5) Buyer's obligations under the Payroll Bridge Loan of $204,700; (6) Buyer's obligations under the Prepetition Promissory Notes of either $200,000 or 10% of the Buyer's equity, at the option of the issuer of the Prepetition Promissory Notes.  Due to the logistical scope of the Closing, the Buyer shall have the option of prepaying any of the these obligations at any time between entry of this Order and the Closing Date and the Debtor, the DIP Lender and all affected Parties shall promptly

cooperate to provide the Buyer with a closing statement to facilitate payment prior to the Closing Date.

## VII.    Validity of Transfer

A.    The Debtors have full corporate power and authority to execute and deliver the Final APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Final APA, except as otherwise set forth in the Final APA.

B.    The transfer of the Acquired Assets to the Buyer, as of the Closing Date, shall constitute a legal, valid, and effective transfer of the Debtors' interest in such asset, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Encumbrances (as defined below) accruing, arising or relating to any time prior to the Closing Date, except for the Permitted Encumbrances and Assumed Liabilities under the Final APA, with all Encumbrances attaching to the net cash proceeds of the Sale, if any, attributable to the Acquired Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect that such Encumbrance had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## VIII.    Section 363(f) is Satisfied

A.    The Buyer would not have entered into the Final APA and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities) if the sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assumed Executory Contracts to the Buyer, were not, except as otherwise provided in the Final APA with respect to the Assumed Liabilities, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Buyer would, or in the future could (except and only to the extent

expressly provided in the Final APA and with respect to the Assumed Liabilities), be liable for any of such Encumbrances, including, but not limited to the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other labor or employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to any of the following, as they may be amended from time to time (a) the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination In Employment Act of 1967 (including Older Workers Benefit Protection Act), (h) the Americans with Disabilities Act of 1990 (including the ADA Amendments Act of 2008), (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal labor or employment or benefit claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, including, without limitation, any environmental liens or claims; and (6) any theories of transferee or successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order.

B.     To the extent allowed by applicable law, except as otherwise set forth in this Sale Order, the Buyer (i) is not, and shall not be considered, a successor to the Debtors, (ii) have not, *de facto* or otherwise, merged with or into the Debtors, (iii) are not a continuation or substantial

continuation of any of the Debtors or their respective estates, businesses or operations, or any enterprise of the Debtors, and (iv) do not have a common identity of incorporators, directors or equity holders with the Debtors.

C.    The Debtors may sell the Acquired Assets free and clear of all Encumbrances (except for the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of the Encumbrances, who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, attach to the net cash proceeds of the Sale attributable to the Acquired Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect and subject to all of the Debtors' defenses and counterclaims, that such Encumbrance had prior to the Sale.

D.    The Buyer shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Liabilities and such obligations specifically set forth in and solely to the extent provided pursuant to the Final APA.

## IX.    Assumption and Assignment of the Executory Contracts

A.    The assumption and assignment of the Assumed Executory Contracts pursuant to the terms of this Sale Order is integral to the Final APA and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    Except as provided in this Sale Order or as may be subsequently agreed upon by the parties or determined by this Court, the amounts set forth on **Exhibit B** annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy

Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Executory Contracts (the "Cure Amounts"); *provided, however*, that amounts due or that may become due for postpetition goods and services after the Sale Closing Date shall be paid by Buyer in the ordinary course of business, subject to the rights of all parties to dispute any amount as being due and owing.

C.     Pursuant to the terms of the Final APA, the Buyer has agreed to: (i) cure and/or provide adequate assurance of cure of any monetary default existing on the Closing Date, or such other date as may be agreed upon by Buyer and the counterparty to such Assumed Executory Contract, under any of the Assumed Executory Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provide compensation or adequate assurance of compensation to each Contract Counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Executory Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provide adequate assurance of its future performance under the Assumed Executory Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

X.     **Circumstances for an Immediate Sale**

A.     To enhance the Debtors' level of liquidity, to reduce the amount of postpetition financing borne by the Debtors, and to maximize the amount of funding available to provide for a timely exit from these Chapter 11 Cases, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Final APA.  Time is of the essence in consummating the Sale.

B.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Final APA, the proposed Sale of the Acquired Assets to the

Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

      C.      The Sale does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests.

      D.      The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**<u>General Provisions</u>**

      1.      The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby and in the Final APA is approved as set forth in this Sale Order.

      2.      The Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference and the Court takes judicial notice thereof.

      3.      Any and all objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case, the party asserting the objection or reservation of right is enjoined from taking any action against the Buyer, its affiliates, or any agents of the foregoing to recover any claim which such person or entity has

solely against the Debtors, or their estates. Those parties who did not object or who withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

**Approval of the Final APA**

4.      The Final APA (including, without limitation, the obligations to pay the Break-Up Fee in cash at closing contained therein) and all ancillary documents are hereby authorized and approved in their entirety.  The failure to specifically include any particular provision of the Final APA or the ancillary documents in connection therewith in this Sale Order shall not diminish or impair the effectiveness of such provision.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized, and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Final APA and this Sale Order, (ii) transfer and assign all right, title, and interest to all property, licenses (including, to the extent transferable, all Intellectual Property Licenses listed on Exhibit A to the Final APA), and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the APA, and (iii) execute and deliver, perform under, consummate, implement and close fully the Final APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final APA and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Final APA and such ancillary documents; and further, if necessary, pay the Break-Up Fee, pursuant to and in accordance with the terms and conditions of the Final APA and the Debtors shall at all times act in accordance with the terms thereof.

6.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (as defined in section 101(5) of the Bankruptcy Code) against any Debtor, whether known or unknown, any holders of Liens (as defined in section 101(37) of the Bankruptcy Code, including, without limitation, all holders of recorded and unrecorded Liens encumbering all or any portion of the Acquired Assets), all Contract Counterparties, the Buyer and all successors and assigns of the Buyer, any other bidders for the Acquired Assets, any trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.  This Sale Order and the Final APA shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and their respective successors and assigns.

**Transfer of the Acquired Assets**

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets on the Closing Date.  The Acquired Assets (including the Assumed Executory Contracts) shall be transferred to the Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Debtors' interest in such Acquired Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of any lien (including a "lien" as defined in section 101(37) of the Bankruptcy Code), Encumbrance, Claim, right, demand, charge, mortgage, deed of trust, lease, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, encroachment, right of first refusal, preemptive right, proxy, voting trust or agreement, transfer restriction under any shareholder agreement or similar agreement, judgment, conditional sale or other title retention agreement or other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever

14

(collectively, the "Encumbrances"), except for the Assumed Liabilities under the Final APA. Upon the Closing, the Buyer shall take title to and possession of the Acquired Assets, subject only to the Assumed Liabilities, and the Acquired Assets shall thereafter be the sole and exclusive property of the Buyer and not be deemed property of the Debtors or their estates for any purpose after the Closing. All Encumbrances shall attach solely to the net proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

8.     The sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assumed Executory Contracts to the Buyer, shall be, except as otherwise provided in the Final APA with respect to the Assumed Liabilities or set forth in this Sale Order, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Buyer would, or in the future could (except and only to the extent expressly provided in the Final APA and with respect to the Assumed Liabilities), be liable for any of such Encumbrances, including, but not limited to in respect of the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other labor or employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to any of the following, as they may be amended from time to time (a) ERISA, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination In Employment Act of 1967 (including Older Workers Benefit Protection Act), (h) the Americans with Disabilities Act of 1990 (including the ADA

Amendments Act of 2008), (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal labor or employment or benefit claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (6) any theories of transferee or successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order.

9.      Except as expressly provided by the Final APA with respect to the Assumed Liabilities and Assumed Executory Contracts, all persons and entities holding Encumbrances on all or any portion of the Acquired Assets, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their property or the Acquired Assets, such persons' or entities' rights relating to any such Encumbrances.  On the Closing Date, the Debtors and each holder of an Encumbrance is authorized to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to release its Encumbrances on the Acquired Assets, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist.

10.      All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets and assign the Assumed Executory Contracts to the Buyer in accordance with the terms of the Final APA and this Sale Order.

11.      All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or its assignee at the Closing.

12.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

13.     Upon the Closing, the Debtors are hereby authorized, and the Buyer is hereby authorized, to execute and file termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Encumbrances, which any person or entity has or may assert with respect to all or any portion of the Acquired Assets.

14.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order to consummate the transactions contemplated by the Final APA.  The provisions of this Sale Order authorizing the Sale of the Acquired Assets by the Debtors free and clear of Encumbrances shall be self-executing, and none of the Debtors, the Buyer or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; *provided, however,* that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Sale Order or the Final APA.

15.    Notwithstanding anything to the contrary in this Sale Order, in the Sale Motion or the Final APA, the Buyer shall receive the benefits and burdens of, and be responsible for payment in full of all accrued charges, payments, and the like arising under or pursuant to the Assumed Liabilities. If the Buyer disputes any cure amount due under any of the Assumed Liabilities and the parties are unable to come to an agreement regarding the amount actually owed, the dispute may be adjudicated by the Bankruptcy Court or any other court of competent jurisdiction.  The Buyer shall be entitled to file or record a certified copy of this Sale Order in the applicable public records in order to give notice of the termination and release of Encumbrances pursuant to this Sale Order.

16.    This Sale Order shall be effective as a determination that, as of the Closing Date, all Claims (as defined in section 101(5) of the Bankruptcy Code), other than Assumed Liabilities, arising, at law, in equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence, or circumstances taking place on or before the Closing Date, in any way relating to the Debtors or the Chapter 11 Cases or the negotiation, formulation, preparation, entry into, or dissemination of the Final APA have been unconditionally released, discharged and terminated as to Buyer and the Acquired Assets.

**Executory Contracts and Leases**

17.    Upon the Closing of the Sale, the Debtors are authorized to assume and assign the Assumed Executory Contracts to the Buyer free and clear of all Encumbrances, except for the obligation to pay the applicable Cure Amount, if any.  With respect to each Assumed Executory Contract, the payment of the applicable Cure Amount (if any) by the Buyer shall (a) effect a cure of all monetary defaults existing thereunder as of the Closing Date, (b) compensate the applicable Contract Counterparty for any actual pecuniary loss resulting from such default, and (c) together

with the assumption of the Assumed Executory Contract by the Buyer, constitute adequate assurance of future performance thereof.  The Buyer shall then have assumed the Assumed Executory Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Executory Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts by the Buyer, neither the Debtors nor the Buyer shall have any further liabilities to the Contract Counterparties other than the Buyer's obligations under the Assumed Executory Contracts that accrue and become due and payable on or after the Closing Date.

18.      Pursuant to the terms of the Final APA, the Buyer may, by written notice to the Debtors, choose to exclude certain of the Debtors' contracts or leases from the list of Assumed Executory Contracts until three (3) business days prior to the Closing Date, in which case each such contract or lease shall not be assumed by the Debtors.  Notwithstanding the foregoing, at Closing, Rudy's Barbershop Holdings, LLC ("Holdings") shall be required to and shall assign to Purchaser, and Purchaser shall assume, the Warehouse and Fulfillment Contract originally between Holdings and Global Fulfillment (the "Warehouse Contract"), which Global Fulfillment subsequently assigned to Kaye-Smith Enterprises, LLC (the "Kaye-Smith Contract").   In connection with such assumption and assignment, Purchaser shall pay, on or before Closing, all outstanding amounts owed to Kaye-Smith with respect to the Kaye-Smith Contract as of the date of Closing, which amounts totaled $38,096.57 as of April 27, 2020.

19.      Any provisions in any Assumed Executory Contract that prohibits or conditions the assignment of such Assumed Executory Contract or allows the party to such Assumed Executory Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Executory Contract, constitute

unenforceable anti-assignment provisions that are void and of no force and effect pursuant to section 365(f) of the Bankruptcy Code.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Executory Contracts have been satisfied, and such assumption and assignment shall not constitute a default thereunder.  Upon the Closing and the payment of the required Cure Amount by the Buyer, if any, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under each Assumed Executory Contract.

20.      Other than as provided under the Final APA, there shall be no rent accelerations, assignment fees, deposits, increases (including advertising rates) or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Assumed Executory Contracts.

21.      Upon the Closing and the payment of the Cure Amount by the Buyer, if any, applicable to any Assumed Executory Contract, the Buyer shall be deemed to be substituted for the relevant Debtor as a party to such Assumed Executory Contract, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under such Assumed Executory Contract.

22.      Upon the Closing and the payment of the applicable Cure Amounts, if any, the Assumed Executory Contracts shall remain in full force and effect, and no default shall exist thereunder and there shall not exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

23.      Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the

Debtors, their estates, the Buyer, or any of their respective successors and assigns any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Executory Contracts existing as of the Closing Date or arising by reason of the Closing.

**Sale of Avoidance Actions**

24.     As provided in the Final APA, this Sale Order approves and provides for the transfer to the Buyer of all avoidance actions under chapter 5 of the Bankruptcy Code relating to any Designated Contract or trade vendor that any Buyer will conduct business with, following the Closing.

**Other Provisions**

25.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, their successors and assigns, or the Acquired Assets, with respect to (a) any Encumbrance arising prior to the Closing of the Sale or (b) successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Sale Order, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, its successors or assigns, assets or properties; (iii) creating, perfecting, or enforcing any Encumbrance against the Buyer, its successors or assigns, assets or properties; (iv) asserting any setoff, right or subrogation or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew and license, permits or authorizations to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

26.     To the maximum extent available under applicable law and to the extent provided for under the Final APA, except as otherwise set forth in this Sale Order, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets and, to

the maximum extent available under applicable law and to the extent provided for under the Final APA, all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date, and all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding seeking to revoke, terminate or refuse to renew, based upon conduct occurring prior to the Sale, any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.  Subject to paragraph 37 of this Order and any applicable law, all existing licenses or permits applicable to the Acquired Assets shall remain in place for the Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

27.     Except for the Assumed Liabilities, the Buyer shall not have any liability for any obligation of the Debtors arising under or related to any of the Acquired Assets.  Without limiting the generality of the foregoing, and except for the Assumed Liabilities, the Buyer shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates.  By virtue of the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Sale Order, the Buyer and its affiliates, successors and assigns shall not be deemed or considered to, (a) be a successor (or other such similarly situated party), or otherwise be deemed a successor, to Sellers, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws; (b) have any responsibility or liability for any obligations of Debtors, or any affiliate of Debtors, based on any theory of successor or similar theories of liability; (c) have, de facto or otherwise, merged with or

into any of the Debtors; (d) be an alter ego or a mere continuation or substantial continuation of any of the Debtors (and there is no continuity of enterprise between any Buyer and any Debtor), including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to Debtors' liability under such law, rule or regulation or doctrine; or (e) be holding itself out to the public as a continuation of any of Sellers or their respective estates.

28.     The transactions contemplated by the Final APA and this Sale Order are undertaken by the Buyer without collusion and in good faith, as that term is described in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Executory Contracts), unless such authorization and such Sale are duly stayed pending such appeal. The Buyer is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, the Buyer is entitled to the full protections of section 363(m) of the Bankruptcy Code.

29.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.

30.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

31.     The Final APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court provided that any such modification, amendment or

supplement does not have a material adverse effect on the Debtors' estates or on the interests of the Buyer as determined by the Bankruptcy Court or a court of competent jurisdiction.

32.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final APA, all amendments thereto and any releases, waivers and consents hereunder and thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to any of the foregoing.

33.     The Debtors' bank accounts and cash management system constitute Acquired Assets under the Final APA and shall be transferred to the Buyer pursuant to the Final APA and this Sale Order.

34.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion filed in these Chapter 11 Cases, the terms of this Sale Order shall govern.

36.     Nothing in this Sale Order or the Final APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.

37.     Nothing in this Sale Order or the Final APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any

tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order

or to adjudicate any defense asserted under this Sale Order.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

26

**Dated: May 11th, 2020**
**Wilmington, Delaware**