# Exhibit A

to Sale Order:

## (Asset Purchase Agreement)

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**RUDY'S BARBERSHOP HOLDINGS LLC,**

**THE OTHER SELLER PARTIES HERETO,**

**MALDEN AVENUE ASSOCIATES, LLC, DBA RUDY'S RELOADED**

**THE OTHER BUYER PARTY HERETO**

**AND**

**THE OTHER PARTIES IDENTIFIED ON THE SIGNATURE PAGES HERETO**

**MAY 7, 2020**

Rudy's Barbershop Asset Purchase Agreement

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS ................................................................................................ 5

      Section 1.1      Definitions.................................................................................... 5
      Section 1.2      Interpretations .......................................................................... 21

ARTICLE II PURCHASE AND SALE .......................................................................... 22

      Section 2.1      Purchase and Sale of Assets....................................................... 22
      Section 2.2      Assumed Liabilities ................................................................... 22
      Section 2.3      Consideration; Deposit; Escrow Amounts.................................. 22
      Section 2.4      Closing ...................................................................................... 23
      Section 2.5      Closing Payments and Deliveries ............................................... 23
      Section 2.6      Assumption/Rejection of Certain Contracts and Leases.............. 24
      Section 2.7      Allocation.................................................................................. 25
      Section 2.8      Removal of Excluded Assets ...................................................... 25

ARTICLE III SELLERS' REPRESENTATIONS AND WARRANTIES ................. 25

      Section 3.1      Organization of Sellers; Good Standing ..................................... 25
      Section 3.2      Authorization of Transaction ..................................................... 26
      Section 3.3      Noncontravention; Government Filings ...................................... 26
      Section 3.4      Title to Assets ........................................................................... 26
      Section 3.5      Designated Contracts ................................................................. 26
      Section 3.6      Real Property ............................................................................ 26
      Section 3.7      Litigation; Decrees .................................................................... 27
      Section 3.8      Labor Relations......................................................................... 27
      Section 3.9      Brokers' Fees ............................................................................ 27
      Section 3.10     Taxes ........................................................................................ 28
      Section 3.11     Tangible Personal Property........................................................ 28
      Section 3.12     Employee Benefits ..................................................................... 28
      Section 3.13     Intellectual Property.................................................................. 29
      Section 3.14     Compliance with Laws; Permits ................................................ 31
      Section 3.15     Environmental Matters............................................................... 32
      Section 3.16     Related Party Transactions ......................................................... 32
      Section 3.17     Financial Statements.................................................................. 33
      Section 3.18     Inventory .................................................................................. 33
      Section 3.19     Sufficiency of Assets ................................................................. 33

ARTICLE IV BUYERS' REPRESENTATIONS AND WARRANTIES .................. 33

      Section 4.1      Organization of Buyer; Good Standing ...................................... 33
      Section 4.2      Authorization of Transaction ..................................................... 33
      Section 4.3      Noncontravention....................................................................... 34
      Section 4.4      Litigation; Decrees .................................................................... 34
      Section 4.5      Brokers' Fees ............................................................................ 34
      Section 4.6      Sufficient Funds; Adequate Assurances ..................................... 34

ARTICLE V PRE-CLOSING COVENANTS.................................................................. 34

Section 5.1       Efforts; Cooperation.................................................................. 35
Section 5.2       Conduct of the Business Pending the Closing ................................... 35
Section 5.3       Bankruptcy Court Matters........................................................... 36
Section 5.4       Notices and Consents................................................................ 37
Section 5.5       Notice of Developments ............................................................. 37
Section 5.6       Access.................................................................................... 37
Section 5.7       Bulk Transfer Laws.................................................................. 37

ARTICLE VI OTHER COVENANTS.................................................................. 38

Section 6.1       Further Assurances................................................................... 38
Section 6.2       Access; Enforcement; Record Retention ......................................... 39
Section 6.3       Covered Employees .................................................................. 39
Section 6.4       Transfer Taxes ........................................................................ 41
Section 6.5       Press Releases and Public Announcements ...................................... 41
Section 6.6       Non-Disclosure; Non-Solicit; Non-Disparagement.......................... 41
Section 6.7       No Successor Liability............................................................... 43
Section 6.8       Acquired Avoidance Actions ...................................................... 43

ARTICLE VII CONDITIONS TO OBLIGATION TO CLOSE................................ 43

Section 7.1       Conditions to Buyers' Obligations................................................ 43
Section 7.2       Conditions to Sellers' Obligations ............................................... 44
Section 7.3       No Frustration of Closing Conditions ............................................ 45

ARTICLE VIII TERMINATION.......................................................................... 45

Section 8.1       Termination of Agreement.......................................................... 45
Section 8.2       Effect of Termination................................................................ 46

ARTICLE IX MISCELLANEOUS ....................................................................... 47

Section 9.1       Survival ................................................................................. 47
Section 9.2       Expenses................................................................................ 47
Section 9.3       Entire Agreement..................................................................... 47
Section 9.4       Incorporation of Exhibits and Disclosure Schedule........................... 47
Section 9.5       Amendments and Waivers .......................................................... 47
Section 9.6       Succession and Assignment ........................................................ 47
Section 9.7       Notices.................................................................................. 48
Section 9.8       Governing Law ....................................................................... 49
Section 9.9       Submission to Jurisdiction; Service of Process ................................ 49
Section 9.10      Waiver of Jury Trial................................................................. 50
Section 9.11      Specific Performance................................................................ 50
Section 9.12      Severability ............................................................................ 50
Section 9.13      No Third Party Beneficiaries ...................................................... 50
Section 9.14      Non-Recourse......................................................................... 50
Section 9.15      Mutual Drafting ...................................................................... 50
Section 9.16      Disclosure Schedule.................................................................. 50
Section 9.17      Headings; Table of Contents....................................................... 51
Section 9.18      Counterparts; Facsimile and Electronic Signatures .......................... 51

Rudy's Barbershop Asset Purchase Agreement

Exhibit A – Form of Bill of Sale for Acquired Assets
Exhibit B – Form of Assignment and Assumption Agreement
Exhibit C – Form Intellectual Property Assumption and Assignment Agreement


Schedule A – Intellectual Property Licenses
Schedule B – Other Excluded Assets
Schedule 2.5(d) – Buyers' Stock
Schedule 2.7(a) – Executory Contracts
Schedule 2.7(b) – Designated Contracts and Assumed Leases
Schedule 3.6 – Barbershops
Schedule 3.7 – Litigation
Schedule 3.8 – Labor Relations
Schedule 3.8(c) – Employees
Schedule 3.10 – Taxes
Schedule 3.11 – Tangible Personal Property
Schedule 3.12(a) – Employee Benefit Plans
Schedule 3.12(c) – Knowledge of Sellers
Schedule 3.13(a) – Owned Intellectual Property
Schedule 3.13(a)(iii) – Owned Intellectual Property
Schedule 3.13(a)(iv) – Owned Intellectual Property
Schedule 3.13(d) – Owned Intellectual Property
Schedule 3.13(f) – Invalid or Unenforceable Owned Intellectual Property
Schedule 3.13(j) – Material Software
Schedule 3.14(b) – Permits
Schedule 3.16 – Related Party Transactions
Schedule 5.2(b) – Conduct of Business
Schedule 5.2(b)(xiii) – Rejected Contracts
Schedule 5.4(a) – Notices

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is entered into as of May 7, 2020 by and among Rudy's Barbershop Holdings LLC, a Delaware limited liability company ("RBS" or the "Company"), and the direct and indirect Subsidiaries and affiliates of RBS identified on the signature pages hereto (together with RBS, each a "Seller" and collectively, "Sellers"), Malden Avenue Associates, LLC, a Washington State limited liability company, or assigns, doing business as "Rudy's Reloaded" ("Rudy's Reloaded"). Rudy's Reloaded, is referred to herein as a "Buyer" or "Buyers"). Sellers and Buyers are referred to collectively herein as the "Parties" and each, a "Party".

### WITNESSETH

WHEREAS, on April 2, 2020 (the "Petition Date"), Sellers and certain of their affiliates filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Sellers wish to sell their on-going barbershop business (the "Business");

WHEREAS, Sellers and Buyers desire to enter into this Agreement to provide for the applicable Buyer to purchase, acquire and assume from the applicable Seller all of the Acquired Assets (as defined below) and Assumed Liabilities (as defined below), all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with Sections 105, 363 and 365 and other applicable provisions of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, the Parties hereby agree as follows:

### ARTICLE I
### DEFINITIONS

Section 1.1    Definitions. For purposes of this Agreement:

"Acquired Assets" means, all of Sellers' right, title and interest, free and clear of all Liens (other than Permitted Liens), in and to all of the properties, rights, interests and other tangible and intangible assets of Sellers for use in or relating to the Business (wherever located and whether or not required to be reflected on a balance sheet prepared in accordance with GAAP) including any assets acquired by Sellers after the date hereof but prior to the Closing; provided, however, that the Acquired Assets shall not include any Excluded Assets. Without limiting the generality of the foregoing, the Acquired Assets shall include the following (except to the extent listed or otherwise included as an Excluded Asset):

> (a)    to the extent transferable, all Intellectual Property related to the Business, including, but not limited to, all intellectual property rights arising from or relating to: all algorithms, APIs, designs, net lists, data, databases, data collections, diagrams, inventions (whether or not patentable), know how, methods, processes, proprietary information, protocols, schematics, specifications, tools, systems, servers, hardware, computers, point of sale equipment, inventory management equipment, software, software code (in any form, including source code and executable or object code), subroutines, techniques, user

*Signature Page to Asset Purchase Agreement*

interfaces, URLs, web sites, works of authorship and other similar materials, including all documentation related to any of the foregoing, including instruction manuals, laboratory notebooks, prototypes, samples, studies and summaries, whether or not embodied in any tangible form and whether or not specifically listed herein, and all related technology, that are used in, incorporated in, embodied in, displayed by or relate to, or are used in connection with the foregoing;

(b)      all tangible assets owned or leased by Sellers related to the Business or Barbershops, including all fixtures, trade fixtures, chairs, supplies, shelving, refrigeration equipment, computers and computer systems located at the Barbershops, any corporate offices or any other real property;

(c)      all rights under the Assumed Leases and Designated Contracts;

(d)      the Inventory, whether in the Barbershops, any warehouse(s) or in transit to the Barbershops;

(e)      all customer and end-user data and information, including information related to customer purchases or services provided to customers at the Barbershops, in each case, to the extent permitted to be assigned, used, or provided by Sellers under applicable Laws;

(f)      all in-process customer orders;

(g)      all trade receivables, whether current or non-current, and all other accounts receivable, including payment processor receivables, for sales made at the Barbershops prior to the Closing;

(h)      any Permit, to the extent transferable;

(i)      any and all books, records and other data relating to the Business and the Barbershops, including customer lists and customer and end-user information and data, supplier lists, mailing lists, accounting records, documentation or records, catalogs and printed materials relating thereto to the extent available;

(j)      all prepaid expenses, credits, advance payments, claims, security, refunds, rights of recovery, rights of set-off, rights of recoupment, deposits, charges, sums and fees (including any such item relating to the payment of Taxes), other than Prepaid Insurance;

(k)      any promotional materials, displays, media content and other property or equipment used in or related to the existing Business;

(l)      the Barbershop Cash Amount;

(m)      to the extent transferable, all Intellectual Property Licenses, including the licenses set forth on <u>Schedule A</u>;

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

(n)     financial, marketing and business data, pricing and cost information, business and marketing plans and other information, files, correspondence, records, data, plans, reports and recorded knowledge, historical trademark files, prosecution files of Sellers in whatever media retained or stored, including computer programs and disks, including files in the possession of Sellers;

(o)     all goodwill associated with the Business or the Acquired Assets;

(p)     all right of publicity and all similar rights, including all commercial merchandising rights;

(q)     product designs, product names, trade names, design rights, tech packs, artwork, archival materials and advertising materials, copy, commercials, images and artwork;

(r)     royalty payments and licensing receivables generated by the Business and attributable to the period from and/or after the Closing;

(s)     all Sellers' telephone, fax numbers and email addresses;

(t)     any avoidance actions under chapter 5 of the Bankruptcy Code relating to any Designated Contract or trade vendor that any Buyer will conduct business with, following the Closing (the "Acquired Avoidance Actions");

(u)     all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Acquired Assets;

(v)     all insurance benefits, including rights and proceeds, arising from or relating to the Business, the Purchased Assets or the Assumed Liabilities; and

(w)     any insurance claims, and related proceeds, related to an Acquired Asset,

provided, however, notwithstanding anything to the contrary set forth in this definition, the Acquired Assets shall not include any Excluded Assets.

"Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person, where "control" means the power, directly or indirectly, to direct or cause the direction of the management and policies of another Person, whether through the ownership of voting securities, by contract, or otherwise.

"Affiliate Agreement" has the meaning set forth in Section 3.16.

"Agreement" has the meaning set forth in the preamble.

"Assignment and Assumption Agreement" has the meaning set forth in Section 2.5(b).

"Assumed Leases" has the meaning set forth in Section 2.7(b).

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

Page 8

"Assumed Liabilities" means only the following Liabilities of each Seller incurred exclusively in the operation of the Business and existing as of the Closing (to the extent not paid prior to the Closing), or to the extent set forth in the following clauses:

(a)    all Liabilities under the Acquired Assets to the extent such Liabilities arise from and after the Closing Date;

(b)    all Liabilities arising under the Payroll Bridge Loan, which obligations shall be satisfied by payment in cash on the Closing Date in accordance with Section 2.5(e);

(c)    all Liabilities arising under the Prepetition Promissory Notes, which obligations shall be satisfied on the Closing Date by payment in Buyer Stock in accordance with Section 2.5(d).

(d)    all Liabilities to pay for goods or services ordered (and not paid by Sellers), prior to the Closing in the Ordinary Course of Business, but which are not delivered or performed until after the Closing;

(e)    all (i) shop or customer credits, sales promotions, rebates, coupons, gift cards and certificates or (ii) returns of goods or merchandise, customer prepayments and overpayments, customer refunds, credits, reimbursements and related adjustments with respect to goods or merchandise;

(f)    all accrued and unused vacation and sick time of the Transferred Employees;

(g)    all Liabilities arising under the Seller's corporate American Express cards in an amount not to exceed $97,000.00; and

(h)    all Cure Costs related solely to the Designated Contracts and Assumed Leases that will be assumed by the Sellers and assigned to the Buyers; and

(i)    all Cure Costs related to the Unrejected Leases subject to an agreement with landlords to assume the previously rejected leases at Pioneer Square store, University store and Main Street store; and

(j)    all liabilities for Stub Rent in an amount not to exceed $165,000, provided, however, that Buyer shall reserve all rights to negotiate the amount of any Stub Rent, if any, with any holder of a Claim for Stub Rent. The total Stub Rent due is presently $108,623.61; and

(k)    all liabilities for Claims under section 503(b)(9) of the Bankruptcy Code in an amount not to exceed $20,000; and

(l)    all Liabilities, listed in the Seller's bankruptcy schedules as of May 6, 2020 that are scheduled as non-contingent, liquidated, and undisputed debts from:

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

Page 9

    (1) Rudy's Barber Shop Holdings, LLC, Case No. 20-10746 at [DI 145];

    (2) Rudy's Barbershop, LLC, Case No. 20-10747, filed in Lead Case at [DI 147];

    (3) Rudy's Portland, LLC, Case No. 20-10750, filed in Lead Case at [DI 153];

    (4)  Rudy's Southeast, LLC Case No. 20-10751, filed in Lead Case at [DI 155];

    (5) Rudy's Hollywood, LLC Case No. 20-10749, filed in Lead Case at [DI 151];

    (6) Rudy's New York, LLC, Case No. 20-10748, filed in Lead Case at [DI 149];

provided, however, that notwithstanding anything to the contrary set forth in this definition, the Assumed Liabilities shall not include any Excluded Liabilities.

"Auction" has the meaning set forth in the Bidding Procedures Order.

"Back-up Bidder" has the meaning set forth in Section 5.3(e).

"Bankruptcy Cases" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by Sellers and certain of their Affiliates on April 2, 2020, and continuing immediately thereafter, in the Bankruptcy Court and styled *In re Rudy's Barbershop Holdings, LLC, et al.*, Case No. 20-10746 (LSS).

"Bankruptcy Code" has the meaning set forth in the recitals.

"Bankruptcy Court" has the meaning set forth in the recitals.

"Barbershop Cash Amount" means Sellers' cash located at the Barbershops as of the Closing Date.

"Barbershops" has the meaning set forth in Section 3.6.

"Bid Protections" has the meaning set forth in Section 5.3(b).

"Bidding Procedures Motion" has the meaning set forth in Section 5.3(a).

"Bidding Procedures Order" means an order entered by the Bankruptcy Court authorizing and approving the bidding, auction and sale procedures regarding the Acquired Assets, and other related relief, on terms further described in Section 5.3 (Bankruptcy Court Matters) herein and otherwise in form and substance reasonably satisfactory to Sellers and Buyer.

"Bill of Sale" has the meaning set forth in Section 2.5(b).

"Break-Up Fee" has the meaning set forth in Section 5.3(b).

"Business" has the meaning set forth in the recitals.

*Signature Page to Asset Purchase Agreement*

"Business Day" means any day, other than a Saturday, Sunday and any day which is a legal holiday under the laws of the State of New York or is a day on which banking institutions located in the State of New York are authorized or required by Law or other governmental action to close.

"Buyer" has the meaning set forth in the preamble.

"Buyer Proration Amount" has the meaning set forth in Section 2.6.

"Buyer Stock" means a 10 % ownership interest of the entities Rudy's Reloaded forms to acquire the assets of the Sellers.

"Cash Purchase Price" has the meaning set forth in Section 2.3(a).

"Claim" means any claim within the meaning of section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section 2.4.

"Closing Date" has the meaning set forth in Section 2.4.

"COBRA" means sections 601 through 608 of the Employee Retirement Income Security Act of 1974 and section 4980B of the IRC.

"Company" has the meaning set forth in the preamble.

"Company Benefit Plan" has the meaning set forth in Section 3.12(a).

"Company PTO Payments" has the meaning set forth in clause (h) of the definition of Excluded Liabilities.

"Company Severance Payments" has the meaning set forth in clause (h) of the definition of Excluded Liabilities.

"Company WARN Payments" has the meaning set forth in clause (h) of the definition of Excluded Liabilities.

"Competing Bid" has the meaning set forth in Section 5.3(d).

"Contract" means any agreement, contract, license, arrangement, commitment, promise, obligation, right, instrument, document or other similar understanding, which in each case is in writing and signed by parties intending to be bound thereby (other than any Leases).

"Covered Employee" means an employee of RBS or any of its Subsidiaries as of the date hereof whose duties relate primarily to the operation of any of the Business, including such employees who have been furloughed or are on short-term disability, long-term disability or any other approved leave of absence as of the Closing.

"Credit Bid" has the meaning set forth in Section 2.3.

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 11**

"Cure Costs" means all amounts payable, and obligations that must be satisfied, in order to cure any monetary defaults required to be cured under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption of executory Contracts and Leases.

"Debtors' Counsel" means Chipman Brown Cicero & Cole, LLP.

"Decree" means any judgment, decree, ruling, injunction, assessment, attachment, undertaking, award, charge, writ, executive order, administrative order or any other order of any Governmental Authority.

"Designated Contracts" has the meaning set forth in Section 2.7(b).

"DIP Financing Agreement" means that certain Senior Secured Multi-Draw Term Promissory Note (as amended, amended and restated, supplemented or otherwise modified from time to time), among the DIP Lender, the Company, as borrower, and the guarantors party thereto.

"DIP Lender" means RBS Salon Holdings Inc. ("Salon Holdings") (together with its respective successors and assigns).

"DIP Loan Closing Statement" means a statement setting out the obligations due under the DIP Financing Agreement.

"DIP Order" means that certain Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors And Debtors In Possession To Obtain Post-Petition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens And Super-Priority Claims, (IV) Granting Adequate Protection To Prepetition Lenders, (V) Modifying The Automatic Stay, And (VI) Granting Related Relief [D.I. ____], as such order has been or may be amended or modified from time to time.

"Disclosure Schedule" has the meaning set forth in Article III.

"Display Merchandise" means those items of inventory used in the ordinary course of business as displays or floor models, including inventory that has been removed from its original packaging for the purpose of putting such item on display, which goods are not otherwise damaged or defective. For the avoidance of doubt, Merchandise created for display and not saleable in the ordinary course of business shall not constitute Display Merchandise.

"Encumbrances" means any claim, community or other marital property interest, condition, equitable interest, right of way, encroachment, servitude, right of first refusal or similar restriction, including any restriction on use, voting (in the case of any security or equity interest), transfer, receipt of income or exercise of any other attribute of ownership.

"Environmental Law" means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation relating to the protection of the environment or natural resources.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

*Signature Page to Asset Purchase Agreement*

"ERISA Affiliate" means any Person that, at any relevant time, is or was treated as a single employer with any Seller for purposes of IRC § 414.

"Escrow Amount" has the meaning set forth in Section 2.3(b).

"Excluded Assets" means the following assets of Sellers as of the Closing, and only the following assets:

(a)     all files, books, records and documents prepared in connection with this Agreement or the transactions contemplated hereby or primarily relating to the Bankruptcy Cases, all minute books, corporate records (such as stock registers) and organizational documents of Sellers, Tax Returns, other Tax work papers, and all other documents not related to the Business, the Barbershops, the Acquired Assets or the Covered Employees;

(b)     all files, books, records and documents constituting work product of Sellers' legal counsel;

(c)     all files, books, records and documents the disclosure or transfer of which is prohibited by third party agreement or applicable Laws;

(d)     any Contract that is not a Designated Contract;

(e)     any Lease that is not an Assumed Lease;

(f)     any Tax refunds, rebates or credits of Sellers;

(g)     prepaid insurance;

(h)     all avoidance actions under chapter 5 of the Bankruptcy Code, except for any avoidance actions under chapter 5 of the Bankruptcy Code relating to any Designated Contract or trade vendor that any Buyer will conduct business with, following the Closing;

(i)     any security deposits or pre-paid expenses paid prior to the Closing Date and not associated with the Acquired Assets;

(j)     all insurance policies and binders, all claims, refunds and credits from insurance claims, insurance policies or binders due or to become due with respect to such policies or binders and all rights to proceeds thereof;

(k)     all equipment, tools or assets belonging to employees or independent contractors of the Sellers;

(l)     all shares of capital stock or other equity interests of any Seller and all securities convertible into or exchangeable or exercisable for shares of capital stock or other equity interests of any Seller or any other Person; and

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 13**

(m)    all assets, properties, rights, interests, and Claims of every kind and description of any Sellers which (A) are not Acquired Assets, (B) are not related to, used, or held for use in, the Business, or (C) are described on <u>Schedule B</u>.

"<u>Excluded Liabilities</u>" means any Liabilities of Sellers, whether existing on the Closing Date or arising thereafter as a result of any act, omission or circumstances taking place prior to the Closing, other than the Assumed Liabilities.  Without limiting the foregoing, Buyers shall not be obligated to assume, and do not assume, and hereby disclaims all the Excluded Liabilities, including the following Liabilities (which shall also be considered Excluded Liabilities) of any of Sellers or of any predecessor of any of Sellers, whether incurred or accrued before or after the Closing:

(a)    any Liability not relating to or arising out of the Business or the Acquired Assets, including any Liability exclusively relating to or primarily arising out of the Excluded Assets;

(b)    any Liability of Sellers for Taxes (except for Priority Tax Claims set forth in the Seller's bankruptcy schedules that are Assumed Liabilities and as provided for in <u>Section 2.9</u> and <u>Section 6.5</u>);

(c)    all Liabilities of Sellers under this Agreement or any Related Agreement and the transactions contemplated hereby or thereby;

(d)    any Liability associated with any and all indebtedness including any guarantees of third party obligations and reimbursement obligations to guarantors of Sellers' obligations or under letters of credit of any Seller;

(e)    any Liabilities in respect of any Contracts or Leases that are not Designated Contracts or Assumed Leases, respectively;

(f)    all Liabilities for fees, costs and expenses that have been incurred or that are incurred or owed by Sellers in connection with this Agreement or the administration of the Bankruptcy Cases (including all fees and expenses of professionals engaged by Sellers) and administrative expenses and priority claims accrued through the Closing Date and specified post-closing administrative wind-down expenses of the bankrupt estates pursuant to the Bankruptcy Code (which such amounts shall be paid by Sellers from the proceeds collected in connection with the Excluded Assets) and all costs and expenses incurred in connection with (i) the negotiation, execution and consummation of the transactions contemplated under this Agreement and each of the other documents delivered in connection herewith, (ii) the negotiation, execution and consummation of the DIP Financing Agreement, and (iii) the consummation of the transactions contemplated by this Agreement, including any retention bonuses, "success" fees, change of control payments and any other payment obligations of Sellers payable as a result of the consummation of the transactions contemplated by this Agreement and the documents delivered in connection herewith;

*Signature Page to Asset Purchase Agreement*

(g)    all Liabilities (i) related to the WARN Act, to the extent applicable, with respect to the termination of employment of Sellers' employees (the "Company WARN Payments"), (ii) for any action resulting from Sellers' employees' separation of employment (the "Company Severance Payments"), and (iii) for vacation, sick leave, parental leave, and other paid time accrued by Sellers' employees who are not Transferred Employees  (the "Company PTO Payments");

(h)    all Liabilities with respect to the termination of employment of the Company "insiders" (as such term is defined under the Bankruptcy Code);

(i)    all Company Benefit Plans (including all assets, trusts, insurance policies and administration service contracts related thereto);

(j)    all Liabilities with respect to any terminated employees with respect to COBRA;

(k)    all Liabilities of Sellers to its equity holders respecting dividends, distributions in liquidation, redemptions of interests, option payments or otherwise, and any liability of Sellers pursuant to any Affiliate Agreement;

(l)    all Liabilities arising out of or relating to any business or property formerly owned or operated by any of Sellers, any Affiliate or predecessor thereof, but not presently owned and operated by any of Sellers;

(m)    all Liabilities relating to Litigation, claims, actions, suits, arbitrations, litigation matters, proceedings or investigations (in each case whether involving private parties, Governmental Authorities, or otherwise) involving, against, or affecting any Acquired Asset, the Business, the Company or any assets or properties of Sellers, commenced, filed, initiated or threatened before the Closing and relating to facts, events or circumstances arising or occurring before the Closing;

(n)    all Liabilities arising under Environmental Laws relating to facts, events or circumstances arising or occurring before the Closing;

(o)    accounts payable;

(p)    Intentionally left blank

(q)    Liabilities to any employees arising prior to the Closing, except for vacation, sick leave, parental leave and other paid time accrued by Sellers' employees who are Transferred Employees; and

(r)    all Liabilities of Sellers or its predecessors arising out of any contract, agreement, Permit, franchise or claim that is not transferred to a Buyer as part of the Acquired Assets or is not transferred to a Buyer because of any failure to obtain any third-party or governmental consent required for such transfer.

*Signature Page to Asset Purchase Agreement*

"Expense Reimbursement" has the meaning set forth in Section 5.3(b).

"Founders' Notes" shall mean each of the subordinated unsecured promissory notes issued by the Company in partial exchange for the founders prior ownership interest in certain of the subsidiaries in RBS in the aggregate original principal amount of $1,500,000.00, which Founders' Notes have an outstanding balance as of the Petition Date of $1,537,397.26.

"GAAP" means United States generally accepted accounting principles consistently applied.

"Governmental Authority" means any federal, state, local or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department or other governmental entity.

"Intellectual Property" means any and all intellectual property and other similar proprietary rights, in any jurisdiction in the world (whether arising under statutory or common law, contract, or otherwise), which includes rights pertaining to or arising from: (a) inventions, discoveries, processes, designs, techniques, developments and related improvements whether or not patentable; (b) patents, patent applications, industrial design registrations and applications therefor, divisions, divisionals, continuations, continuations-in-part, reissues, substitutes, renewals, registrations, confirmations, re-examinations, extensions and any provisional applications, or any such patents or patent applications, and any foreign or international equivalent of any of the foregoing; (c) trademarks (whether registered, unregistered or pending), trade dress, service marks, service names, trade names, brand names, product names, logos, domain names, internet rights (including IP addresses and AS numbers), corporate names, fictitious names, other names, symbols (including business symbols), slogans, translations of any of the foregoing and any foreign or international equivalent of any of the foregoing and all goodwill associated therewith and (to the extent transferable by law but subject to Section 6.1(d)) any applications or registrations in connection with the foregoing and all advertising and marketing collateral including any of the foregoing; (d) work specifications, databases and artwork; (e) technical, scientific and other know-how and information (including promotional material and tech packs and blocks), trade secrets, confidential information, methods, processes, practices, formulas, designs, patterns, assembly procedures, specifications; (f) rights associated with works of authorship including copyrights, moral rights, design rights, rights in databases, copyright applications, copyright registrations, rights existing under any copyright laws and rights to prepare derivative works; (g) work for hire; (h) the name "Rudy's Barbershop" or any derivation thereof, (i) customer lists and databases, websites, social media sites and accounts (including the content contained therein, user names and passwords), diagrams, drawings, domain names, and all advertising and marketing materials and collateral (including all physical, digital, or electronic imagery and design files), samples, product catalogs, product designs and specifications (including tech specifications) vendor and merchandise supplier data and information, (j) computer software and firmware, including data files, source code, object code and software-related specifications and documentation, (k) all books and records, files, data, reports, computer codes and sourcing data, advertiser and supplier lists, cost and pricing information, business plans, and manuals, blueprints, research and development files, and other records; (l) financial, marketing and business data, pricing and cost information, business and marketing plans and other information, files, correspondence, records, data, plans, reports and

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 16**

recorded knowledge, historical trademark files, prosecution files in whatever media retained or stored, including computer programs and disks, (m) the right to sue for infringement and other remedies against infringement of any of the foregoing, and (n) rights to protection of interests in the foregoing under the laws of all jurisdictions.

"Intellectual Property Licenses" means (i) any grant to a third Person of any right to use any Intellectual Property owned by Sellers and (ii) any grant to Sellers of a right to use a third Person's Intellectual Property rights (other than off-the-shelf software for which Company pays less than five thousand Dollars ($5,000) in licensing or other fees per software title per annum).

"Inventory" means all of Sellers' inventory and goods now owned or hereinafter acquired, wherever located, relating to the Business, including all inventory and goods that (a) are leased by Sellers as lessor, (b) are held by Sellers for sale or lease or to be furnished by Sellers under a Contract of service, or (c) consist of raw materials, work in process, finished goods, supplies, or material used or consumed in connection with the Business maintained or held by, stored by or on behalf of, or in transit to, any of Sellers.

"IRC" means the Internal Revenue Code of 1986, as amended.

"IRS" means the Internal Revenue Service.

"Knowledge" of Sellers or the Company (and other words of similar import) means the actual or constructive knowledge of Kathleen Trent and/or Ryan Kyle, after due inquiry.

"Landlord" means the landlord of real property under any of the Sellers' Leases.

"Law" means any constitution applicable to, and any statute, treaty, code, rule, regulation, ordinance or requirement of any kind of, any Governmental Authority.

"Lead Case" means Rudy's Barbershop Holdings, LLC, US Bankruptcy Court for the District of Delaware Case No. 20-10746-LSS

"Leases" means all leases, subleases, licenses, concessions, options, contracts, extension letters, easements, reciprocal easements, assignments, termination agreements, subordination agreements, nondisturbance agreements, estoppel certificates and other agreements (written or oral), and any amendments or supplements to the foregoing, and recorded memoranda of any of the foregoing, pursuant to which any Seller holds any leasehold or subleasehold estates and other rights in respect of any Barbershop.

"Liability" means any liability or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated and whether due or to become due) regardless of when arising.

"Lien" means any lien (statutory or otherwise), Claim, Encumbrance, deed of trust, right of first offer, easement, servitude, transfer restriction under any shareholder or similar agreement, mortgage, pledge, lien, charge, security interest, option, right of first refusal, easement, security

agreement or other encumbrance or restriction on the use or transfer of any property, hypothecation, license, preference, priority, covenant, right of recovery, order of any Governmental Authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, and (iii) any leasehold interest, license or other right, in favor of a third party or a Seller, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown; provided, however, that "Lien" shall not be deemed to include any license of Intellectual Property.

"Litigation" means any action, cause of action, suit, claim, investigation, audit, demand, hearing or proceeding, whether civil, criminal, administrative or arbitral, whether at law or in equity and whether before any Governmental Authority.

"Material Adverse Effect" means any effect, condition, fact, circumstance or change that has, or could reasonably be expected to have, individually or in the aggregate, a material adverse effect on the condition of the Acquired Assets, taken as a whole, other than any effects, circumstances or changes to the extent arising from or related to: (a) general business or economic conditions in any of the geographical areas in which the Barbershops operate; (b) any condition or occurrence affecting barbershops or the salon industry generally; (c) national or international political or social conditions, including the engagement by any country in hostilities, whether commenced before or after the date hereof and whether or not pursuant to the declaration of a national emergency or war, or the occurrence of any military or terrorist attack; (d) financial, banking or securities markets (including any disruption thereof or any decline in the price of securities generally or any market or index); (e) the occurrence of any act of God or other calamity or force majeure events (whether or not declared as such), including any strike, labor dispute, civil disturbance, embargo, natural disaster, fire, flood, hurricane, tornado, or other weather event; (f) changes in Law or accounting rules (including GAAP); (g) the taking of any action required or permitted by this Agreement or any Related Agreement or taken (or omitted to be taken) with the consent of the other Party (other than any action taken pursuant to Section 5.2(a)); (h) any effects or changes as a result of the announcement, pendency or completion of the transactions contemplated by this Agreement, including losses or threatened losses of employees, customers, suppliers, distributors or others having relationships with Sellers; (i) any filing or motion made under sections 1113 or 1114 of the Bankruptcy Code; (j) the closing of any shops not acquired by Buyers or the sale of any other assets or shops to any third parties by any Seller or any of its Affiliates; (k) any effects or changes arising from or related to the breach of the Agreement by Buyers; (l) the failure of Sellers to obtain any consent, permit, authorization, waiver or approval required in connection with the transactions contemplated hereby; (m) any items set forth in the Disclosure Schedule; or (n) any effect resulting from the filing or pendency of the Bankruptcy Cases; *provided, however,* that any event, occurrence, fact, condition or change referred to in clauses (a) through (f) immediately above shall be taken into account in determining whether a Material Adverse Effect has occurred or could reasonably be expected to occur to the extent that such event, occurrence, fact, condition or change has a disproportionate effect on the Business compared to other participants in the industries in which the Business operates; *provided, however*

that global coronavirus 2019 pandemic and business restrictions related thereto shall not be considered a Material Adverse Effect.

"Merchandise" shall mean (A) all finished goods inventory that is owned by the Company and located at the Barbershops as of the Closing Date; (B) any Merchandise located at a distribution center; and (C) the Display Merchandise.

"Ordinary Course of Business" means the ordinary and usual course of normal day-to-day operations of the Business through the date hereof consistent with past practice from the date of the filing of the Bankruptcy Cases, but subject, however, to (x) changes arising or resulting from the filing or pendency of the Bankruptcy Cases and (y) the "going out of business sales" contemplated as of the date hereof.

"Outside Back-up Date" has the meaning set forth in Section 5.3(e).

"Overbid Protection" has the meaning set forth in Section 5.3(b).

"Owned Intellectual Property" means all Intellectual Property owned or purported to be owned by Sellers.

"Parties" has the meaning set forth in the preamble.

"Payroll Bridge Loan" means that certain secured term loan entered into by and among the Company and Northwood Ventures, LLC, Northwood Capital Ventures, LLC, PCG-ARES Sidecar Investment, LP, Partnership Capital Growth Investors III Block AIV, LP, and Partnership Capital Growth Investors III Director AIV, LP, dated as of March 20, 2020 in the principal amount of two hundred thousand Dollars ($200,000).

"Permit" means any franchise, approval, permit, license, order, registration, certificate, variance or similar right obtained from any Governmental Authority.

"Permitted Lien" means (a) Liens for Taxes not yet delinquent or which are being contested in good faith by appropriate proceedings and arising or incurred in the Ordinary Course of Business; (b) mechanic's, workmen's, repairmen's, warehousemen's, carrier's or other similar Liens, including all statutory liens, arising or incurred in the Ordinary Course of Business for amounts which are not delinquent and which are not, individually or in the aggregate, material to the business of Sellers; (c) with respect to leased or licensed real or personal property, the terms and conditions of the lease, license, sublease or other occupancy agreement applicable thereto which are customary; (d) with respect to real property, usual and customary zoning, building codes and other land use laws regulating the use or occupancy of such real property or the activities conducted thereon which are imposed by any Governmental Authority having jurisdiction over such real property; (e) usual and customary easements, covenants, conditions, restrictions and other similar matters affecting title to real property and other encroachments and title and survey defects provided that they do not materially detract from the property.

*Signature Page to Asset Purchase Agreement*

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or any other entity, including any Governmental Authority or any group of any of the foregoing.

"Petition Date" has the meaning set forth in the recitals.

"Prepetition Lenders" means Northwood Ventures, LLC, Northwood Capital Ventures, LLC, PCG-ARES Sidecar Investment, LP, Partnership Capital Growth Investors III Block AIV, LP, and Partnership Capital Growth Investors III Director AIV, LP.

"Prepetition Promissory Notes" means each subordinated promissory note issued by the Company beginning on December 17, 2014, in the aggregate principal amount of three million Dollars ($3,000,000), *provided*, *however* that the Prepetition Promissory Notes do not include the Founders' Notes.

"Prevailing Bidder" has the meaning set forth in Section 5.3(e).

"Purchase Price" has the meaning set forth in Section 2.3(a).

"RBS" has the meaning set forth in the preamble.

"Related Agreements" means the Bill of Sale, the Assignment and Assumption Agreement, and the Escrow Agreement.

"Representative" means, when used with respect to a Person, the Person's controlled and controlling Affiliates (including Subsidiaries) and such Person's and any of the foregoing Person's respective officers, directors, managers, members, shareholders, partners, employees, agents, representatives, advisors (including financial advisors, bankers, consultants, legal counsel and accountants) and financing sources.

"Requesting Party" has the meaning set forth in Section 6.2.

"Returned Merchandise" means goods sold by Sellers prior to the Closing Date and returned by a customer prior to the Closing Date in compliance with Sellers' return policy.

"Rudy's Reloaded" has the meaning set forth in the preamble.

"Sale Hearing" means the hearing for approval of, among other things, this Agreement and the transactions contemplated herein.

"Sale Order" means the sale order or orders in form and substance reasonably agreed by Rudy's Reloaded and Sellers.

"Seller Proration Amount" has the meaning set forth in Section 2.6.

"Sellers" has the meaning set forth in the preamble.

*Signature Page to Asset Purchase Agreement*

"Shelter-in-Place Law" means any federal, state, local or foreign law, statute, code, ordinance, rule, regulation or guideline restricting business operations in connection with the global coronavirus 2019 pandemic.

"Stub Rent" means those obligations to pay rent to the Sellers' landlords for the period from the Petition Date to April 30, 2020.

"Subsidiary" means, with respect to any Person, means, on any date, any Person (a) the accounts of which would be consolidated with and into those of the applicable Person in such Person's consolidated financial statements if such financial statements were prepared in accordance with GAAP as of such date or (b) of which securities or other ownership interests representing more than fifty percent of the equity or more than fifty percent (50%) of the ordinary voting power or, in the case of a partnership, more than fifty percent (50%) of the general partnership interests or more than fifty percent of the profits or losses of which are, as of such date, owned, controlled or held by the applicable Person or one or more subsidiaries of such Person.

"Tax" or "Taxes" means any United States federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, stamp, occupation, premium, windfall profits, environmental (including taxes under section 59A of the IRC), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, including any interest, penalty or addition thereto, whether disputed or not.

"Tax Return" means any return, declaration, report, claim for refund or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Termination Date" has the meaning set forth in Section 8.1(b)(ii).

"Total Consideration" has the meaning set forth in Section 2.3(a).

"Transfer Tax" has the meaning set forth in Section 6.5.

"Transferred Employee" has the meaning set forth in Section 6.3(a).

"Unrejected Leases" means the leases for the Pioneer Square store, University store and Main Street store that the Debtor rejected which Rudy's Reloaded seeks to reinstate with the consent and the support of the lessors.

"WARN Act" means, collectively, the Worker Adjustment and Retraining Notification Act of 1989 and any similar state or local law.

"Wind-Down" means any and all post-closing actions to be taken for the administrative wind-down of the bankruptcy estate pursuant to the Bankruptcy Code, including but not limited to

*Signature Page to Asset Purchase Agreement*

the preparation, solicitation and confirmation of a plan of liquidation under chapter 11 of the Bankruptcy Code.

Section 1.2    <u>Interpretations</u>.  Unless otherwise indicated herein to the contrary:

(a)      When a reference is made in this Agreement to an Article, Section, Exhibit, Schedule, clause or subclause, such reference shall be to an Article, Section, Exhibit, Schedule, clause or subclause of this Agreement.

(b)      The words "include," "includes" or "including" and other words or phrases of similar import, when used in this Agreement, shall be deemed to be followed by the words "without limitation."

(c)      The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement.

(d)      The word "if" and other words of similar import shall be deemed, in each case, to be followed by the phrase "and only if."

(e)      The use of "or" herein is not intended to be exclusive.

(f)      The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa.

(g)      All terms defined in this Agreement have their defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein.

(h)      References herein to a Person are also to its successors and permitted assigns.  Any reference herein to a Governmental Authority shall be deemed to include reference to any successor thereto.

(i)      Any reference herein to "Dollars" or "$" shall mean United States dollars.

(j)      Each Buyer acknowledges and agrees that the specification of any dollar amount in the representations, warranties or covenants contained in this Agreement is not intended to imply that such amounts or higher or lower amounts are or are not material, and each Buyer shall not use the fact of the setting of such amounts in any dispute or controversy between the Parties as to whether any obligation, item, or matter is or is not material.

(k)      References in this Agreement to materials or information "furnished to Buyer" and other phrases of similar import include all materials or information made available to Rudy's Reloaded or its Representatives in the data room prepared by Sellers

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 22**

or provided to Rudy's Reloaded or its Representatives in response to requests for materials or information.

## ARTICLE II
## PURCHASE AND SALE

Section 2.1   <u>Purchase and Sale of Assets</u>.   On the terms and subject to the conditions set forth in this Agreement, Buyers will purchase and acquire from Sellers, and Sellers will sell, transfer, assign, convey and deliver to Buyers at the Closing all of the Acquired Assets. As reflected, and unless otherwise provided for, in the applicable Bill of Sale as contemplated by Section 2.5(b), the applicable Buyer that will purchase and acquire the applicable Acquired Assets from the applicable Seller, and the sale, transfer, assignment, conveyance and delivery to such applicable Buyer by such applicable Seller at the Closing of such applicable Acquired Assets, shall be as follows: (a) the Acquired Assets of RBS shall be acquired by Rudy's Reloaded; (b) the Acquired Assets of Rudy's New York, LLC shall be acquired by RR NY, LLC; (c) the Acquired Assets of Rudy's Hollywood, LLC shall be acquired by RR CA, LLC; (d) the Acquired Assets of Rudy's Portland, LLC shall be acquired by RR Oregon, LLC; (e) the Acquired Assets of Rudy's Southeast, LLC shall be acquired by RR Georgia, LLC; (f) the Acquired Assets of Rudy's Barber Shop, L.L.C. shall be acquired by RR Washington, LLC; <u>provided</u>, <u>however</u>, that in each case, any Acquired Assets that are jointly owned by one or more Sellers shall be acquired by Rudy's Reloaded, unless otherwise agreed to by the Parties.

Section 2.2   <u>Assumed Liabilities</u>.   On the terms and subject to the conditions set forth in this Agreement, Buyers will assume and become responsible for the Assumed Liabilities at the Closing.  The applicable Buyer agrees to pay, perform, honor and discharge, or cause to be paid, performed, honored and discharged, all Assumed Liabilities in a timely manner in accordance with the terms thereof, including paying all Cure Costs.  For the avoidance of doubt, Sellers shall not be liable for, and shall have no obligation to pay or cause to be paid, any Cure Costs.   As reflected, and unless otherwise provided for, in the applicable Assignment and Assumption Agreement as contemplated by Section 2.5(b), the applicable Buyer that will assume the applicable Assumed Liabilities from the applicable Seller, shall be as follows: (a) the Assumed Liabilities of RBS shall be assumed by Rudy's Reloaded; (b) the Assumed Liabilities of Rudy's New York, LLC shall be assumed by RR NY, LLC; (c) the Assumed Liabilities of Rudy's Hollywood, LLC shall be assumed by RR CA, LLC; (d) the Assumed Liabilities of Rudy's Portland, LLC shall be acquired by RR Oregon, LLC; (e) the Assumed Liabilities of Rudy's Southeast, LLC shall be assumed by RR Georgia, LLC (f) the Assumed Liabilities of Rudy's Barber Shop, L.L.C. shall be assumed by RR Washington, LLC.

Section 2.3   <u>Consideration; Deposit; Escrow Amounts</u>.

(a)   The consideration for the Acquired Assets (the "<u>Total Consideration</u>") shall be (i) an aggregate Dollar amount equal to the sum of (A) one hundred thirty thousand Dollars ($130,000) which includes the thirty thousand Dollar ($30,000) Overbid Protection, of which an amount of one hundred thirty thousand Dollars ($130,000) in cash shall be used to fund the Wind-Down of the Sellers' estates, *plus* (B) Seller Proration Amount, if any, and *minus* (C) the Buyer Proration Amount, if any, and plus (D) the amount of the DIP Obligations outstanding as of the closing date, plus (E) the Break-up fee,, including costs, as ordered by the Court (collectively the "Cash Purchase Price") the

*Signature Page to Asset Purchase Agreement*

"Purchase Price"), and (ii) Buyers' assumption of the Assumed Liabilities, which includes all of the Debtor's Leases that have not been rejected and the Unrejected Leases subject to the agreements with lessors.

(b)     Upon the Bankruptcy Court's entry of its order approving the Bidding Procedures Motion, Rudy's Reloaded shall promptly deposit with Debtors' Counsel the sum of two hundred thirteen thousand Dollars ($213,000) by wire transfer of immediately available funds (the "Escrow Amount"), to be held in escrow and released by Debtors' Counsel and delivered to either Rudy's Reloaded or Sellers, in accordance with the provisions of this Section 2.3.  The Escrow Amount shall be distributed as follows:

(i)     if the Closing shall occur, the Escrow Amount shall be applied towards the Purchase Price payable by Rudy's Reloaded (on its own behalf and on behalf of the other Buyers, as applicable) to Sellers under Section 2.3(a) and shall be delivered to Sellers at the Closing;

(ii)     if this Agreement is terminated by Sellers pursuant to Section 8.1(d), the Escrow Amount shall be delivered to Sellers; or

(iii)     if this Agreement is terminated for any reason other than by a Seller pursuant to Section 8.1(d), the Escrow Amount shall in each case be returned to Rudy's Reloaded.

Section 2.4     Closing.  The closing of the transactions contemplated by this Agreement (the "Closing") shall take place electronically (or such other location as shall be mutually agreed upon by Sellers and Buyer) commencing at 10:00 AM local time on May 15, 2020, subject to the prior or simultaneous satisfaction or waiver all of the conditions to the obligations of Sellers and Buyer to consummate the transactions contemplated hereby set forth in Article VII, or on such other date as shall be mutually agreed upon by Sellers and Buyer prior thereto.  The date on which the Closing is to occur shall be referred to herein as the "Closing Date".

Section 2.5     Closing Payments and Deliveries.

(a)     On the Closing Date, Rudy's Reloaded (on its own behalf and on behalf of the other Buyers, as applicable) shall pay the Cash Purchase Price (less the Escrow Amount, which shall be released to Sellers by Debtors' Counsel, which shall be paid by wire transfer of immediately available funds into an account designated by Sellers.

(b)     At the Closing, the applicable Seller will deliver to the applicable Buyer: (i) a duly executed Bill of Sale, each substantially in the form of Exhibit A (the "Bill of Sale"); (ii) a duly executed Assignment and Assumption Agreement, each substantially in the form of Exhibit B (the "Assignment and Assumption Agreement"); (iii) a duly executed certificate from an officer of each Seller to the effect that each of the conditions specified in Section 7.1(a) and Section 7.1(b) is satisfied; and (iv) a non-foreign affidavit from each Seller that is organized in or under the Laws of the United States or any state thereof, dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under Treasury Regulations issued pursuant to section 1445 of the IRC.

*Signature Page to Asset Purchase Agreement*

(c)    At the Closing, the applicable Buyer will deliver to the applicable Seller: (i) the Bill of Sale duly executed by such applicable Buyer; (ii) the Assignment and Assumption Agreement duly executed by such applicable Buyer; and (iii) a duly executed certificate from an officer of such applicable Buyer to the effect that each of the conditions specified in <u>Section 7.2(a)</u> and <u>Section 7.2(b)</u> are satisfied.

(d)    At the Closing Rudy's Reloaded will issue to each of the Prepetition Lenders, a pro rata share of Buyer Stock totaling ten percent (10%) of Rudy's Reloaded, or, in the alternative, and at the option of the Prepetition Lenders, $200,000 in readily available funds.

(e)    At the Closing, Rudy's Reloaded will pay to the Prepetition Lenders an amount in cash equal to the obligations arising under the Payroll Bridge Loan, which is presently projected to be $204,700 in readily available funds.

(f)    <u>Prorations</u>.  In accordance with the allocation reflected in Section 2.1, the following items shall be prorated between the applicable Seller and the applicable Buyer as of the Closing Date: (i) applicable property and personal taxes (other than Transfer Taxes), (ii) post-petition utilities, and (iii) post-petition lease payments under the Assumed Leases, subject to any concessions or modifications agreed to by the applicable Landlords. Unless otherwise stated herein, all prorations shall be on an accrual basis in accordance with GAAP, and based on the actual number of days in each month.  Sellers shall be responsible for amounts relating to the period prior to the Closing Date, and Buyers shall be responsible for amounts relating from the Closing Date.  Property taxes on Acquired Assets will be prorated using applicable property tax rates if known, and if not known, applicable property tax rates from the last known period shall be utilized but subject to later adjustments for actual property tax rates.  The net amount of all prorations owed to Buyers and Sellers under this shall be referred to as the "<u>Buyer Proration Amount</u>" if owed to Buyers or the "<u>Seller Proration Amount</u>" if owed to Sellers.

Section 2.6    <u>Assumption/Rejection of Certain Contracts and Leases</u>.

(a)    <u>Schedule 2.7(a)</u> sets forth a list, as of the date hereof, of all executory Contracts and unexpired Leases to which any Seller is a party.

(b)    From and after the date hereof until one Business Day prior to the Sale Hearing, Rudy's Reloaded may, in its sole discretion, (i) designate a Contract listed on <u>Schedule 2.7(a)</u> for assumption and assignment to the applicable Buyer in accordance with Section 2.1 and Section 2.2 or as otherwise determined by Rudy's Reloaded, effective on and as of the Closing (such Contracts, the "<u>Designated Contracts</u>"), (ii) designate a Lease listed on <u>Schedule 2.7(a)</u> for assumption and assignment to the applicable Buyer in accordance with Section 2.1 and Section 2.2 or as otherwise determined by Rudy's Reloaded, effective on and as of the Closing, including, but not limited to, any amendment or modification that may contain lease concessions (such Leases, the "<u>Assumed Leases</u>"), or (iii) designate any Contract or Lease listed on <u>Schedule 2.7(a)</u> for rejection.  The Designated Contracts and Assumed Leases as of the date hereof are set forth on <u>Schedule 2.7(b)</u> hereto, which will be supplemented as additional Leases and Contracts are

*Signature Page to Asset Purchase Agreement*

designated for assumption and assignment or rejection of contracts prior to the conclusion of the Auction, if any, as set forth in this Section 2.7(b) provided that that if no Auction is held, Schedule 2.7(b) may be supplemented as additional Leases and Contracts are designated for assumption and assignment or rejection until the earlier of (x) one Business Day prior to the Sale Hearing or (y) three Business Days prior to the Closing..

(c)    Sellers shall take all actions reasonably required to assume and assign the Designated Contracts and Assumed Leases to the applicable Buyer, including taking all actions reasonably necessary to facilitate any negotiations with the counterparties to such Contracts or Leases and, if necessary, to obtain an order of the Bankruptcy Court containing a finding that the proposed assumption and assignment of the Contracts or Leases to the applicable Buyer satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(d)    Buyers shall take all actions reasonably required for Sellers to assume and assign the Designated Contracts and Assumed Leases to the applicable Buyer (including the payment of the Cure Costs), including taking all actions reasonably necessary to facilitate any negotiations with the counterparties to such Contracts or Leases and, if necessary, to obtain an order of the Bankruptcy Court containing a finding that the proposed assumption and assignment of the Contracts or Leases to Buyers satisfies all applicable requirements of section 365 of the Bankruptcy Code.

Section 2.7    Allocation.  Buyers and Sellers agree to allocate the Purchase Price (as finally determined hereunder), the Assumed Liabilities, and all other relevant items among the Acquired Assets in accordance with section 1060 of the IRC and the Treasury Regulations thereunder.

Section 2.8    Removal of Excluded Assets.  Subject to applicable law, including applicable Shelter-in-Place Laws and as promptly as practicable following the Closing Date (and in any event within ten (10) Business Days of later of (x) the Closing or (y) repeal of applicable Shelter-in-Place Laws), Sellers shall remove at their expense all of the Excluded Assets that are located at the Barbershops and, if requested by Sellers, Buyer shall arrange transportation of such Excluded Assets to a location designated by Sellers at Sellers' expense.

## ARTICLE III
## SELLERS' REPRESENTATIONS AND WARRANTIES

Sellers represent and warrant to Buyers that the statements contained in this Article III are true and correct as of the date of this Agreement, except as set forth in the disclosure schedule accompanying this Agreement (the "Disclosure Schedule").  For the avoidance of doubt, any reference in this Article III to "Sellers" or "Seller" shall include any predecessors of any Seller.

Section 3.1    Organization of Sellers; Good Standing.  Each Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of the state of its incorporation and has, subject to the necessary authority from the Bankruptcy Court, all requisite corporate power and authority to own, lease, and operate its assets and to carry on its business as now being conducted, except where the failure to be so organized, existing, or in good

standing or have such power and authority would not reasonably be expected to have a Material Adverse Effect.

Section 3.2    Authorization of Transaction.  Subject to the Bankruptcy Court's entry of the Sale Order, each Seller has full power and authority (including full corporate power and authority) to execute and deliver this Agreement and all other agreements contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder.  The execution, delivery, and performance of this Agreement and all other agreements contemplated hereby to which each Seller is a party have been duly authorized by such Seller.  Upon due execution hereof by each Seller, this Agreement (assuming due authorization and delivery by Buyers) shall constitute, subject to the Bankruptcy Court's entry of the Sale Order, the valid and legally binding obligation of such Seller, enforceable against such Seller in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium, or other similar laws relating to creditors' rights and general principles of equity.

Section 3.3    Noncontravention; Government Filings.  Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in Article II), will (a) conflict with or result in a breach of the organizational documents of any Seller, (b) subject to the entry of the Sale Order, violate any Law or Decree to which any Seller is subject in respect of the Acquired Assets, or (c) subject to the entry of the Sale Order, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel, or require any notice under any material Contract or Lease to which any Seller is a party or to which any of the Acquired Assets is subject, except, in the case of either clause (b) or (c), for such conflicts, violations, breaches, defaults, accelerations, rights or failures to give notice as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.  Other than as required by, or pursuant to, the Bankruptcy Code, the Bidding Procedures Order or the Sale Order, no Seller is required to give any notice to, make any filing with, or obtain any authorization, consent or approval of any Governmental Authority in order for the Parties to consummate the transactions contemplated by this Agreement or any Related Agreement, except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect or prevent or materially impair or delay any Seller's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

Section 3.4    Title to Assets.  At the Closing, subject to any Permitted Liens, Sellers will have good and valid title to, or the right to use, the Acquired Assets, except to the extent the failure to have such title or right to use would not reasonably be expected to have a Material Adverse Effect.  Pursuant to the Sale Order, Sellers will convey such title to or rights to use, all of the tangible Acquired Assets, free and clear of all Liens (other than Permitted Liens).

Section 3.5    Designated Contracts.  True and materially complete copies of all Contracts and Leases set forth on Schedule 2.7(a) have been made available to Rudy's Reloaded in the data room prepared by Sellers.

Section 3.6    Real Property.  Sellers do not have any title interest in real property which is related to, used, useful or held for use in the conduct of the Business. Schedule 3.6 of the Disclosure Schedule sets forth the location of each of the twenty-five (25) operating

*Signature Page to Asset Purchase Agreement*

barbershops (each, a "Barbershop", and collectively, the "Barbershops"), each of which is leased to a Seller by a third party, and a list of all Leases. The total number of operating barbershops related to the Business is twenty-five (25). Sellers have made available to Rudy's Reloaded a true and materially complete copy of each Lease. With respect to each Lease, (a) assuming due authorization and delivery by the other party thereto, such Lease constitutes the valid and legally binding obligation of the Seller party thereto and, to Sellers' Knowledge, the counterparty thereto, enforceable against such Seller and, to Sellers' Knowledge, the counterparty thereto in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium, or other similar laws relating to creditors' rights and general principles of equity, and (b) neither such Seller nor, to Sellers' Knowledge, the counterparty thereto is in breach or default under such Lease, except (i) for those defaults that will be cured in accordance with the Sale Order or waived in accordance with section 365 of the Bankruptcy Code (or that need not be cured under the Bankruptcy Code to permit the assumption and assignment of the Leases) or (ii) to the extent such breach or default would not reasonably be expected to have a Material Adverse Effect.

Section 3.7    Litigation; Decrees.    Except as set forth in Schedule 3.7 of the Disclosure Schedule and other than the Bankruptcy Cases, there is no Litigation pending against the Sellers, jointly or individually. Other than the Bankruptcy Cases, no Seller is subject to any outstanding Decree that would (x) reasonably be expected to have a Material Adverse Effect or (y) prevent or materially delay such Seller's ability to consummate the transactions contemplated hereby or perform in any material respect its obligations hereunder.

Section 3.8    Labor Relations.    Except as set forth in Schedule 3.8 of the Disclosure Schedule:

(a)    No Seller is a party to or bound by any collective bargaining agreement. To Sellers' Knowledge, no union or other labor organization; (i) is currently attempting to organize any employees of the Company for the purpose of representation; or (ii) has demanded recognition or filed any petition seeking certification.

(b)    Schedule 3.8(c) of the Disclosure Schedule sets forth a true, correct and complete list, as of the date of this Agreement, of all employees of the Company and identifies the job title, work location, date of hire, exempt or non-exempt status, employment status (whether active or on leave of absence), part-time or full-time, annual base salary or regular hourly wage rate, and bonus or commission entitlement for each such employee, as well as whether such employee is on leave and the date of such leave.

(c)    To Sellers' Knowledge, there is no charge or complaint of discrimination or retaliation, lawsuit, governmental investigation or audit or other similar proceeding pending or threatened against the Company by, on behalf of or relating to any employee(s) of the Company.

Section 3.9    Brokers' Fees.    No Seller has entered into any Contract to pay any fees or commissions to any broker, finder, or agent with respect to the transactions contemplated hereby for which any Buyer could become liable or obligated to pay.

*Signature Page to Asset Purchase Agreement*

Section 3.10    <u>Taxes</u>.

(a)    Except as set forth in <u>Schedule 3.10</u> of the Disclosure Schedule and for matters that would not be reasonably expected to have a Material Adverse Effect, and except those Taxes for which the Sellers will seek authority from the Bankruptcy Court to pay (i) Sellers have timely filed all Tax Returns required to be filed with the appropriate Governmental Authorities in all jurisdictions in which such Tax Returns are required to be filed (taking into account any extension of time to file granted or to be obtained on behalf of Sellers); (ii) all Taxes shown as due on such Tax Returns have been paid (other than any Taxes not due as of the date of the filing of the Bankruptcy Cases as to which subsequent payment was prohibited by reason of the Bankruptcy Cases); (iii) Sellers are not a party to any Litigation by any taxing authority; and (iv) there are no pending or, to Seller's Knowledge, threatened Litigation by any taxing authority.

(b)    Sellers are not foreign persons within the meaning of section 1445 of the IRC.

Section 3.11    <u>Tangible Personal Property</u>.    <u>Schedule 3.11</u> of the Disclosure Schedule sets forth all Contracts on <u>Schedule 2.7(a)</u> that constitute leases of personal property involving annual payments in excess of five thousand Dollars ($5,000) relating to personal property used by Sellers in the Business.

Section 3.12    <u>Employee Benefits</u>.

(a)    <u>Schedule 3.12(a)</u> of the Disclosure Schedule lists all "employee benefit plans," as defined in section 3(3) of ERISA, including any multiemployer plans as defined in section 3(37) of ERISA, and all other material employee benefit plans or arrangements (other than governmental plans and statutorily required benefit arrangements), including bonus or incentive plans, deferred compensation arrangements, severance pay, sick leave, vacation pay, disability, medical insurance and life insurance maintained or contributed to by Sellers with respect to Covered Employees (the "<u>Company Benefit Plans</u>").

(b)    The Company has delivered or made available to Rudy's Reloaded true, correct and materially complete copies of the following documents with respect to each Company Benefit Plan: (i) each Company Benefit Plan (and all amendments thereto), and in the case of an unwritten Company Benefit Plan, a written description thereof, and any trust agreement, investment management contract, custodial agreement or insurance contract relating to such plan, (ii) the most recent summary plan description and all summaries of material modifications thereto, and (iii) the most recently filed annual reports on Form 5500 and all Schedules thereto.

(c)    Each of the Company Benefit Plans sponsored by Sellers that is intended to qualify under section 401 of the IRC has been determined by the IRS to be so qualified, and, except as disclosed on <u>Schedule 3.12(c)</u> of the Disclosure Schedule, to the Knowledge of Sellers, nothing has occurred with respect to the operation of any such plan which could reasonably be expected to result in the revocation of such favorable determination.

*Signature Page to Asset Purchase Agreement*

(d)    To Sellers' Knowledge, each of the Company Benefit Plans has been maintained, in all material respects, in accordance with its terms and all provisions of applicable Law.

(e)    No Company Benefit Plan is a "multiemployer plan" (as defined in section 3(37) of ERISA) ("Multiemployer Plan") or other pension plan that is subject to Title IV or Section 302 of ERISA or Section 412 of the Code and neither the Company nor any of its ERISA Affiliates has sponsored or contributed to or been required to contribute to a Multiemployer Plan or other pension plan subject to Title IV or Section 302 of ERISA or Section 412 of the Code at any time within the previous six years.  Neither the Company nor any of its ERISA Affiliates has any liability (contingent or otherwise) relating to the withdrawal or partial withdrawal from a Multiemployer Plan.

(f)    No Company Benefit Plan provides benefits, including death or medical benefits, beyond termination of service or retirement other than (i) coverage mandated by Law, including but not limited to COBRA coverage, or (ii) death or retirement benefits under a Company Benefit Plan qualified under Section 401(a) of the Code, and neither the Company nor any of its ERISA Affiliates has made a written or oral representation promising the same.

(g)    With respect to each Company Benefit Plan providing termination or retirement benefits that is subject to the laws of a jurisdiction outside of the United States, or covering any Person residing or primarily working outside the United States, (i) to Sellers' Knowledge, each such Company Benefit Plan complies in all material respects with all applicable Laws; and (ii) each such Company Benefit Plan that is required to be registered with a Governmental Authority is so registered.

Section 3.13    Intellectual Property.

(a)    Schedule 3.13(a) of the Disclosure Schedule sets forth a complete and correct list of all (i) patents and patent applications, (ii) registered trademarks and trademark applications, (iii) material unregistered trademarks and social media accounts, (iv) registered copyrights, (v) internet domain names, and (vi) material software, in each case (i) – (vi) included in the Owned Intellectual Property, and specifying as to each such item, as applicable, the owner(s) of record (and, in the case of domain names, the registrar), jurisdiction of application or registration, the application or registration number, and the date of application or registration.

(b)    Except for Owned Intellectual Property set forth in Schedule 3.13(a)(iii) and (vi) of the Disclosure Schedule, each other item required to be identified in Schedule 3.13(a) of the Disclosure Schedule: (i) is registered or recorded in the name of Company, is, to Sellers' Knowledge, in full force and has been duly applied for and registered in accordance with applicable Law; (ii) has no filings, payments or similar actions that must be taken by Company within 120 days following the Closing Date for the purposes of obtaining, maintaining, perfecting or renewing such registration of Intellectual Property; (iii) has no unsatisfied past or outstanding maintenance or renewal obligation; and (iv) has

*Signature Page to Asset Purchase Agreement*

not been and is not involved in any opposition, cancellation, interference, reissue, reexamination or other similar proceeding.

(c)     The Company or another Seller is the sole and unrestricted legal and beneficial owner of all Owned Intellectual Property, and no Owned Intellectual Property will at the Closing be subject to any Liens, adverse claims, any requirement of any past (if outstanding), present or future royalty payments or otherwise encumbered or restricted by any rights of any third party, other than Permitted Liens.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated thereby will not result in the loss, forfeiture, termination, license or impairment of, or give rise to any obligation to transfer or to create, change or abolish, or limit, terminate or consent to the continued use of any material Intellectual Property owned or used by Sellers in the Business as currently conducted.

(d)     To the Knowledge of Sellers, the Owned Intellectual Property is valid and enforceable.  To the Knowledge of Sellers, the Owned Intellectual Property and Intellectual Property licensed to Sellers under the Intellectual Property Licenses listed in Schedule 3.13(d) of the Disclosure Schedule constitute all of the Intellectual Property used in and necessary to conduct and operate the Business as currently conducted (other than off-the-shelf software for which Sellers pay less than thirty thousand Dollars ($30,000) in licensing or other fees per software title per annum).

(e)     No Owned Intellectual Property is or has been the subject of any Litigation or Decree that bars or limits the use of such rights (excluding oppositions, rejections, orders or rulings issues in the context of the application for registration of the Owned Intellectual Property).  No Seller is and, to the Knowledge of Sellers, has been party to any Litigation relating to its use of Intellectual Property, including any Litigation involving any claim that the Company infringed, misappropriated, diluted or otherwise violated the rights of any third party.  Except for the Permitted Liens, the license agreements listed in Schedule 3.13(d) of the Disclosure Schedule and non-exclusive licenses granted by Sellers (expressly or implicitly) in the ordinary course of business in connection with the sale, lease or transfer of finished products or services to customers, Sellers have not granted any options with respect to, or has otherwise encumbered or placed limitations on any Owned Intellectual Property or Sellers' use thereof.

(f)     Except as set forth in Schedule 3.13(f) of the Disclosure Schedule, since January 1, 2019: (i) no Seller has received any written communication alleging that any Owned Intellectual Property or Intellectual Property Licenses are invalid or unenforceable, or challenging such Seller's ownership of or right to use any such rights; (ii) no Seller has received any written cease and desist, written invitation to license or other written communication alleging that such Seller requires any license with respect to, or is infringing, misappropriating, diluting or otherwise violating the Intellectual Property Licenses of any third party; and (iii) no Seller has sent any written communication to or asserted or threatened in writing any action or claim against any Person involving or relating to any Owned Intellectual Property.

*Signature Page to Asset Purchase Agreement*

(g)    To the Knowledge of Sellers, the products and services of Sellers as offered currently (including, the use thereof), and the operation of the Business as currently conducted, do not infringe, misappropriate, dilute or otherwise violate the rights of any third party.  To the Knowledge of Sellers, no third party has or is infringing on, misappropriating or otherwise violating any Owned Intellectual Property.

(h)    Sellers have taken commercially reasonable and appropriate steps to protect, maintain and preserve the confidentiality of any trade secrets included in the Owned Intellectual Property.

(i)    To the Knowledge of Sellers, no Owned Intellectual Property was developed, in whole or in part (i) pursuant to or in connection with the development of Intellectual Property for any standards-setting bodies, industry groups or other similar standards organizations, (ii) under contract with or using the resources of any Governmental Authority, academic institution or other entity that would subject any Owned Intellectual Property to the rights of any Governmental Authority, academic institution or other entity, (iii) under any grants or other funding arrangements with third parties, or (iv) using any software, software development toolkits, databases, libraries, scripts, or other, similar modules of software that are subject to "open source" or similar license terms in a manner that subjects the software included in Intellectual Property Licenses to any copyleft license or that requires or purports to require Company to grant any license with respect to Owned Intellectual Property.

(j)    Except as set forth in <u>Schedule 3.13(j)</u> of the Disclosure Schedule, to the Knowledge of Sellers, all material software owned, licensed, used or otherwise held for use in the Business is in good working order and condition and is sufficient in all material respects for the purposes for which it is currently used in the Business.  To the Knowledge of Sellers, no Seller has experienced any material defects in design, workmanship or material in connection with the use of such software that have not been corrected.  To the Knowledge of Sellers, no such software contains any computer code or any other procedures, routines or mechanisms which may: (i) disrupt, disable, harm or impair in any material way such software's operation, (ii) cause such software to damage or corrupt any data, storage media, programs, equipment or communications of Sellers or their clients, or otherwise interfere with Sellers' operations as currently conducted, or (iii) permit any third party to access any such software to cause disruption, disablement, harm, impairment, damage erasure or corruption (sometimes referred to as "traps", "viruses", "access codes", "back doors" "Trojan horses," "time bombs," "worms," or "drop dead devices").

Section 3.14   <u>Compliance with Laws; Permits</u>.

(a)    Sellers are in compliance with all Laws applicable to the Business, except as resulting from the filing and pendency of the Bankruptcy Cases or where the failure to be in compliance would not be reasonably expected to have a Material Adverse Effect. Sellers have not received any written notice of or been charged with the violation of any Laws, except where such violation would not be reasonably expected to have a Material Adverse Effect.

*Signature Page to Asset Purchase Agreement*

(b)      Sellers have all Permits which are required for the operation of the Business as presently conducted, except where such failure to have Permit would not be reasonably be expected to have a Material Adverse Effect.  Sellers are not in default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation) of any term, condition or provision of any Permit to which they are parties, except where such default or violation would not be reasonably expected to have a Material Adverse Effect.  Schedule 3.14(b) of the Disclosure Schedules lists all current Permits issued to Sellers which are related to the conduct of the Business as currently conducted or the ownership and use of the Acquired Assets, including the names of the Permits and their respective dates of issuance and expiration. No event has occurred that, with or without notice or lapse of time or both, would reasonably be expected to result in the revocation, suspension, lapse, or limitation of any Permit set forth in Schedule 3.14(b) of the Disclosure Schedules.

Section 3.15  Environmental Matters.    The representations and warranties contained in this Section 3.15 are the sole and exclusive representations and warranties of Sellers with respect to environmental matters, including matters relating to Environmental Laws.  Except as would not be reasonably likely to have a Material Adverse Effect:

(a)      the operations of Sellers are in compliance with all applicable Environmental Laws, which compliance includes obtaining, maintaining and complying with all Permits issued pursuant to Environmental Laws necessary to operate the Business;

(b)      no Seller is the subject of any outstanding Litigation with any Governmental Authority with respect to Environmental Laws;

(c)      no Seller is the subject of any pending, or to the Knowledge of Sellers, threatened Litigation alleging that Sellers may (i) be in violation of any Environmental Law, or any Permit issued pursuant to Environmental Law, or (ii) have any liability under any Environmental Law; and

(d)      to the Knowledge of Sellers, there are no pending or threatened investigations of Sellers, or currently or previously owned, operated or leased property of Sellers, which would reasonably be expected to result in Sellers or their Subsidiaries incurring liability pursuant to any Environmental Law.

Section 3.16  Related Party Transactions.  Except as set forth on Schedule 3.16 of the Disclosure Schedule and other than the Company Benefit Plans, no officer, director or executive committee member of any Seller or any member of their immediate family or any Affiliate of the Company or such Seller (a) is a party to any Contract or Lease set forth on Schedule 2.7(b) of the Disclosure Schedule or has any material business arrangement with, or has any material financial obligations to or is owed any financial obligations from, the Company or any actual competitor, vendor or licensor of the Company (each such Contract, Lease or business arrangement, an "Affiliate Agreement"), (b) to the Knowledge of Sellers, none of the foregoing Persons have any cause of action or other claim whatsoever against or related to the Business or

*Signature Page to Asset Purchase Agreement*

the Acquired Assets, and (c) to the Knowledge of Sellers, the Company does not have any direct or indirect business arrangement with or financial obligation to the foregoing Persons.

Section 3.17 <u>Financial Statements</u>. True, correct and complete copies of (a) the consolidated balance sheets and statements of operations and comprehensive income, stockholders' equity and cash flow of the Company as of and for the years ended December 31, 2018 and December 31, 2019 (the "<u>Yearly Financial Statements</u>") and (b) an unaudited consolidated balance sheets and statements of operations and comprehensive loss, cash flow and stockholders' equity of the Company as of and for the one month period ended January 31, 2020 (such date being the "<u>Interim Balance Sheet Date</u>") (the "<u>Interim Financial Statements</u>" and, together with Yearly Financial Statements, the "<u>Financial Statements</u>") have been provided to Rudy's Reloaded. The Financial Statements present fairly, in all material respects, the financial position, results of operations and cash flows of the Company as of the dates and for the periods indicated in such Financial Statements, have been prepared in accordance with the books of account and other financial records of the Company and have been prepared in conformity with GAAP (except, in the case of the Interim Financial Statements, for the absence of footnotes and other presentation items and for normal year-end adjustments that are not material individually or in the aggregate).

Section 3.18 <u>Inventory</u>. The Inventory as a whole is of a quantity and quality historically useable or saleable in the conduct of the Business since the filing of the Bankruptcy Cases. All Inventory is free from defects in materials and workmanship (normal wear and tear excepted), except as would not have a Material Adverse Effect.

Section 3.19 <u>Sufficiency of Assets</u>. The Acquired Assets are sufficient for the continued conduct of the Business after the Closing in substantially the same manner as conducted since the filing of the Bankruptcy Cases and constitute all of the rights, property and assets necessary to conduct the Business as currently conducted immediately prior to the date hereof.

## ARTICLE IV
## BUYERS' REPRESENTATIONS AND WARRANTIES

Buyers represent and warrant to each Seller that the statements contained in this <u>Article IV</u> are true and correct as of the date of this Agreement.

Section 4.1 <u>Organization of Buyer; Good Standing</u>. Rudy's Reloaded is an assumed business name of Malden Avenue Associates, LLC a Washington State limited liability company duly organized, validly existing and in good standing under the laws of the State of Washington, and has all requisite corporate power and authority to own, lease and operate its assets and to carry on its business as now being conducted. Any assigns of Rudy's Reloaded will be limited liability companies duly organized, validly existing and in good standing under the laws of the state of its formation with all requisite company power and authority to own, lease and operate its assets and to carry on its business as now being conducted

Section 4.2 <u>Authorization of Transaction</u>. Each Buyer has full power and authority (including full company power and authority) to execute and deliver this Agreement and all other agreements contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder. The execution, delivery and performance of this Agreement and all other agreements contemplated hereby to which a Buyer is a party have been duly authorized by

*Signature Page to Asset Purchase Agreement*

such Buyer.  This Agreement (assuming due authorization and delivery by Sellers) constitutes the valid and legally binding obligation of each Buyer, enforceable against each Buyer in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar laws relating to creditors' rights and general principles of equity.

Section 4.3    <u>Noncontravention</u>.    Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in <u>Article II</u>) will (a) conflict with or result in a breach of the certificate of incorporation or bylaws, certificate of formation or operating agreement, or other organizational documents, as applicable, of such Buyer, (b) violate any law or Decree to which Buyer is, or its assets or properties are, subject or (c) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel, or require any notice under any Contract or Lease to which a Buyer is a party or by which it is bound, except, in the case of either clause (b) or (c), for such conflicts, breaches, defaults, accelerations, rights or failures to give notice as would not, individually or in the aggregate, have a material adverse effect on Buyer.  No Buyer is required to give any notice to, make any filing with, or obtain any authorization, consent or approval of any Governmental Authority in order for the Parties to consummate the transactions contemplated by this Agreement or any Related Agreement, except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, prevent or materially impair or delay any Buyer's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

Section 4.4    <u>Litigation; Decrees</u>.    There is no Litigation pending or, to Rudy's Reloaded' knowledge, threatened in writing that challenges the validity or enforceability of this Agreement or seeks to enjoin or prohibit consummation of the transactions contemplated hereby. Neither Rudy's Reloaded nor any other Buyer is subject to any outstanding Decree that would prevent or materially impair or delay any Buyer's ability to consummate the transactions contemplated hereby or perform its obligations hereunder on a timely basis.

Section 4.5    <u>Brokers' Fees</u>.    No Buyer has entered into any Contract to pay any fees or commissions to any broker, finder or agent with respect to the transactions contemplated by this Agreement for which Sellers or any of their Affiliates could become liable or obligated to pay.

Section 4.6    <u>Sufficient Funds; Adequate Assurances</u>.    Rudy's Reloaded has and will have at the Closing immediately available funds sufficient for the satisfaction of all of its obligations under this Agreement, including the payment of the Purchase Price, the Cure Costs and all fees, expenses of and other amounts required to be paid by Buyer in connection with the transactions contemplated hereby.  Each Buyer is capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Designated Contracts and Assumed Leases and the related Assumed Liabilities.

## ARTICLE V
## PRE-CLOSING COVENANTS

The Parties agree as follows with respect to the period between the execution of this Agreement and the Closing (except as otherwise expressly stated to apply to a different period):

*Signature Page to Asset Purchase Agreement*

Section 5.1    <u>Efforts; Cooperation</u>.  Upon the terms and subject to the conditions set forth in this Agreement (including <u>Section 5.4(a)</u>), each of the Parties shall use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things reasonably necessary, proper or advisable to consummate and make effective, in the most expeditious manner practicable, the transactions contemplated hereby, except as otherwise specifically provided in <u>Section 5.4</u>.  Without limiting the generality of the foregoing, (i) each Seller shall use its commercially reasonable efforts to cause the conditions set forth in <u>Section 7.1</u> that are within its control or influence to be satisfied or fulfilled, and (ii) each Buyer shall use its commercially reasonable efforts to cause the conditions set forth in <u>Section 7.2</u> that are within its control or influence to be satisfied or fulfilled.

Section 5.2    <u>Conduct of the Business Pending the Closing</u>.

(a)    During the period prior to the Closing, Sellers shall use commercially reasonable efforts, except as otherwise required, authorized or restricted by applicable Law (including applicable Shelter-in-Place Laws), pursuant to the Bankruptcy Code or pursuant to a Decree of the Bankruptcy Court, to operate the Business in the Ordinary Course of Business.  Sellers shall use commercially reasonable efforts to, except as related to or the result of the filing or pendency of the Bankruptcy Cases, (A) preserve intact their business organizations, (B) maintain the Business and the Acquired Assets (normal wear and tear excepted), (C) keep available the services of its officers and Covered Employees, (D) maintain satisfactory relationships with licensors, licensees, suppliers, contractors, distributors, consultants, vendors, and others having business relationships with Sellers in connection with the operation of the Business (other than payment of pre-petition claims), and (E) continue to operate the Business and Acquired Assets in all material respects in compliance with all Laws applicable to the Business and Sellers consistent with past practice in place immediately prior to the Petition Date.

(b)    Except (i) as set forth on <u>Schedule 5.2(b)</u> of the Disclosure Schedule, (ii) as required by applicable Law (including applicable Shelter-in-Place Laws) or by Decree of the Bankruptcy Court, (iii) as otherwise contemplated by this Agreement, or (iv) with the prior written consent of Rudy's Reloaded (which consent shall not be unreasonably withheld, conditioned or delayed), no Seller shall, solely as it relates to the Business:

(i)    other than in the Ordinary Course of Business, (A) materially increase the annual level of compensation of any Covered Employee or (B) materially increase or decrease the coverage or benefits available under any (or create any new) Employee Benefit Plan;

(ii)    subject any of the Acquired Assets to any Lien, except for Permitted Liens and any Lien securing any debtor in possession loan facility or granted in an order authorizing use of cash collateral;

(iii)    terminate, amend, or fail to renew, obtain, or preserve any material Permit;

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 36**

(iv)    make any material loans or material advances;

(v)    enter into any Contract that limits or restricts the conduct or operations of the business of the Company;

(vi)    incur, create, assume, guarantee, or become liable for any indebtedness, other than trade debt and other indebtedness incurred in the Ordinary Course of Business;

(vii)    except as previously disclosed to or known by Rudy's Reloaded, materially modify, amend, supplement, or terminate any Contract or Lease set forth on <u>Schedule 2.7(a)</u>;

(viii)    fail to maintain in full force and effect any filings necessary to maintain the Owned Intellectual Property, other than in the Ordinary Course of Business;

(ix)    write up, write down, or write off the book value of any assets other than in the Ordinary Course of Business;

(x)    engage any new employee whose annual base salary would exceed ten thousand Dollars ($10,000);

(xi)    reject any Contracts or Leases other than as set forth on <u>Schedule 5.2(b)(xii)</u> of the Disclosure Schedule;

(xii)    seek to accelerate the receipt of any royalty payments or licensing receivables generated by the Business, by way of discount or otherwise;

(xiii)    terminate any Covered Employee unless such termination is for "cause"; or

(xiv)    agree to do anything prohibited by this <u>Section 5.2</u>.

Section 5.3    <u>Bankruptcy Court Matters</u>.

**(a)    The Sale Order shall be entered by the Bankruptcy Court. The Sale Order shall, among other things, (i) approve, pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by Sellers of this Agreement, (B) the sale of the Acquired Assets to Buyers on the terms set forth herein and free and clear of all Liens (other than Liens included in the Assumed Liabilities and Permitted Liens), and (C) the performance by Sellers of their respective obligations under this Agreement; (ii) authorize and empower Sellers to assume and assign to Buyers the Designated Contracts; and (iii) find that each Buyer is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code, not a successor to any Seller and grant each Buyer the protections of Section 363(m) of the Bankruptcy Code. Buyers shall promptly take such actions as are reasonably requested by Sellers to assist in obtaining Bankruptcy Court approval of the Sale Order, including furnishing affidavits or other documents or information for filing with the**

*Signature Page to Asset Purchase Agreement*

**Bankruptcy Court for purposes, among others, of (a) demonstrating that each Buyer is a "good faith" purchaser under Section 363(m) of the Bankruptcy Code and (b) establishing adequate assurance of future performance within the meaning of Section 365 of the Bankruptcy Code.  In the event that the Bankruptcy Court's approval of the Sale Order shall be appealed, Sellers shall use reasonable efforts to defend such appeal.**

Section 5.4    <u>Notices and Consents</u>.    Prior to the Closing and as necessary following the Closing:

(a)    Sellers will give, or will cause to be given, any notices to third parties, and each of the Parties will use its commercially reasonable efforts to obtain any third party consents or sublicenses, in connection with the matters referred to in <u>Schedule 5.4(a)</u> of the Disclosure Schedule or as are otherwise necessary and appropriate to consummate the transactions contemplated hereby

(b)    Each of the Parties will give any notices to, make any filings with, and use its commercially reasonable efforts to obtain any authorizations, consents, and approvals of Governmental Authorities necessary and appropriate to consummate the transactions contemplated hereby.

Section 5.5    <u>Notice of Developments</u>.    Each Seller and each Buyer will give prompt written notice to the other Parties of (a) the existence of any fact or circumstance, or the occurrence of any event, of which it has Knowledge that would reasonably be likely to cause a condition to a Party's obligations to consummate the transactions contemplated hereby set forth in <u>Article VII</u> not to be satisfied as of a reasonably foreseeable Closing Date, or (b) the receipt of any notice or other communication from any Governmental Authority in connection with the transactions contemplated by this Agreement; <u>provided</u>, <u>however</u>, that the delivery of any such notice pursuant to this <u>Section 5.5</u> shall not be deemed to amend or supplement this Agreement and the failure to deliver any such notice shall not constitute a waiver of any right or condition to the consummation of the transactions contemplated hereby by any Party.

Section 5.6    <u>Access</u>.    Sellers will provide each Buyer and their respective Representatives access to all books and records, and Designated Contracts and Assumed Leases included in the Acquired Assets via an electronic data room; <u>provided</u>, <u>however</u>, that, for avoidance of doubt, the foregoing shall not require any Person to waive, or take any action with the effect of waiving, its attorney-client privilege with respect thereto.  Each Buyer shall upon reasonable notice to, and with the prior written consent of, Sellers, be permitted to contact Landlords, vendors, suppliers, licensors, and licensees. Sellers shall be entitled to be present at any such meetings.

Section 5.7    <u>Bulk Transfer Laws</u>. Each Buyer acknowledges that Sellers will not comply with the provisions of any bulk transfer laws or similar laws of any jurisdiction in connection with the transactions contemplated by this Agreement, including the United Nations Convention on the Sale of Goods, and hereby waives all claims related to the non-compliance therewith.

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 38**

# ARTICLE VI
# OTHER COVENANTS

The Parties agree as follows with respect to the period from and after the Closing:

Section 6.1    <u>Further Assurances</u>.

(a)    In case at any time after the Closing any further action is necessary to carry out the purposes of this Agreement, each of the Parties will, at the requesting Party's sole cost and expense, take such further action (including the execution and delivery of such other reasonable instruments of sale, transfer, conveyance, assignment, assumption and confirmation, providing materials and information) as the other Party may reasonably request which actions shall be reasonably necessary to transfer, convey, or assign to the applicable Buyer all of the Acquired Assets to be acquired by such Buyer in accordance with Section 2.1 or to confirm an applicable Buyer's assumption of the Assumed Liabilities to be assumed by such Buyer in accordance with Section 2.2.

(b)    If, following the Closing, any Buyer or any Seller becomes aware that any Buyer or any of its Affiliates owns any asset or rights which is an Excluded Asset, such Party shall promptly inform the other Party of that fact.  Thereafter, at the request of any Seller, such Buyer shall execute, or cause the relevant Affiliate(s) of such Buyer to execute, such documents as may be reasonably necessary to cause the transfer of and such Buyer shall thereafter transfer any such asset or right to such Seller or such other entities nominated by such Seller for no consideration and such Seller shall do all such things as are reasonably necessary to facilitate such transfer.  If, following the Closing, a Buyer receives any payments in respect of an Excluded Asset, such Buyer shall promptly remit such payments to the applicable Seller or other entity nominated by such Seller.

(c)    If, following the Closing, any Buyer or any Seller becomes aware that a Seller or any of its Affiliates owns any asset or rights which is an Acquired Asset, such Party shall promptly inform the other Party of that fact.  Thereafter, at the request of any Buyer, the applicable Seller shall execute or cause the relevant Seller or Affiliate(s) of such Seller to execute such documents as may be reasonably necessary to cause the transfer of and such Seller shall thereafter transfer any such asset or right to such Buyer or any other entities nominated by such Buyer for no consideration and such Buyer shall do all such things as are reasonably necessary to facilitate such transfer.  If, following the Closing, a Seller or its Affiliates receive any payments in respect of the Acquired Assets, such Seller shall promptly remit such payments to such applicable Buyer or other entity nominated by Buyer.

(d)    With respect to any Acquired Asset (and any asset which is not an Acquired Asset solely as a result of a restriction on transfer or assignment) for which consent or approval is required for transfer or assignment but is not obtained prior to the Closing, Sellers shall reasonably cooperate with Buyers in any reasonable arrangement that Buyers may request to provide Buyers with all of the benefits of, or under, the applicable Acquired Assets (or assets that are not Acquired Assets solely as a result of a restriction on transfer

*Signature Page to Asset Purchase Agreement*

or assignment), including taking actions reasonably required to enforce, for the benefit of a Buyer, any and all rights of Sellers against any party to the applicable Acquired Asset.

Section 6.2    Access; Enforcement; Record Retention.    From and after the Closing, upon request by any Party (the "Requesting Party"), the other Parties will permit such Requesting Party and its Representatives to have reasonable access during normal business hours, and in a manner so as not to interfere unreasonably with the normal business operations of such Party, to all premises, properties, personnel, books and records, and Contracts or Leases of such Party for the purposes of (a) preparing Tax Returns, (b) monitoring or enforcing rights or obligations under this Agreement or any of the Related Agreements, or (c) complying with the requirements of any Governmental Authority; provided, however, that, for avoidance of doubt, the foregoing shall not require a Party to take any such action if (i) such action may result in a waiver or breach of any attorney/client privilege, (ii) such action could reasonably be expected to result in violation of applicable law, or (iii) providing such access or information would be reasonably expected to be disruptive to its normal business operations.  Buyers agree to maintain the files or records which are contemplated by the first sentence of this Section 6.2 in a manner consistent in all material respects with its document retention and destruction policies, as in effect from time to time, for six (6) years following the Closing.

Section 6.3    Covered Employees.

(a)        **Rudy's Reloaded, or one of the other Buyers, may offer employment to all of the Covered Employees (including, for the avoidance of doubt, Inactive Employees).  At least two (2) Business Days prior to the Auction, Rudy's Reloaded may provide Sellers a list of any Covered Employees that Rudy's Reloaded, or one of the other Buyers, would like to make an offer of employment.  Any such offer of employment will be effective as of the Closing Date and contingent upon the Closing. Each Covered Employee who accepts such offer of employment shall be deemed a "Transferred Employee"; provided that any Covered Employee who has been furloughed or is on an approved leave of absence as of the Closing (an "Inactive Employee") shall not be considered a Transferred Employee unless and until such Inactive Employee returns to active status pursuant to the following sentence, and notwithstanding anything herein to the contrary, no Buyer or their respective Affiliates shall be responsible for Liabilities relating to such Inactive Employee from and after the date such Inactive Employee becomes a Transferred Employee. Each Transferred Employee who becomes employed by a Buyer in connection with the transactions contemplated by this Agreement shall be eligible to receive the salary and benefits (excluding, severance and equity compensation) maintained for employees of Rudy's Reloaded on substantially similar terms and conditions in the aggregate as are provided to similarly situated employees of Rudy's Reloaded. The employment of any Inactive Employee with Rudy's Reloaded or one of its Affiliates, as applicable, shall be effective upon his or her return to active work, provided that the Inactive Employee reports to work with Rudy's Reloaded or one of its Affiliates, as applicable, within five (5) Business Days after the end of any such approved leave and, to the extent permitted by applicable Law, in no event later than six (6) months following the later of (i) the Closing Date or (ii) repeal of the applicable Shelter-in-Place Laws, and, as of such date, such Inactive Employee shall be a Transferred**

*Signature Page to Asset Purchase Agreement*

Employee. Rudy's Reloaded, in its sole discretion shall also be permitted to offer employment to any Covered Employee that is not employed at a Barbershop and any such Covered Employee that accepts such offer of employment shall be a Transferred Employee. Sellers will reasonably cooperate with any reasonable requests by Buyer in order to facilitate the offers of employment and the delivery of such offers.

(b)    <u>Service Credit</u>. Each Transferred Employee shall be given credit for all service with Sellers and their Subsidiaries, and their respective predecessors under any employee benefit plans or arrangements of Rudy's Reloaded and its respective Affiliates maintained by Rudy's Reloaded or its respective Affiliates in which such Transferred Employees participate following the Closing Date, for purposes of eligibility, vesting and entitlement to benefits, including for severance benefits and vacation entitlement and for accrual of pension benefits *provided, however*, that (i) such credit shall be given pursuant to payroll or plan records, at the election of Rudy's Reloaded, in its sole and absolute discretion; and (ii) such service crediting shall be permitted and consistent with Rudy's Reloaded' defined contribution retirement plan.. Notwithstanding the foregoing, nothing in this <u>Section 6.3(b)</u> shall be construed to require crediting of service that would result in a duplication of benefits.

(c)    <u>No Third Party Beneficiary Rights</u>. Without limiting the generality of this <u>Section 6.3</u>, no provision of this Agreement shall create any third party beneficiary rights in any current or former employee or service provider of any Seller, any Covered Employee, or any Transferred Employee (including any beneficiary or dependent thereof) in respect of continued employment by Sellers or its Affiliates or Buyers or its Affiliates or otherwise. Nothing herein shall (i) guarantee employment for any period of time or preclude the ability of any Buyer or any of its Affiliates to terminate any Transferred Employee for any reason, (ii) require any Buyer or any of its Affiliates to continue any Company Benefit Plans, employee benefit plans, or arrangements or prevent the amendment, modification or termination thereof after the Closing, or (iii) constitute an amendment to any Company Benefit Plan, employee benefit plans, or arrangements.

(d)    Effective as soon as practicable following the Closing Date, Sellers, or any applicable Affiliate, shall effect a transfer of assets and liabilities from the defined contribution retirement plan that it maintains, to the defined contribution retirement plan maintained by Rudy's Reloaded, with respect to those employees of the Business who become employed by Rudy's Reloaded, or an Affiliate of Rudy's Reloaded, in connection with the transactions contemplated by this Agreement. Any such transfer shall be in an amount sufficient to satisfy Section 414(l) of the Code.

(e)    Except for any Assumed Liabilities, Sellers will have the sole and absolute responsibility for any financial or other commitments to their employees for the period prior to the Closing, including any and all claims or obligations for severance pay and any and all claims and obligations arising under any collective bargaining agreement, employee benefit plan (including, any withdrawal liability) or any local, state or federal law, rule or regulation (including, the WARN Act). Other

*Signature Page to Asset Purchase Agreement*

**than as set forth in <u>Section 6.3(a)</u>, no Buyer of any of its Affiliates shall have any contractual or other obligation with respect to hiring, offering to hire or employing any Covered Employee or any of Sellers' other employees.  Except as set forth in <u>Section 6.3(a)</u>, in no event shall any Buyer be obligated to commit to any particular usage of employees or to any particular benefits or wage rates.  Nothing contained herein shall be deemed an admission that Sellers have any financial obligation to employees or that obligations, if any, are entitled to a particular treatment or priority under the Bankruptcy Code. Sellers' failure to pay an obligation, if any, under this <u>Section 6.3</u> shall not be a default under this Agreement.**

Section 6.4   <u>Transfer Taxes</u>.  Buyers shall pay any stamp, documentary, filing, recording, registration, sales, use, transfer, added-value or other non-income Tax, fee, or governmental charge (a "<u>Transfer Tax</u>") imposed under applicable Law in connection with the transactions contemplated hereby. The Party that is required by applicable Law to file any Tax Returns in connection with Transfer Taxes described in the immediately preceding sentence shall prepare and timely file such Tax Returns. The Parties hereto shall cooperate to permit the filing Party to prepare and timely file any such Tax Returns.

Section 6.5   <u>Press Releases and Public Announcements</u>.  No Party shall issue any press release or make any public announcement relating to the existence or subject matter of this Agreement without the prior written approval of Rudy's Reloaded and RBS, unless a press release or public announcement is required by applicable law, or any rule or order of the Bankruptcy Court.  If any such announcement or other disclosure is required, the disclosing Party shall give the nondisclosing Parties prior notice of, and an opportunity to comment on, the proposed disclosure.  The Parties acknowledge that Sellers shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order.

Section 6.6   <u>Non-Disclosure; Non-Solicit; Non-Disparagement</u>.

(a)   <u>Non-Disclosure of Confidential Information</u>.  None of the Sellers (the "<u>Restricted Parties</u>") shall, directly or indirectly, disclose or use at any time (and shall cause their respective Affiliates and Representatives not to use or disclose) any Confidential Information (whether or not such information is or was developed by any of the Restricted Parties), except to the extent that (i) such disclosure or use is (i) directly related to and required by the performance of such Restricted Party's duties to the Company or the Buyers, (ii) required by applicable law, any rule of the Bankruptcy Court, any Decree, or as otherwise provided hereunder.  The Restricted Parties each further agrees to take commercially reasonable steps, to the extent within its control, to safeguard such Confidential Information and to protect it against disclosure, misuse, espionage, loss, and theft.  In the event any of the Restricted Parties is required by Law or Decree to disclose any Confidential Information, such Restricted Party shall promptly notify the Buyers in writing, which notification shall include the nature of the legal requirement and the extent of the required disclosure, and shall cooperate with the Buyers' reasonable requests to preserve the confidentiality of such Confidential Information consistent with applicable Law.  For purposes of this Agreement, "<u>Confidential Information</u>" means all information of a confidential or proprietary nature (whether or not specifically labeled or identified as "confidential"), in any form or medium, that relates to the Business, the Company, any

Rudy's Barbershop Asset Purchase Agreement

**Page 42**

other Seller, or their respective suppliers, distributors, customers, independent contractors or other business relations. Confidential Information includes the following as they relate to the Company, any other Seller or the Business and, in each case, to the extent the Company, any other Seller or the Business obtains a commercial benefit from the secret nature of such information: internal business information (including information relating to strategic and staffing plans and practices, business, training, marketing, promotional and sales plans and practices, cost, rate and pricing structures, accounting and business methods and potential acquisition candidates); identities of, individual requirements of, and specific contractual arrangements with, the Company's or any other Seller's suppliers, distributors, customers, independent contractors or other business relations and their confidential information; trade secrets, know-how, compilations of data and analyses, techniques, systems, formulae, research, records, reports, manuals, documentation, models, data and data bases relating thereto; and inventions, innovations, improvements, developments, methods, designs, analyses, drawings, and reports.

(b)    <u>Non-Solicit; Non-Disparagement</u>. During the period commencing on the Closing Date and ending on the fifth (5th) anniversary of the Closing Date (the "<u>Restricted Period</u>"), none of the Sellers shall, directly or indirectly, either individually or acting in concert with another Person or Persons:

(i)    request, induce or attempt to influence any distributor, supplier or customer of goods or services of the Business to curtail, cancel or refrain from maintaining or increasing the amount or type of business such distributor, supplier or customer of goods or services is currently transacting, or may be transacting during the Restricted Period, with the Business or modify its pricing or other terms of sale with the Business;

(ii)    solicit for employment or retention or hire, employ or retain any Person who is an employee of the Business during the Restricted Period;

(iii)    influence or attempt to influence any Person who is an employee of the Business during the Restricted Period to terminate his or her employment with the Company or the Business; or

(iv)    make any negative, derogatory or disparaging statements or communications regarding any Buyer, the Business, the Company or its Subsidiaries, or their respective Affiliates or employees.

(c)    <u>Severability</u>. Notwithstanding anything to the contrary in this Agreement, if at any time, in any judicial or arbitration proceeding, any of the restrictions stated in this Section 6.6 are found by a final order of a court of competent jurisdiction or arbitrator to be unreasonable or otherwise unenforceable under circumstances then existing, the Parties each agree that the period, scope or geographical area, as the case may be, shall be reduced to the extent necessary to enable the court to enforce the restrictions to the extent such provisions are allowable under applicable Law, giving effect to the agreement and intent of the Parties that the restrictions contained herein shall be effective to the fullest extent

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 43**

permissible.  In the event of a breach or violation by any Restricted Party of any of the provisions of this Section 6.6, the Restricted Period Period, as the case may be, will be tolled for so long as such Restricted Party was in violation of such provision.  Each Restricted Party agrees that the restrictions contained in this Agreement are reasonable in all respects and necessary to protect each Buyer's interest in, and the value of, the Business.

(d)    _Specific Performance; Injunctive Relief_.    Each Restricted Party acknowledges and agrees that in the event of a breach or violation by any Restricted Party of any of the provisions of this Section 6.6, the Buyers would suffer irreparable harm, no adequate remedy at law would exist for the Buyers, and damages would be difficult to determine.  Consequently, in the event of any such breach or violation, the Buyers or their successors or assigns may, in addition to other rights and remedies existing in their favor, apply to any court of law or equity of competent jurisdiction for specific performance or injunctive or other relief in order to enforce or prevent any violations of the provisions hereof, in each case without the requirement of posting a bond or proving actual damages.

Section 6.7    _No Successor Liability_.  The Parties intend that upon the Closing, each Buyer and its Affiliates shall not and shall not be deemed to: (a) be a successor (or other such similarly situated party), or otherwise be deemed a successor, to Sellers, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws; (b) have any responsibility or liability for any obligations of Sellers, or any affiliate of Sellers, based on any theory of successor or similar theories of liability; (c) have, de facto or otherwise, merged with or into any of Sellers; (d) be an alter ego or a mere continuation or substantial continuation of any of Sellers (and there is no continuity of enterprise between any Buyer and any Seller), including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to Sellers' liability under such law, rule or regulation or doctrine; or (e) be holding itself out to the public as a continuation of any of Sellers or their respective estates.

Section 6.8    _Acquired Avoidance Actions_.  No Buyer shall at any time following the Closing pursue, prosecute, sell, or transfer any of the Acquired Avoidance Actions.

## ARTICLE VII
## CONDITIONS TO OBLIGATION TO CLOSE

Section 7.1    _Conditions to Buyers' Obligations_.    Buyers' obligation to consummate the transactions contemplated hereby in connection with the Closing is subject to satisfaction or waiver of the following conditions:

(a)    the representations and warranties set forth in _Article III_ shall have been true and correct on the date hereof and as of the Closing (except to the extent expressly made as of an earlier date, in which case as of such date as if made at and as of such date), except where the failure of such representations and warranties to be so true and correct (without giving effect to any limitation as to "material" or "Material Adverse Effect" set forth therein) has not resulted in a Material Adverse Effect;

_Signature Page to Asset Purchase Agreement_

(b)     Sellers shall have performed and complied with its covenants and agreements hereunder through the Closing in all material respects;

(c)     the Bankruptcy Court shall have entered the Bidding Procedures Order pursuant to the terms and conditions of Section 5.3 herein.

(d)     the Bankruptcy Court shall have entered the Sale Order, and no Decree staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date;

(e)     no material Decree shall be in effect that prohibits consummation of the transactions contemplated by this Agreement; and

(f)     each delivery contemplated by Section 2.5(b) to be delivered to a Buyer shall have been delivered.

    Section 7.2    Conditions to Sellers' Obligations.    Sellers' obligations to consummate the transactions contemplated hereby in connection with the Closing are subject to satisfaction or waiver of the following conditions:

(a)     the representations and warranties set forth in Article IV shall have been true and correct in all material respects (except that any representation or warranty that is qualified by materiality shall have been true and correct in all respects) on the date hereof and as of the Closing (except to the extent expressly made as of an earlier date, in which case as of such date as if made at and as of such date);

(b)     each Buyer shall have performed and complied with its covenants and agreements hereunder through the Closing in all material respects;

(c)     the Bankruptcy Court shall have entered the Sale Order, and no Decree staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date;

(d)     no material Decree shall be in effect that prohibits consummation of any of the transactions contemplated by this Agreement; and

(e)     each payment contemplated by Section 2.5(a) to be made to Sellers shall have been made, and each delivery contemplated by Section 2.5(c) to be delivered to Sellers shall have been delivered.

(f)     Seller shall deliver to Buyer by May 11, 2020, an estimated DIP Loan Closing Statement setting out the balance anticipated to be due at Closing.  By May 14, 2020 at noon, Seller shall deliver to Buyer a final DIP Loan Closing Statement. The Parties shall use best efforts to resolve any disputes among themselves as to any DIP Loan Closing Statement.  The following obligations shall not be included in the DIP Loan Closing Statement: (1) all Liabilities arising under the Seller's corporate American Express cards; (2) Buyer's $130,000 cash payment due at Closing; (3) Buyer's Break-Up Fee due of

*Signature Page to Asset Purchase Agreement*

$100,000; (4) Buyers obligations under the Payroll Bridge Loan; (5) Buyers obligations under the Prepetition Promissory Notes; (6) Buyers obligations to pay assumed liabilities;

Section 7.3    No Frustration of Closing Conditions.  Neither Buyers nor Sellers may rely on the failure of any condition to their respective obligations to consummate the transactions contemplated hereby set forth in Section 7.1 or Section 7.2, as the case may be, to be satisfied if such failure was caused by such Party's or its Affiliates' failure to use its reasonable best efforts (or such other applicable efforts standard expressly contemplated hereby) to satisfy the conditions to the consummation of the transactions contemplated hereby or by any other breach of a representation, warranty or covenant hereunder.

# ARTICLE VIII
# TERMINATION

Section 8.1    Termination of Agreement.    The Parties may terminate this Agreement at any time prior to the Closing as provided below:

(a)    by the mutual written consent of the Parties;

(b)    by any Party by giving written notice to the other Parties if:

(i)    any court of competent jurisdiction or other competent Governmental Authority shall have enacted or issued a Law or Decree or taken any other action permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated by this Agreement and such Law or Decree or other action shall have become final and non-appealable; provided, however, that the right to terminate this Agreement under this Section 8.1(b)(i) shall not be available to any Party if the failure to consummate the Closing because of such action by a Governmental Authority shall be due to the failure of such Party to have fulfilled any of its obligations under this Agreement; or

(ii)    the Closing shall not have occurred prior to the Termination Date; provided, however, that if the Closing shall not have occurred on or before the Termination Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Buyers or Sellers, then the breaching Party may not terminate this Agreement pursuant to this Section 8.1(b)(ii).  The "Termination Date" shall be May 15, 2020, unless the Parties mutually agree to a later Closing Date pursuant to Section 2.4, upon which such later date shall be the Termination Date.

(c)    by Buyers by giving written notice to Sellers if there has been a breach by any Seller of any representation, warranty, covenant, or agreement contained in this Agreement that has prevented the satisfaction of the conditions to the obligations of Buyers at the Closing set forth in Section 7.1(a) and Section 7.1(b), and such breach has not been waived by Buyers, or, if such breach is curable, cured by such Seller prior to the earlier to occur of (A) ten (10) days after receipt of Buyers' notice of intent to terminate and (B) the Termination Date; provided, that Buyers shall not have a right of termination pursuant to

*Signature Page to Asset Purchase Agreement*

this Section 8.1(c) if Sellers could, at such time, terminate this Agreement pursuant to Section 8.1(d);

(d)    by Sellers by giving written notice to Buyers if there has been a breach by Buyers of any representation, warranty, covenant, or agreement contained in this Agreement that has prevented the satisfaction of the conditions to the obligations of Sellers at the Closing set forth in Section 7.2(a) and Section 7.2(b), and such breach has not been waived by such Seller, or, if such breach is curable, cured by Buyer prior to the earlier to occur of (A) ten (10) days after receipt of such Seller's notice of intent to terminate and (B) the Termination Date; provided, that Sellers shall not have a right of termination pursuant to this Section 8.1(d) if Buyer could, at such time, terminate this Agreement pursuant to Section 8.1(c); or

(e)    by Sellers or Rudy's Reloaded, if (i) (x) Sellers enter into a definitive agreement with respect to a Competing Bid, (y) the Bankruptcy Court enters an order approving a Competing Bid and (z) the Person making the Competing Bid consummates the Competing Bid or (ii) the Bankruptcy Court enters an order that precludes the consummation of the transactions contemplated hereby on the terms and conditions set forth in this Agreement.

(f)    Notwithstanding anything contained herein to the contrary, in the event that Sellers terminate this Agreement pursuant to Section 8.1(d), the Escrow Amount shall be delivered to Sellers in accordance with Section 2.3(b)(ii) (within one (1) Business Day following the date of any such termination).  Sellers' receipt of the Escrow Amount shall constitute liquidated damages (and not a penalty) in a reasonable amount that will compensate Sellers in the circumstances in which this Agreement is terminated pursuant to Section 8.1(d), which amount would otherwise be impossible to calculate with precision, and (subject to the following sentence) be the sole and exclusive remedy (whether at law, in equity, in contract, in tort or otherwise) of Sellers against the Buyers, and any of their respective former, current, or future general or limited partners, stockholders, managers, members, directors, officers, Affiliates or agents for any loss suffered as a result of any breach of any covenant, representation, warranty or agreement in this Agreement by any Buyer or the failure of the transactions contemplated hereby to be consummated, and upon payment of such amounts, none of the Buyers nor any of their respective former, current, or future general or limited partners, stockholders, managers, members, directors, officers, Affiliates or agents shall have any further liability or obligation relating to or arising out of this Agreement or the transactions contemplated hereby.  Notwithstanding the previous sentence, if Sellers terminate this Agreement pursuant to Section 8.1(d) as a result of any of the Buyers' willful misconduct, then, in addition to the Escrow Amount, Sellers shall be entitled to any other remedies available at law or in equity.

Section 8.2    Effect of Termination.  If any Party terminates this Agreement pursuant to Section 8.1, all rights and obligations of the Parties hereunder shall terminate upon such termination and shall become null and void (except that Article I, Section 3.17, Article IX, and this Section 8.2 shall survive any such termination) and no Party shall have any Liability (except as set forth in Section 5.3) to the other Party hereunder; provided, however, that nothing

*Signature Page to Asset Purchase Agreement*

in this <u>Section 8.2</u> shall relieve any Party from Liability for any breach occurring prior to any such termination (but solely to the extent such breach was willful, grossly negligent or fraudulent) set forth in this Agreement.

<div align="center">

**ARTICLE IX**
**MISCELLANEOUS**
</div>

Section 9.1    <u>Survival</u>.    Except for any covenant that by its terms is to be performed (in whole or in part) by any Party following the Closing, none of the representations, warranties, or covenants of any Party set forth in this Agreement or in any certificate delivered pursuant to <u>Section 2.5(b)</u> or <u>Section 2.5(c)</u> shall survive, and each of the same shall terminate and be of no further force or effect as of, the Closing.    Any obligations to be performed post-Closing shall survive until completion.

Section 9.2    <u>Expenses</u>.    Except for as provided by orders of the Bankruptcy Court including the DIP Order and the Expense Reimbursement, each Party will bear its own costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby, including all fees of law firms, commercial banks, investment banks, accountants, public relations firms, experts, and consultants.    For the avoidance of doubt, Buyers shall pay all recording fees arising from the transfer of the Acquired Assets.

Section 9.3    <u>Entire Agreement</u>.    This Agreement and the Related Agreements constitute the entire agreement between the Parties and supersede any prior understandings, agreements or representations (whether written or oral) by or between the Parties to the extent they relate in any way to the subject matter hereof.

Section 9.4    <u>Incorporation of Exhibits and Disclosure Schedule</u>.    The Exhibits to this Agreement and the Disclosure Schedule are incorporated herein by reference and made a part hereof.

Section 9.5    <u>Amendments and Waivers</u>.    No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each Buyer and each Seller.    No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement.    No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant.    No conditions, course of dealing or performance, understanding, or agreement purporting to modify, vary, explain, or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the first sentence of this <u>Section 9.5</u> except as expressly provided herein.    Except where a specific period for action or inaction is provided herein, no delay on the part of any Party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof.

Section 9.6    <u>Succession and Assignment</u>.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.    No Party may assign either this Agreement or any of its rights, interests, or obligations hereunder

<div align="center">

*Signature Page to Asset Purchase Agreement*
</div>

Rudy's Barbershop Asset Purchase Agreement

with the prior written consent of the other Parties.  Notwithstanding the foregoing, each Buyer may assign (in whole or in part) either this Agreement or any of its rights, interests, or obligations hereunder to an Affiliate of such Buyer without the prior written consent of the other Parties; provided that such assignment shall not relieve such Buyer of its obligations hereunder.

   Section 9.7 <u>Notices</u>. All notices, requests, demands, claims, and other communications hereunder shall be in writing except as expressly provided herein.  Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (a) when delivered personally to the recipient; (b) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); (c) upon receipt of confirmation of receipt if sent by facsimile transmission; (d) on the day such communication was sent by e-mail; or (e) three (3) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

| | |
|---|---|
| If to any Seller: | RUDY'S BARBERSHOP HOLDINGS, LLC<br>1605 Boylston Avenue<br>Suite 202<br>Seattle, Washington 98122<br>Attention:  Katie Trent<br>E-mail:  Katie.Trent@rudysbarbershop.com |
| | With a mandatory copy (which shall not constitute notice to Sellers) to: |
| | CHIPMAN BROWN CICERO & COLE, LLP<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>Attention:  William E. Chipman, Jr.<br>E-mail:  Chipman@chipmanbrown.com |
| If to Buyers: | RUDY'S RELOADED<br>c/o Sortis Holdings Inc.<br>9 SE 3rd Ave Suite 100<br>Portland, OR 97214<br>Attention:  William "Butch" Bannon<br>E-mail:  butch.bannon@sortis.com |
| | With a mandatory copy (which shall not constitute notice to Buyers) to: |
| | Field Jerger LLP<br>621 SW Morrison, Suite 510 |

*Signature Page to Asset Purchase Agreement*

Portland, OR 97205
Attention:  Joe Field
E-mail:  joefield@fieldjerger.com;

Sternberg Thomson Okrent & Scher, PLLC
Attention:  Craig S. Sternberg
2033 Sixth Avenue, Ste. 251
Seattle, WA 98121-2526
E-mail: craig@stoslaw.com &

Sternberg Thomson Okrent & Scher, PLLC
Attention:  Terry Thomson
2033 Sixth Avenue, Ste. 251
Seattle, WA 98121-2526
E-mail: terry@stoslaw.com & tthom999@aol.com

Any Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth in this Section 9.7.

      Section 9.8  Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware (without giving effect to the principles of conflict of Laws thereof), except to the extent that the Laws of such state are superseded by the Bankruptcy Code.

      Section 9.9  Submission to Jurisdiction; Service of Process.  Each of the Parties irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court in any Litigation arising out of or relating to this Agreement or any Related Agreement or the transactions contemplated hereby or thereby and agrees that all claims in respect of such Litigation may be heard and determined in any such court.  Each Party also agrees not to (a) attempt to deny or defeat such exclusive jurisdiction by motion or other request for leave from the Bankruptcy Court or (b) bring any action or proceeding arising out of or relating to this Agreement or any Related Agreement or the transactions contemplated hereby or thereby in any other court.  Each of the Parties irrevocably and unconditionally waives any objection to the laying of venue in, and any defense of inconvenient forum to the maintenance of, any Litigation so brought and waives any bond, surety or other security that might be required of any other Party with respect thereto.  Any Party may make service on any other Party by sending or delivering a copy of the process to the Party to be served at the address and in the manner provided for the giving of notices in Section 9.7; provided, however, that nothing in this Section 9.9 shall affect the right of any Party to serve legal process in any other manner permitted by law or in equity. Each Party agrees that a final judgment in any Litigation so brought shall be conclusive and may be enforced by Litigation or in any other manner provided by law or in equity.  The Parties intend that all foreign jurisdictions will enforce any Decree of the Bankruptcy Court in any Litigation arising out of or relating to this Agreement or any Related Agreement or the transactions contemplated hereby or thereby.

*Signature Page to Asset Purchase Agreement*

Section 9.10  <u>Waiver of Jury Trial</u>.  EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY RELATED AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

Section 9.11  <u>Specific Performance</u>.  Prior to the Closing, without the requirement of posting a bond or other security, Sellers shall be entitled to an injunction or injunctions to enforce specifically Buyers' obligation to deliver written instructions to Debtors' Counsel to release the Escrow Amount to Sellers if and to the extent required by <u>Section 2.3(b)(ii)</u>; <u>provided</u> that Sellers shall not be entitled to enforce specifically any other covenant or agreement prior to the Closing.  From and after the Closing, the Parties shall be entitled to an injunction or injunctions to enforce specifically the Parties' respective covenants and agreements under this Agreement that survive the Closing, without the requirement of posting a bond or other security.

Section 9.12  <u>Severability</u>.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement.  In the event that any of the provisions of this Agreement shall be held by any Governmental Authority to be illegal, invalid, or unenforceable, such provisions shall be limited or eliminated only to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect.

Section 9.13  <u>No Third Party Beneficiaries</u>.  This Agreement shall not confer any rights or remedies upon any Person other than Buyers, each Seller, the Executive and their respective successors and permitted assigns.  Notwithstanding anything to the contrary in this Agreement, the DIP Lender shall be a third party beneficiary of all provisions of this Agreement that expressly relate to the DIP Lender, as applicable.

Section 9.14  <u>Non-Recourse</u>.  All claims, obligations, liabilities, or causes of action that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to this Agreement, the negotiation, execution or performance of this Agreement (including any representation or warranty made in connection with or as an inducement to this Agreement) or the transactions contemplated hereby may be made only against (and are those solely of) the Persons that are expressly identified as Parties to this Agreement. No other Person, including any of their Affiliates, directors, officers, employees, incorporators, members, partners, managers, stockholders, agents, attorneys, or representatives of, or any financial advisors or lenders to any of the foregoing shall have any liabilities for any claims, causes of action, obligations, or liabilities arising under, out of, in connection with, or related in any manner to this Agreement or based on, in respect of, or by reason of this Agreement or its negotiation, execution, performance, or breach.

Section 9.15  <u>Mutual Drafting</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

Section 9.16  <u>Disclosure Schedule</u>.  All capitalized terms not defined in the Disclosure Schedule shall have the meanings ascribed to them in this Agreement.  The

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 51**

representations and warranties of Sellers in this Agreement are made and given, and the covenants are agreed to, subject to the disclosures and exceptions set forth in the Disclosure Schedule. The listing of any matter shall expressly not be deemed to constitute an admission by Sellers, or to otherwise imply, that any such matter is material, is required to be disclosed under this Agreement or falls within relevant minimum thresholds or materiality standards set forth in this Agreement. No disclosure in the Disclosure Schedule relating to any possible breach or violation of any Contract or law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred. In no event shall the listing of any matter in the Disclosure Schedule be deemed or interpreted to expand the scope of Sellers' representations, warranties, or covenants set forth in this Agreement. All attachments to the Disclosure Schedule are incorporated by reference into the applicable section of the Disclosure Schedule in which they are directly or indirectly referenced.

Section 9.17  Headings; Table of Contents. The section headings and the table of contents contained in this Agreement and the Disclosure Schedule are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 9.18  Counterparts; Facsimile and Electronic Signatures. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above

*Signature Page to Asset Purchase Agreement*

written.

**<u>SELLERS</u>**:

RUDY'S BARBERSHOP HOLDINGS LLC
AND ITS SUBSIDIARIES


By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

RUDY'S NEW YORK LLC


By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

RUDY'S HOLLYWOOD, LLC


By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

RUDY'S PORTLAND, LLC


By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

RUDY'S SOUTHEAST, LLC


By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

RUDY'S BARBER SHOP, L.L.C.

By: _/s/ Kathleen Trent_____
    Name: Kathleen Trent
    Title:   Chief Executive Officer

*Signature Page to Asset Purchase Agreement*

Rudy's Barbershop Asset Purchase Agreement

**Page 53**

**<u>BUYERS</u>**:

Malden Avenue Associates, LLC dba RUDY'S
RELOADED, a Washington limited liability company


By:<u>/s/ William Bannon</u>
    William Bannon:
    Managing Member

*Signature Page to Asset Purchase Agreement*

**Page**

written.

**<u>SELLERS</u>**:

RUDY'S BARBERSHOP HOLDINGS LLC
AND ITS SUBSIDIARIES


By:_____
    Name:
    Title:

RUDY'S NEW YORK LLC


By:_____
    Name:
    Title:

RUDY'S HOLLYWOOD, LLC


By:_____
    Name:
    Title:

RUDY'S PORTLAND, LLC


By:_____
    Name:
    Title:

RUDY'S SOUTHEAST, LLC


By:_____
    Name:
    Title:

RUDY'S BARBER SHOP, L.L.C.


By:_____
    Name:
    Title:

*Signature Page to Asset Purchase Agreement*

**TABLE OF CONTENTS**

**Page**

**<u>BUYERS</u>**:

Malden Avenue Associates, LLC dba RUDY'S
RELOADED, a Washington limited liability company


By:/s/ William Bannon                          
      William Bannon:
      Managing Member

*Signature Page to Asset Purchase Agreement*

# EXHIBIT A

## to Asset Purchase Agreement

## (Bill of Sale)

# BILL OF SALE

This Bill of Sale executed and entered into as of May ___, 2020, is given by Rudy's Barbershop Holdings, LLC, a Delaware limited liability company ("RBS"), and the direct and indirect Subsidiaries and affiliates of RBS identified on the signature pages hereto (together with RBS, as Debtors in  in the consolidated Chapter 11 case of *In re Rudy's Barbershop Holdings, LLC,* No. 20-10746 in the United States Bankruptcy Court for the District of Delaware, (herein "Bankruptcy Case" and "Bankruptcy Court")[1] each a "Seller" and collectively, "Sellers", in favor of Malvern Avenue Associates, LLC, a Washington limited liability company ("Malvern"),  and the direct and indirect Subsidiaries or assignees of Malvern  identified on the signature pages hereto (together with Malvern, each a "Buyer" and  collectively, "Buyers").

This Bill of Sale is made pursuant to the Asset Purchase Agreement (the  "Agreement"), dated May __, 2020, by and between Sellers and Buyers, to transfer the Acquired  Assets, as fully defined herein.  Any capitalized term used but not defined in this Bill of Sale shall  have the meaning set forth in the Agreement.

1. **Conveyance**. For good and valuable consideration in the amount paid under Section 2.3 of the Agreement, the receipt and adequacy of which Sellers hereby acknowledge, Sellers hereby irrevocably sell, convey, assign and transfer to Buyers, all of their right, title, and interest in and to the Acquired Assets ("Acquired Assets"), all in accordance with the Agreement and the Assumption and Assignment Agreement. Notwithstanding any provision contained herein to the contrary, the Acquired Assets shall not include, and Sellers shall not sell, transfer, assign, convey or deliver to Buyers, Sellers' right, title or interest in, to and under the Excluded Assets. The Acquired Assets shall include by are not limited to the assets set forth in each of the Sellers Bankruptcy Schedules.[2]

2. **Representations and Warranties**. Sellers represent and warrant that Sellers are the true and lawful owner of the Acquired Assets, and Sellers have lawful authority to sell and transfer the same and the same are free and clear of any Liens (other than Permitted Liens), subject to the terms of the Sale Order.

3. **Further Assurances**. This Bill of Sale is understood and agreed to be subject to all the terms and conditions set forth in the Agreement, including, without limitation, terms relating to the survival of, and indemnification with respect to, the representations, warranties and

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Rudy's Barbershop Holdings, LLC (3198); (ii) Rudy's Barber Shop, LLC (6037); (iii) Rudy's Portland, LLC (7237); (iv) Rudy's Southeast, LLC (5113); (v) Rudy's Hollywood, LLC (2941); and (vi) Rudy's New York, LLC (7034). The Debtors' headquarters is located at 1605 Boylston Avenue, Suite 202, Seattle, Washington 98122.

[2] (1) Rudy's Barber Shop Holdings, LLC, Case No. 20-10746 at [DI 145]; (2) Rudy's Barbershop, LLC, Case No. 20-10747, filed in Lead Case at [DI 147]; (3) Rudy's Portland, LLC, Case No. 20-10750, filed in Lead Case at [DI 153]; (4)  Rudy's Southeast, LLC Case No. 20-10751, filed in Lead Case at [DI 155]; (5) Rudy's Hollywood, LLC Case No. 20-10749, filed in Lead Case at [DI 151]; (6) Rudy's New York, LLC, Case No. 20-10748, filed in Lead Case at [DI 149];

covenants of Sellers, and the Sale Order.  Sellers and their respective successors and assigns hereby covenant and agree with Buyers to execute and deliver such other and further assignments, instruments of transfer, bills of sale, conveyances or other documents as may be necessary to more fully vest in Buyers' title to the Acquired Assets.

4.      **Governing Law**. This Bill of Sale is governed by, is governed by, and construed and interpreted in accordance with, the laws of the State of Delaware, without regard to principles of conflicts of law.

5.      **Counterparts**. This Bill of Sale may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.  This Bill of Sale or any counterpart may be executed and delivered by facsimile copies or delivered by electronic communications by portable document format (.pdf), each of which shall be deemed an original.**Headings**. The section headings contained in this Bill of Sale are inserted for  convenience only and shall not affect in any way the meaning or interpretation of this Bill of Sale.

6.      **Binding Effect; Benefit; Assignment**. This Bill of Sale will inure to the benefit of and bind the parties and their respective successors and permitted assigns.  Nothing in this Bill of Sale, express or implied, may be construed to give any person other than the parties hereto and their respective successors and permitted assigns any right, remedy, claim, obligation or liability arising from or related to this Bill of Sale.  This Bill of Sale and the rights and obligations hereunder shall not be assignable by Sellers without the prior written consent of Buyers, and any such purported assignment without such consent shall be void.  This Bill of Sale and the rights and obligations hereunder shall be assignable by Buyers without the written consent of Sellers.

7.      **Amendment**. This Bill of Sale may not be amended or modified except by an instrument in writing signed by or on behalf of each of the parties hereto.

**IN WITNESS WHEREOF**, Sellers and Buyers have each duly executed and delivered this Bill of Sale as of the date first written above.

**SELLERS**:

RUDY'S BARBERSHOP HOLDINGS LLC  AND ITS SUBSIDIARIES


By:_____
      Name: Kathleen Tate
      Title: Chief Executive Officer
      Bankruptcy Case No. 20-10746 filed in Lead Case as

RUDY'S NEW YORK LLC


By:_____
      Name: Kathleen Tate

Title: Chief Executive Officer
Bankruptcy Case No. 20-10748

RUDY'S HOLLYWOOD, LLC

By:_____
    Name: Kathleen Tate
    Title: Chief Executive Officer

RUDY'S PORTLAND, LLC

By:_____
    Name: Kathleen Tate
    Title: Chief Executive Officer

RUDY'S SOUTHEAST, LLC

By:_____
    Name: Kathleen Tate
    Title: Chief Executive Officer

RUDY'S BARBER SHOP, L.L.C.

By:_____
    Name: Kathleen Tate
    Title: Chief Executive Officer

**BUYER:**
MALVERN AVENUE ASSOCIATES, LLC

By:_____
    Name:
    Title: Chief Executive Officer

# Exhibit B

## To Asset Purchase Agreement

## (Assignment & Assumption Agreement)

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

**BY AND AMONG**

**RUDY'S BARBERSHOP HOLDINGS LLC,**

**THE OTHER SELLER PARTIES HERETO,**

**MALDEN AVENUE ASSOCIATES, LLC, DBA RUDY'S RELOADED**

**THE OTHER BUYER PARTY HERETO**

**AND**

**THE OTHER PARTIES IDENTIFIED ON THE SIGNATURE PAGES HERETO**

**MAY 7, 2020**

This Assignment and Assumption Agreement (the "Assignment and Assumption Agreement") is entered into as of May 7, 2020  2020 by and among Rudy's Barbershop Holdings LLC, a Delaware limited liability company ("RBS" or the "Company"), and the direct and indirect Subsidiaries and affiliates of RBS identified on the signature pages hereto (together with RBS, each an "Assignor" and collectively, "Assignors"), Malden Avenue Associates, LLC, a Washington State limited liability company, or assigns, doing business as "Rudy's Reloaded" ("Rudy's Reloaded").  Rudy's Reloaded, is referred to herein as an"Assignee" or  "Assignees". Sellers and Buyers are referred to collectively herein as the "Parties" and each, a "Party".

All terms used, but not defined, herein shall have the meanings ascribed to them in the Underlying Agreement (defined below).

WHEREAS, Assignor and Assignee, are parties to an Asset Purchase Agreement (the "Underlying Agreement"), dated May 7, 2020, for Assignee to purchase all of the Assets of Assignor from its chapter 11 bankruptcy cases in the US Bankruptcy Court for the District of Delaware as set out below:

1. Rudy's Barber Shop Holdings, LLC, Case No. 20-10746

2. Rudy's Barbershop, LLC, Case No. 20-10747

3. Rudy's Portland, LLC, Case No. 20-10750

4. Rudy's Southeast, LLC Case No. 20-10751

5. Rudy's Hollywood, LLC Case No. 20-10749

6 Rudy's New York, LLC, Case No. 20-10748,

WHEREAS, Assignor has agreed to assign to Assignee all of its rights and obligations under the Underlying Agreement with respect to all of Assignors executory contracts and unexpired leases, that are identified on the schedule attached hereto as Schedule 1 (collectively, the "Assigned Rights and Obligations"); and

WHEREAS, Assignee has agreed to assume the Assigned Rights and Obligations.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Assignment. Assignor hereby assigns to Assignee all of Assignor's rights and obligations under the Underlying Agreement with respect to the Assigned Rights and Obligations.

2. Assumption. Assignee hereby accepts the foregoing assignment and assumes all of the rights and obligations of Assignor under the Underlying Agreement with respect to the Assigned Rights and Obligations.

Page **2** of **5**

3.  Effective Date. The date on which the assignment and assumption of rights and obligations under the Underlying Agreement is effective is May 15, 2020

4.  Successors. All future transfers and assignments of the Assigned Rights and Obligations transferred and assigned hereby are subject to the transfer and assignment provisions of the Underlying Agreement. This Assignment and Assumption Agreement shall inure to the benefit of, and be binding upon, the permitted successors and assigns of the parties hereto.

5.  Counterparts. This Assignment and Assumption Agreement may be executed in counterparts, each of which shall be an original, but all of which together constitute one and the same instrument.

IN WITNESS WHEREOF, Assignor and Assignee, by their duly authorized officials, hereby execute and deliver this Assignment and Assumption Agreement, together with Schedule 1, effective as of the date set forth in Section 3 above.

**ASSIGNOR:**

RUDY'S BARBERSHOP HOLDINGS LLC
AND ITS SUBSIDIARIES


By:_____
    Name:
    Title:

RUDY'S NEW YORK LLC


By:_____
    Name:
    Title:

RUDY'S HOLLYWOOD, LLC


By:_____
    Name:
    Title:

RUDY'S PORTLAND, LLC


By:_____
    Name:
    Title:

RUDY'S SOUTHEAST, LLC


By:_____
    Name:
    Title:

RUDY'S BARBER SHOP, L.L.C.

By:_____
    Name:
    Title:

**<u>ASSIGNEE</u>**

Malden Avenue Associates, LLC
dba RUDY'S RELOADED,
a Washington limited liability company


By:/s/ William Bannon_____
    William Bannon:
    Managing Member

Page **5** of **5**

# SCHEDULE 1

**Rudy's Barbershop Holdings LLC**
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| **Store Lease** | | | | | |
| Ballard store lease 5229 Ballard Ave NW Seattle, WA 98107 | Store location lease | Nuts N' Bolts Property (Lessor); The Derschang Group (Sublessor) | Rudy's Barbershop, LLC | 12/31/2020 | $    4,758.71 |
| Bellevue store lease 10713 Main Street Bellevue WA 98004 | Store location lease | Main Street Partners of Bellevue | Rudy's Barbershop, LLC | 5/31/2021 | $          - |
| Belltown store lease 89 Wall Street Seattle, WA 98121 | Store location lease | Modern Housing | Rudy's Barbershop, LLC | 4/30/2023 | $    2,647.77 |
| Capitol Hill store lease 614 E Pine St Seattle, WA 98122 | Store location lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $    4,490.78 |
| Columbia City store lease 4903 Rainier Ave S Seattle, WA 98118 | Store location lease | Pagliacci Pizza, Inc. | Rudy's Barbershop, LLC | 9/30/2026 | $    5,868.29 |
| East Capitol Hill store lease 428 15th Ave E Seattle, WA 98102 | Store location lease | Hunters Capital | Rudy's Barbershop, LLC | 2/28/2025 | **$    5,267.45** |
| Fremont store lease 475 N 36th St Seattle, WA 98103 | Store location lease | Blonde and Blonder, LLC | Rudy's Barbershop, LLC | 12/31/2026 | $    2,356.48 |
| Headquarters office lease 1605 Boylston Ave, Ste 202 Seattle, WA 98122 | Office lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $  10,570.82 |
| Laurelhurst store lease 3620 NE 45th St Seattle WA 98105 | Store location lease | Bike Path 1, LLC | Rudy's Barbershop, LLC | 7/31/2027 | **$    5,189.78** |
| Microsoft Commons store lease West Campus Commons Submixer 15255 NE 40th St Redmond, WA 98052 | Store location lease | Compass Group Inc, | Rudy's Barbershop, LLC | 5/1/2020 (renews annually) | $    8,588.55 |
| Phinney Ridge Lease 6415 Phinney Ave N Seattle, WA 98103 | Store location lease | Sandra C. Bengtsson | Rudy's Barbershop, LLC | 6/30/2024 | **$    4,253.91** |
| Pioneer Square store lease 109 1st Ave S Seattle WA 98103 | Store location lease | Terry Denny Building LLC | Rudy's Barbershop, LLC | 3/31/2026 | **$    8,100.66** |
| Redmond store lease 16095 Cleveland St, #106 Redmond, WA 98052 | Store location lease | Equity Residential Management | Rudy's Barbershop, LLC | 10/31/2022 | $          - |
| Tacoma store lease 2722 N Proctor St, Ste 106 Tacoma WA 98103 | Store location lease | Proctor Investors LLC | Rudy's Barbershop, LLC | 9/30/2026 | $    4,291.98 |
| University store lease 4738 University Way NE Seattle WA 98105 | Store location lease | Vinh Tran | Rudy's Barbershop, LLC | 5/31/2020 | $    2,664.42 |
| West Seattle store lease 4480 Fauntleroy Way SW Seattle WA 98126 | Store location lease | Westseattle LLC | Rudy's Barbershop, LLC | 9/30/2024 | $          - |
| Highland Park store lease 5633 N Figueroa St Los Angeles, CA 90042 | Store location lease | Accipiter Investments, LLC | Rudy's Hollywood, LLC | 5/31/2026 | $    6,285.91 |
| Main Street store lease 3101 Main St, Suite C Santa Monica CA 98122 | Store location lease | 3101 Main St LLC | Rudy's Hollywood, LLC | 4/30/2022 | $  11,809.15 |
| Melrose store lease 8019 Melrose Ave Los Angeles CA 90046 | Store location lease | Sefton Property Management (8017 Melrose Ave Property LLC) | Rudy's Hollywood, LLC | 3/15/2025 | $    6,375.00 |
| Silverlake store lease 4451 Sunset Blvd Los Angeles CA90027 | Store location lease | Harry J Morley | Rudy's Hollywood, LLC | 7/31/2020 | $    8,735.00 |
| Studio City store lease 12238A Ventura Blvd Studio City CA 91604 | Store location lease | AVV Properties | Rudy's Hollywood, LLC | 8/31/2025 | $    4,381.10 |
| Division store lease 3005 SE Division S Portland OR 97214 | Store location lease | 3015 Division LLC | Rudy's Portland LLC | 12/31/2023 | $    1,008.00 |
| Mississippi store lease 3956 N Mississippi Ave Portland OR 97227 | Store location lease | Pearson Equity Management LLC | Rudy's Portland LLC | 9/30/2025 | $    3,747.37 |
| Pearl store lease 212 NW 13th Ave Portland OR 97209 | Store location lease | Wieden + Kennedy Inc. | Rudy's Portland LLC | 2/29/2024 | $          - |
| 29th St store lease 14 W 29th St New York NY 10001 | Store location lease | GFI Hospitality (1186 Broadway, LLC) | Rudy's New York LLC | 1/31/2022 | **$  14,968.50** |
| Ponce City Market store lease 650 North Ave NE S202 Atlanta, GA 30308 | Store location lease | Jamestown PCM Master Tenant | Rudy's Southeast LLC | 2/29/2024 | $          - |
| **STORE LEASE TOTAL** | | | | | $  126,359.63 |

## Rudy's Barbershop Holdings LLC
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| **Other** | | | | | |
| Copiers Northwest | Samsung printer lease for HQ | Copiers Northwest | Rudy's Barbershop, LLC | 9/17/2020 | $ 344.59 |
| Cisco Meraki - all locations | 5-year license for enterprise | Cisco Systems Capital, Inc. | Rudy's Barbershop, LLC | 10/24/2023 | $ 1,719.10 |
| Pacific Office Automation, Inc. (TIAA Commerical Finance) | Konica Printer for HQ | TIAA Commerical Finance, Inc. | Rudy's Barbershop, LLC | 9/17/2020 | $ 758.58 |
| SoCal Self Storage | Storage unit in LA | So Cal Self Storage Hollywood & Bronson, LLC | Rudy's Hollywood, LLC | Month-to-month (requires 7 days notice) | $ 411.00 |
| Public Storage | Storage unit in Seattle | Public Storage (WA) | Rudy's Barbershop, LLC | Month-to-month (requires 30 days notice) | $ - |
| Access | Records and Information storage | Access Corp | Rudy's Barbershop, LLC | | $ 335.86 |
| Wave Broadband | ISP for Pioneer Square location | Wave Broadband | Rudy's Barbershop | 6/1/2020 | $ - |
| Time Warner | ISP for Studio City location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ - |
| Time Warner | ISP for 29th Street location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ - |
| Time Warner | ISP for Highland Park location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ - |
| Time Warner | ISP for Melrose location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ - |
| Time Warner | ISP for Silverlake location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ - |
| Comcast Business | ISP for Tacoma location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ - |
| Comcast Business | ISP for Laurelhurst location | Comcast Business | Rudy's Barbershop | 10/21/2022 | $ - |
| Comcast Business for CH - 614 E Pine St, Seattle WA 98122 | ISP for Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/19/2022 | $ - |
| Comcast Business | ISP for Columbia City location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ - |
| Comcast Business | ISP for West Seattle location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ - |
| Comcast Business | ISP for East Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ - |
| Comcast Business | ISP for Headquarters location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ - |
| Comcast Business | ISP for Ballard location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ - |
| Comcast Business | ISP for Mississippi location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ - |
| Comcast Business | ISP for Division location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ - |
| Comcast Business | ISP for Pearl location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ - |
| Comcast Business | ISP for Ponce City Market location | Comcast Business | Rudy's Barbershop | 1/19/2021 | $ - |
| Comcast Business | ISP for University location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ - |
| Comcast Business | ISP for Fremont location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ - |
| Comcast Business | ISP for Phinney Ridge location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ - |
| Frontier Communications | ISP for Microsoft location | Frontier Communications | Rudy's Barbershop | 3/30/2021 | $ - |
| Wave Broadband | ISP for Belltown location | Wave Broadband | Rudy's Barbershop | 4/12/2020 | $ - |
| Allstream | ISP for Bellevue location | Allstream Communications | Rudy's Barbershop | 8/14/2020 | $ - |
| Time Warner | ISP for Main Street location | Time Warner Business Class | Rudy's Barbershop | 7/26/2020 | $ - |
| Soundline Communications | Phone service provider for all locations | Soundline Communications | Rudy's Barbershop | month-to-month | $ - |
| Ehrlich Pest Control | Pest Control for Ponce City Market location | | | | $ - |
| Background Source Intl | Background check vendor | | Rudy's Barbershop Holdings LLC | N/A | $ - |
| KDH Consulting, Inc. | IT consulting vendor | KDH Consulting, Inc | Rudy's Barbershop Holdings LLC | 30 days notice | $ - |
| UPS | Shipping rate agreement for webstore | United Parcel Service Inc. | Rudy's Barbershop Holdings LLC | 30 days notice | $ - |
| American Society of Composers, Authors and Publishers (ASCAP) | Music licensing for stores | | Rudy's Barbershop Holdings LLC | 5/1/2020 | $ - |
| Broadcast Music, Inc (BMI) | Music licensing for stores | BMI | Rudy's Barbershop | 2/2/2021 | $ - |
| Navia Benefit Solutions Client Pay | Commuter benefits administration | Navia | Rudy's Barbershop Holdings LLC | Term at any time | $ - |
| Ibsen Impound | Tow authority for Bellevue parking lot | Ibsen | Rudy's Barbershop | | $ - |
| Stericycle | Stericycle for Pioneer Square location | Stericycle | Rudy's Barbershop | 6/1/2020 | $ - |
| Stericycle | Stericycle for Highland Park location | Stericycle | Rudy's Barbershop | 11/1/2020 | $ - |
| Stericycle | Stericycle for Columbia City location | Stericycle | Rudy's Barbershop | 10/1/2020 | $ - |
| Stericycle | Stericycle for Tacoma location | Stericycle | Rudy's Barbershop | 9/1/2020 | $ - |
| Stericycle | Stericycle for Laurelhurst location | Stericycle | Rudy's Barbershop | 8/1/2020 | $ - |
| Stericycle | Stericycle for Ponce City Market location | Stericycle | Rudy's Barbershop | 3/1/2021 | $ - |
| ADP Master Services Agreement | HRIS and payroll software | ADP | Rudy's Barbershop, LLC | 30 days notice | $ - |
| Zenoti Subscription Agreement | Store POS | Zenoti | Rudy's Barbershop Holdings LLC | Term at any time | $ - |
| Stripe, Inc. | Merchant Service Agreement for shops | Stripe | Per location | Term at any time | $ - |
| Staples Advantage | Shop office supplies vendor | Staples Advantage | Rudy's Barbershop | Term at any time | $ - |
| Shopify Plus | Website and webstore hosting | Shopify, Inc. | Rudy's Barbershop | Term at any time | $ - |
| Shipping Easy | | | | | $ - |
| PayPal | Ecommerce payments | PayPal, Inc. | Rudy's Barbershop | Term at any time | $ - |
| Gravity Payments | Merchant service processing for ecomm | Gravity Payments | | | $ - |
| WageWorks | | | | | $ - |
| eFax | Fax service for 206-726-0200 (HQ) | eFax | Rudy's Barbershop | Term at any time | $ - |
| MapBox | Dynamic maps for website | | Rudy's Barbershop | Term at any time | $ - |
| InFlow Cloud | Wholesale inventory software | | | April, 2020 | $ - |
| Kaye Smith | | | | | $ 38,096.57 |
| GAR labs | | | | | $ - |

**Rudy's Barbershop Holdings LLC**
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| Vantage Packaging | | | | | $    - |
| Rogue & Co. | Product sales agreement | Rogue & Co | | 10/1/2020 | $    - |
| Rogue & Co Online Sales Agreement | Product sales agreement | Rogue & Co | | 10/1/20 or on 5 days notice | |
| Premera | | | | | $    - |
| Delta Dental | | | | | $    - |
| Cascade Centers | | | | | $    - |
| Vision Service Plan | | | | | $    - |
| UNUM | | | | | $    - |
| ADT Security Services - 614 E Pine St, Seattle WA 98122 | Security for Capitol Hill location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 6415 Phinney Ave N, Seattle WA 98103 | Security for Phinney Ridge location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 8019 Melrose Ave, Los Angeles CA 90046 | Security for Melrose location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 5633 N Figueroa St, Los Angeles CA 90042 | Security for Highland Park location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4451 W Sunset Blvd, Los Angeles CA 90027 | Security for Silverlake location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 3101 Main St, Santa Monical CA 90405 | Security for Main Street location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 12238A Ventura Blvd, Studio City CA 91604 | Security for Studio City location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 650 North Ave N, Ste 202, Atlanta GA 30308 | Security for Ponce City Market location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 14 W 29th St, New York NY 10001 | Security for 29th Street location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 212 NW 14th Ave, Portland OR 97209 | Security for Pearl District location | ADT (Annual Payment) | Rudy's Barbershop | | $    - |
| ADT Security Services - 3005 SE Division St, Portland OR 97202 | Security for Division location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 3956 N Mississippi Ave, Portland OR 97227 | Security for Mississippi location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 10713 Main Street, Bellevue WA 98004 | Security for Bellevue location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 16095 Cleveland St Ste 106, Redmond WA 98052 | Security for Redmond location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 428 15th Ave E, Seattle WA 98112 | Security for East Capitol Hill location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 109 1st Ave S, Seattle WA 98104 | Security for Pioneer Square location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Service - 3620 45th Ave St, Seattle WA 98105 | Security for Laurelhurst location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4480 Fauntleroy Way SW, Seattle WA 98126 | Security for West Seattle location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4903 Rainier Ave S, Seattle WA 98118 | Security for Columbia City location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4738 University Way NE, Seattle WA 98105 | Security for University Way location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 2722 N Proctor St, Tacoma WA 98407 | Security for Tacoma location | ADT | Rudy's Barbershop | | $    - |
| EDS Security - 475 N 36th St, Seattle WA 98103 | Security for Fremont location | EDS | Rudy's Barbershop | | $    - |
| EDS Security - 1605 Boylston Ave, Ste 202, Seattle WA 98122 | Security for Headquarters | EDS | Rudy's Barbershop | | $    - |
| Comcast Business - 16095 Cleveland St Ste 106, Redmond WA 98052 | ISP for Redmond location | Comcast Business | month-to-month | | $    - |
| Beekeeper Marketing | Amazon marketing | Beekeeper Marketing | Rudy's Barbershop Holdings, LLC | 30 days notice | $    - |
| T-Mobile | Cell backups for firewalls | T-Mobile | Rudy's | N/A | $    - |
| Salon Centric | | | | | $    - |
| Culligan water for HQ and shops | Water service | Culligan | Rudy's Barbershop | | $    - |
| Microsoft Office 365 Business Essentials | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $    - |
| Microsoft Office 365 Business Premium | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $    - |
| Subtenant to 4459 Sunset Boulevard, Los Angeles, CA 90027 | Sublease | Rudy's Hollywood, LLC | Caffe Vita, Inc. (Subtenant) | 7/31/2020 | $    - |
| Subtenant to 4480 Fauntleroy Way SW, Seattle, WA | Sublease | Rudy's Barbershop, LLC | Julie's Coffee, LLC | 9/30/2024 | $    - |
| 4480 Fauntleroy Way SW, Seattle, WA | Use of Restroom Agreement | Rudy's Barbershop, LLC (Restroom Accessibility Information) | Julie's Coffee, LLC (Mobile Unit/Food Vendor) | N/A | $    - |
| Hazardous Waste Removal, Recycling and Disposal | Service Agreement | Athens Services | Rudy's Barbershop | N/A | $    - |
| Culligan Water for Melrose Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Silverlake Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Main Street Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Highland Park Shop | Water service | Culligan of Santa Ana | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Studio City Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Ponce City Market shop | Water service | Culligan of Atlanta | Rudy's Southeast LLC | | $    - |
| Culligan water for WA shops | Water service | Culligan | Rudy's Barbershop, LLC | | $    - |
| Sierra Springs Water for Division shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| Sierra Springs water for Pearl shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| Sierra Springs water for Mississippi shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| **OTHER CONTRACT TOTAL** | | | | | $    41,665.70 |
| **TOTAL CURE AMOUNTS** | | | | | $    168,025.33 |

# Exhibit C

to Asset Purchase
Agreement

(Intellectual Property
Assignment & Assumption
Agreement)

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

This Intellectual Property Assignment Agreement ("IP Assignment"), is entered into as of May 6, 2020 by and among Rudy's Barbershop Holdings LLC, a Delaware limited liability company ("RBS" or the "Company"), and the direct and indirect Subsidiaries and affiliates of RBS identified on the signature pages hereto (together with RBS, each a "Seller" and collectively, "Sellers"), Rudy's Reloaded LLC, a Delaware limited liability company ("Rudy's Reloaded"), and the direct and indirect Subsidiaries of Rudy's Reloaded identified on the signature pages hereto (together with Rudy's Reloaded, each a "Buyer" and collectively, "Buyers"). Sellers and Buyers are referred to collectively herein as the "Parties" and each, a "Party".

WHEREAS, under the terms of that certain Asset Purchase Agreement, dated May ___, 2020, Seller has conveyed, transferred, and assigned to Buyer, among other assets, certain intellectual property of Seller, and has agreed to execute and deliver this IP Assignment, for recording with the United States Patent and Trademark Office and the United States Copyright Office and corresponding entities or agencies in any applicable jurisdictions;

NOW THEREFORE, the parties agree as follows:

1. **Assignment**. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller hereby irrevocably, unequivocally and without reservation, forever sells, conveys, transfers, and assigns to Buyer, and Buyer hereby accepts, all of Seller's right, title, and interest in all of Seller's patents, trademarks, copyrights, social media accounts, and any and all other intellectual property, including without limitation that described below on the following schedules and in the Asset Purchase Agreement, together with the related trade dress, the goodwill associated with such intellectual property, the goodwill in the business associated with the intellectual property, and the causes of action associated with the intellectual property, including without limitation any claims for past infringement, dilution or any other violation of any of the intellectual property (all collectively the "Assigned IP"). The Assigned IP includes but is not limited to  that more fully, but partially, set out below and on the following attached Schedules:

(a) The Material Unregistered Trademarks and Social Media Account set forth on **Schedules 3.113(a)(iii) & 3.113(a)(vi)** of the Asset Purchase Agreement, and all issuances, extensions, and renewals thereof (the "Trademarks"), together with the goodwill of the business connected with the use of, and symbolized by, the Trademarks provided that, with respect to the United States intent-to-use trademark applications, the transfer of such applications accompanies, pursuant to the Asset Purchase Agreement, the transfer of Seller's business, and that business is ongoing and existing.

(b) The Internet Domain Names set forth on **Schedule 3.13(a)(v)** of the Asset Purchase Agreement hereto and all issuances, extensions, and renewals thereof (the "Domain Names");

(c) The Intellectual Property set forth on **Schedule 3.13(a) of the Asset Purchase Agreement;**

(d) The Intellectual Property used in business (excluding off the shelf software) as set forth in **Schedule 3.13(d**) of the Asset Purchase Agreement;

Page **1** of **5**

(e) all rights of any kind whatsoever of Seller accruing under any of the foregoing provided by applicable law of any jurisdiction, by international treaties and conventions, and otherwise throughout the world;

(f) any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing; and

(g) any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.

Buyer/Assignee hereby accepts such assignment.2.    **Recordation and Further Actions**. Seller hereby authorizes the Commissioner for Trademarks in the United States Patent and Trademark Office and the Register of Copyrights in the United States Copyright Office, and the officials of corresponding entities or agencies in any other applicable jurisdictions to record and register this IP Assignment upon request by Buyer. Following the date hereof,[upon Buyer's reasonable request, and at Buyer's sole cost and expense, Seller shall take such steps and actions, and provide such cooperation and assistance to Buyer and its successors, assigns, and legal representatives, including the execution and delivery of any instruments of sale, conveyances assignments and delivery, consents, assurances, affidavits, declarations, oaths, exhibits, assignments, powers of attorney, or other instruments or documents, as may be reasonably necessary to effect, evidence, or perfect the assignment of the Assigned IP to Buyer, or any assignee or successor thereto.

3.    **Terms of the Asset Purchase Agreement**. The parties hereto acknowledge and agree that this IP Assignment is entered into pursuant to the Asset Purchase Agreement, to which reference is made for a further statement of the rights and obligations of Seller and Buyer with respect to the Assigned IP. The representations, warranties, covenants, agreements, and indemnities contained in the Asset Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. Seller/Assignor shall not enter into any agreement in conflict with this Assignment and Assumption Agreement.  In the event of any conflict or inconsistency between The terms of the Asset Purchase Agreement and the terms hereof, the terms of the Asset Purchase Agreement shall govern.

Seller represents and warrants to Buyer that immediately following the execution of this Assignment and Assumption Agreement it will own all right, title and interest in and to the Assigned IP, free and clear of all liens, encumbrances, licenses, or any interest of any third party of any kind and that it has the authority to grant the same to Buyer, and further represents and warrants that Seller has not previously assigned or conveyed any interest of any kind in the Assigned IP to another assignee or entity.

Seller represents and warrants to Buyer that immediately following execution of this Assignment and Assumption Agreement all such assignments or other documents as are necessary to vest in Buyer exclusively ownership of all Assigned IP will have been executed and delivered by Seller.

Page **2** of **5**

4  .**Counterparts**. This IP Assignment may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed one and the same agreement. A signed copy of this IP Assignment delivered by facsimile, e-mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this IP Assignment.

5.  **Successors and Assigns**. This IP Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

6.  **Governing Law**. This IP Assignment and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based upon, arising out of, or relating to this IP Assignment and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the United States and the State of Delaware, without giving effect to any choice or conflict of law provision or rule whether of the State of Delaware or any other jurisdiction).

IN WITNESS WHEREOF, Seller has duly executed and delivered this IP Assignment as of the date first above

THIS SPACE INTENTIONALLY LEFT BLANK

**SELLERS**:

RUDY'S BARBERSHOP HOLDINGS LLC
AND ITS SUBSIDIARIES


By:_____
    Name:
    Title:

RUDY'S NEW YORK LLC


By:_____
    Name:
    Title:

RUDY'S HOLLYWOOD, LLC


By:_____
    Name:
    Title:

RUDY'S PORTLAND, LLC


By:_____
    Name:
    Title:

RUDY'S SOUTHEAST, LLC


By:_____
    Name:
    Title:

RUDY'S BARBER SHOP, L.L.C.

By:_____
    Name:
    Title:


Page **4** of **5**

**BUYERS**:

Malden Avenue Associates, LLC dba RUDY'S
RELOADED, a Washington limited liability company


By:/s/ William Bannon
    William Bannon:
    Managing Member

# Rudy's Barbership Holdings LLC
### Schedule 3.13(a)(iii): Material Unregistered Trademarks and Social Media Accounts

| Trademark | URL |
|---|---|
| Facebook<br>Username: rudysbarbershop | https://www.facebook.com/rudysbarbershop/ |
| Instagram<br>Username: rudysbarbershop | |
| Twitter<br>Username: rudysbarbershop | https://twitter.com/rudysbarbershop?lang=en |
| YouTube<br>Username: RudysBarbershopTV | https://www.youtube.com/user/RudysBarbershopTV |
| Glassdoor<br>Username: Rudy's Barbershop | https://www.glassdoor.com/Overview/Working-at-Rudy-s-Barbershop-EI_IE645692.11,28.htm |
| Indeed.com<br>Username: Rudy's Barbershop | https://www.indeed.com/cmp/Rudy's-Barbershop-1 |
| vimeo<br>Username: Rudy's Barbershop | https://vimeo.com/user7193478 |
| Google My Business - 29th Street | https://business.google.com/reviews/l/06030456455035064074 |
| Google My Business - Ballard | https://business.google.com/reviews/l/04613358515022200269 |
| Google My Business - Bellevue | https://business.google.com/dashboard/l/12706987226937191912 |
| Google My Business - Belltown | https://business.google.com/reviews/l/04275296066634376399 |
| Google My Business - Capitol Hill | https://business.google.com/reviews/l/16608644097700701403 |
| Google My Business - Columbia City | https://business.google.com/reviews/l/15423534723125090387 |
| Google My Business - East Capitol Hill | https://business.google.com/reviews/l/16441065869336551418 |
| Google My Business - Fremont | https://business.google.com/reviews/l/08710293980548450371 |
| Google My Business - Laurelhurst | https://business.google.com/reviews/l/10463975789228231188 |
| Google My Business - Microsoft Commons | https://business.google.com/reviews/l/13621521019405643861 |
| Google My Business - Phinney Ridge | https://business.google.com/reviews/l/14110751179598764610 |
| Google My Business - Pioneer Square | https://business.google.com/reviews/l/09444031239372901287 |
| Google My Business - Redmond | https://business.google.com/reviews/l/04168221976366861273 |
| Google My Business - Tacoma | https://business.google.com/reviews/l/00734479986246156868 |
| Google My Business - University | https://business.google.com/reviews/l/04131846440252889897 |
| Google My Business - West Seattle | https://business.google.com/reviews/l/06938671319735871620 |
| Google My Business - Division | https://business.google.com/reviews/l/15868348357378589543 |
| Google My Business - Pearl | https://business.google.com/reviews/l/07620478896181782445 |
| Google My Business - Mississippi | https://business.google.com/reviews/l/10995937246329492923 |
| Google My Business - Highland Park | https://business.google.com/reviews/l/12643258315515910318 |
| Google My Business - Main Street | https://business.google.com/reviews/l/03294004916710405255 |
| Google My Business - Melrose | https://business.google.com/reviews/l/02369417427893542633 |
| Google My Business - Silverlake | https://business.google.com/reviews/l/11079503409189269212 |
| Google My Business - Studio City | https://business.google.com/reviews/l/15082289431595591649 |
| Google My Business - Ponce City Market | https://business.google.com/reviews/l/16292330255724664879 |
| Yelp - 29th Street | https://biz.yelp.com/home/QsM-C77H8tRo-uCZFNPzqg/ |
| Yelp - Ballard | https://biz.yelp.com/home/v5FdjtpzDtvyidDHuQ6ylQ/ |
| Yelp - Bellevue | https://biz.yelp.com/home/3BSAh4PT6eiKYEYrzY-ZOg/ |
| Yelp - Belltown | https://biz.yelp.com/home/fIwa8N7KWqm_WdSjiB6r9g/ |
| Yelp - Capitol Hill | https://biz.yelp.com/home/aInUjQudDUZS-WpdyY6vqw/ |
| Yelp - Columbia City | https://biz.yelp.com/home/FohsJdAHtMs30Nvy_oCWdw/ |
| Yelp - East Capitol Hill | https://biz.yelp.com/home/xExEf3GiUF9R19NYubScJQ/ |
| Yelp - Fremont | https://biz.yelp.com/home/FEYUCxUzZAFh1uIn6b8K6A/ |

# Rudy's Barbership Holdings LLC

**Schedule 3.13(a)(iii): Material Unregistered Trademarks and Social Media Accounts**

| Trademark | URL |
|---|---|
| Yelp - Laurelhurst | https://biz.yelp.com/home/GlGMhFaNxHlTCwdE8lxxpA/ |
| Yelp - Microsoft Commons | https://www.yelp.com/biz/rudys-barbershop-redmond-2 |
| Yelp - Phinney Ridge | https://biz.yelp.com/home/pcTL8KmqIVubMT1Mowc6PQ/ |
| Yelp - Pioneer Square | https://biz.yelp.com/home/m-W8H5RxaHhkifPtFe8V4w/ |
| Yelp - Redmond | https://biz.yelp.com/home/90XhigxbRz6L75UlmABAew/ |
| Yelp - Tacoma | https://biz.yelp.com/home/7o6k_vpJt8DpNGcR51tZlQ/ |
| Yelp -  University | https://biz.yelp.com/home/E1_svh9AzG6IbDw7_Y4sKw/ |
| Yelp - West Seattle | https://biz.yelp.com/home/-A40ZnfCdnLTRW08V0dPfA/ |
| Yelp - Division | https://biz.yelp.com/home/uaemvqbw5wYEUaWqRiJryQ/ |
| Yelp - Pearl | https://biz.yelp.com/home/DBgblPdRL4pBN1LyYZNQ8w/ |
| Yelp - Mississippi | https://biz.yelp.com/home/Y_AG5JdvJVjJn7w_GnBnrw/ |
| Yelp[ - Highland Park | https://biz.yelp.com/home/bpWqzlujnC1o4LzJFjaPOQ/ |
| Yelp - Main Street | https://biz.yelp.com/home/TZ2VWwBgj9PH5F3msiT9Zg/ |
| Yelp - Melrose | https://biz.yelp.com/home/cO4Xt_k3kHu_yD0ltZJPjA/ |
| Yelp - Silverlake | https://biz.yelp.com/home/diZ4vrXkNThGlRDPJjlBgA/ |
| Yelp - Studio City | https://biz.yelp.com/home/7_jm_0maAT6NW0p3EXDT7w/ |
| Yelp - Ponce City Market | https://biz.yelp.com/home/G6TUgtPImuR6tgv-tQbzpw/ |

## Rudy's Barbership Holdings LLC

**Schedule 3.13(a)(vi): Material Unregistered Trademarks and Social Media Accounts**

| Trademark | URL | Owner of Record / Registrar |
|---|---|---|
| Facebook<br>Username: rudysbarbershop | https://www.facebook.com/rudysbarbershop/ | Greg.seals@rudysbarbershop.com |
| Instagram<br>Username: rudysbarbershop | | bekah.malover@rudysbarbershop.com |
| Twitter<br>Username: rudysbarbershop | https://twitter.com/rudysbarbershop?lang=en | greg.seals@rudysbarbershop.com |
| YouTube<br>Username: RudysBarbershopTV | https://www.youtube.com/user/RudysBarbershopTV | info@rudysbarbershop.com |
| Glassdoor<br>Username: Rudy's Barbershop | https://www.glassdoor.com/Overview/Working-at-Rudy-s-Barbershop-EI_IE645692.11,28.htm | jobs@rudysbarbershop.com |
| Indeed.com<br>Username: Rudy's Barbershop | https://www.indeed.com/cmp/Rudy's-Barbershop-1 | jobs@rudysbarbershop.com |
| vimeo<br>Username: Rudy's Barbershop | https://vimeo.com/user7193478 | info@rudysbarbershop.com |
| Google My Business - 29th Street | https://business.google.com/reviews/l/06030456455035064074 | greg.seals@rudysbarbershop.com |
| Google My Business - Ballard | https://business.google.com/reviews/l/04613358515022200269 | greg.seals@rudysbarbershop.com |
| Google My Business - Bellevue | https://business.google.com/dashboard/l/12706987226937191912 | greg.seals@rudysbarbershop.com |
| Google My Business - Belltown | https://business.google.com/reviews/l/04275296066634376399 | greg.seals@rudysbarbershop.com |
| Google My Business - Capitol Hill | https://business.google.com/reviews/l/16608644097700701403 | greg.seals@rudysbarbershop.com |
| Google My Business - Columbia City | https://business.google.com/reviews/l/15423534723125090387 | greg.seals@rudysbarbershop.com |
| Google My Business - East Capitol Hill | https://business.google.com/reviews/l/16441065869336551418 | greg.seals@rudysbarbershop.com |
| Google My Business - Fremont | https://business.google.com/reviews/l/08710293980548450371 | greg.seals@rudysbarbershop.com |
| Google My Business - Laurelhurst | https://business.google.com/reviews/l/10463975789228231188 | greg.seals@rudysbarbershop.com |
| Google My Business - Microsoft Commons | https://business.google.com/reviews/l/13621521019405643861 | greg.seals@rudysbarbershop.com |
| Google My Business - Phinney Ridge | https://business.google.com/reviews/l/14110751179598764610 | greg.seals@rudysbarbershop.com |
| Google My Business - Pioneer Square | https://business.google.com/reviews/l/09444031239372901287 | greg.seals@rudysbarbershop.com |
| Google My Business - Redmond | https://business.google.com/reviews/l/04168221976366861273 | greg.seals@rudysbarbershop.com |
| Google My Business - Tacoma | https://business.google.com/reviews/l/00734479986246156868 | greg.seals@rudysbarbershop.com |
| Google My Business - University | https://business.google.com/reviews/l/04131846440252889897 | greg.seals@rudysbarbershop.com |
| Google My Business - West Seattle | https://business.google.com/reviews/l/06938671319735871620 | greg.seals@rudysbarbershop.com |
| Google My Business - Division | https://business.google.com/reviews/l/15868348357378589543 | greg.seals@rudysbarbershop.com |
| Google My Business - Pearl | https://business.google.com/reviews/l/07620478896181782445 | greg.seals@rudysbarbershop.com |
| Google My Business - Mississippi | https://business.google.com/reviews/l/10995937246329492923 | greg.seals@rudysbarbershop.com |
| Google My Business - Highland Park | https://business.google.com/reviews/l/12643258315515910318 | greg.seals@rudysbarbershop.com |
| Google My Business - Main Street | https://business.google.com/reviews/l/03294004916710405255 | greg.seals@rudysbarbershop.com |
| Google My Business - Melrose | https://business.google.com/reviews/l/02369417427893542633 | greg.seals@rudysbarbershop.com |
| Google My Business - Silverlake | https://business.google.com/reviews/l/11079503409189269212 | greg.seals@rudysbarbershop.com |
| Google My Business - Studio City | https://business.google.com/reviews/l/15082289431595591649 | greg.seals@rudysbarbershop.com |
| Google My Business - Ponce City Market | https://business.google.com/reviews/l/16292330255724664879 | greg.seals@rudysbarbershop.com |
| Yelp - 29th Street | https://biz.yelp.com/home/QsM-C77H8tRo-uCZFNPzqg/ | greg.seals@rudysbarbershop.com |
| Yelp - Ballard | https://biz.yelp.com/home/v5FdjtpzDtvyidDHuQ6yIQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Bellevue | https://biz.yelp.com/home/3BSAh4PT6eiKYEYrzY-ZOg/ | greg.seals@rudysbarbershop.com |
| Yelp - Belltown | https://biz.yelp.com/home/fIwa8N7KWqm_WdSjiB6r9g/ | greg.seals@rudysbarbershop.com |
| Yelp - Capitol Hill | https://biz.yelp.com/home/aInUjQudDUZS-WpdyY6vqw/ | greg.seals@rudysbarbershop.com |
| Yelp - Columbia City | https://biz.yelp.com/home/FohsJdAHtMs30Nvy_oCWdw/ | greg.seals@rudysbarbershop.com |
| Yelp - East Capitol Hill | https://biz.yelp.com/home/xExEf3GiUF9R19NYubScJQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Fremont | https://biz.yelp.com/home/FEYUCxUzZAFh1uIn6b8K6A/ | greg.seals@rudysbarbershop.com |
| Yelp - Laurelhurst | https://biz.yelp.com/home/GlGMhFaNxHlTCwdE8lxxpA/ | greg.seals@rudysbarbershop.com |
| Yelp - Microsoft Commons | https://www.yelp.com/biz/rudys-barbershop-redmond-2 | greg.seals@rudysbarbershop.com |
| Yelp - Phinney Ridge | https://biz.yelp.com/home/pcTL8KmqlVubMT1Mowc6PQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Pioneer Square | https://biz.yelp.com/home/m-W8H5RxaHhkifPtFe8V4w/ | greg.seals@rudysbarbershop.com |
| Yelp - Redmond | https://biz.yelp.com/home/90XhigxbRz6L75UlmABAew/ | greg.seals@rudysbarbershop.com |
| Yelp - Tacoma | https://biz.yelp.com/home/7o6k_vpJt8DpNGcR51tZlQ/ | greg.seals@rudysbarbershop.com |
| Yelp -  University | https://biz.yelp.com/home/E1_svh9AzG6IbDw7_Y4sKw/ | greg.seals@rudysbarbershop.com |
| Yelp - West Seattle | https://biz.yelp.com/home/-A40ZnfCdnLTRW08V0dPfA/ | greg.seals@rudysbarbershop.com |
| Yelp - Division | https://biz.yelp.com/home/uaemvqbw5wYEUaWqRiJryQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Pearl | https://biz.yelp.com/home/DBgblPdRL4pBN1LyYZNQ8w/ | greg.seals@rudysbarbershop.com |
| Yelp - Mississippi | https://biz.yelp.com/home/Y_AG5JdvJVjJn7w_GnBnrw/ | greg.seals@rudysbarbershop.com |
| Yelp[ - Highland Park | https://biz.yelp.com/home/bpWqzIujnC1o4LzJFjaPOQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Main Street | https://biz.yelp.com/home/TZZVWwBgj9PH5F3msIT9Zg/ | greg.seals@rudysbarbershop.com |
| Yelp - Melrose | https://biz.yelp.com/home/cO4Xt_k3kHu_yD0ltZJPjA/ | greg.seals@rudysbarbershop.com |
| Yelp - Silverlake | https://biz.yelp.com/home/diZ4vrXkNThGlRDPJjlBgA/ | greg.seals@rudysbarbershop.com |
| Yelp - Studio City | https://biz.yelp.com/home/7_jm_0maAT6NW0p3EXDT7w/ | greg.seals@rudysbarbershop.com |
| Yelp - Ponce City Market | https://biz.yelp.com/home/G6TUgtPlmuR6tgv-tQbzpw/ | greg.seals@rudysbarbershop.com |

## Rudy's Barbership Holdings LLC
**Schedule 3.13(a)(v): Internet Domain Names**

| Domain Name (URL) | Host | Notes |
| --- | --- | --- |
| rudysbarbershop.biz | Network Solutions | Page under construction |
| rudysbarbershop.co | Network Solutions | Page under construction |
| rudysbarbershop.com | Network Solutions | Active site |
| rudysbarbershop.info | Network Solutions | Page under construction |
| rudysbarbershop.mobi | Network Solutions | Page under construction |
| rudysbarbershop.net | Network Solutions | Page under construction |
| rudysbarbershop.online | Network Solutions | Website forwarding to rudysbarbershop.com |
| rudysbarbershop.org | Network Solutions | Page under construction |
| rudysbarbershop.us | Network Solutions | Page under construction |
| rudysbarbershopfranchise.com | Network Solutions | Page under construction |
| rudysbarbershopfranchise.net | Network Solutions | Page under construction |
| rudysfranchise.com | Network Solutions | Page under construction |
| rudysfranchise.net | Network Solutions | Page under construction |
| rudysbarbershop.com | Media Temple | DV Server |

**Rudy's Barbershop Holdings LLC**
Schedule 3.13(a): Intellectual Property

| Trademark / Domain Name | Country | Application No. | Filing Date | Registration No. | Registration Date | Status | Next Action Due | Classes | Goods |
|---|---|---|---|---|---|---|---|---|---|
| A COMMUNITY YOU CAN COUNT ON | United States of America | 87092038 | 7/2/2016 | | | Abandoned | | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| FOR EVERYBODY | United States of America | 87092060 | 7/2/2016 | | | Abandoned | | 03 Int., 44 Int. | 03 Int. Cosmetics and non-medicated soaps, shampoos, conditioners, gels, creams, oils and moisturizers for hair and skin.; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| QUALITY CUTS SUPERIOR PRODUCTS FOR EVERYBODY | United States of America | 87092063 | 7/2/2016 | | | Abandoned | Statement of Use 4th Extension,08-May-2020,Due Date | 03 Int., 44 Int. | 03 Int. Cosmetics and non-medicated soaps, shampoos, conditioners, gels, creams, oils and moisturizers for hair and skin; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
|  | United States of America | 87092062 | 7/2/2016 | 5302731 | 43011 | Registered | Aff of Use - 5 Year,03-Oct-2022,Due Date | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| RUDY'S | United States of America | 76285113 | 7/16/2001 | 2651510 | 37579 | Registered | Section 8 &amp; 9 Affidavit/Renewal,19-Nov-2021,Due Date | 42 Int. | 42 Int. Hairdressing salons, beauty salons and haircutting services |
| Rudy's | Japan | 2001-010790 | 2/9/2001 | 4602495 | 37505 | Registered | 1 YEAR RENEWAL REMINDER,06-Sep-2021,Due Date | 42 Int. | 42 Int. Beauty care, hairdressing care |
| RUDY'S | Japan | 2005-054533 | 6/16/2005 | 4954486 | 38856 | Registered | 1 YEAR RENEWAL REMINDER,19-May-2025,Due Date; Renewal due - 1 Year,19-May-2025,Reminder | 42 Int. | 42 Int. Beauty care, hairdressing care |
| RUDY'S | European Union (Community) | 004406476 | 5/21/2005 | 4406476 | 39408 | Registered | Renewal,21-May-2025,Due Date | 33 Int., 44 Int. | 33 Int. Hair lotions, creams, gels, sprays and color treatments, cosmetics; 44 Int. Barbery, hair cutting and salon services |
| RUDY'S | United States of America | 76416078 | 6/6/2002 | 3133394 | 38951 | Registered | Next Renewal,12-Aug-2026,Rev/Due | 03 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care |
| RUDY'S | European Union (Community) | 4406476 | 5/21/2005 | 4406476 | 39408 | Registered | Next Renewal,21-May-2025,Rev/Due | 03 Int., 44 Int. | 03 Int. Hair lotions, creams, gels, sprays and color treatments, cosmetics; 44 Int. Barber, hair cutting and salon services |
| RUDY'S California | California | 55623 | 12/4/2010 | C455623 | 40516 | Registered | | | 03 Int. Hair lotions, creams, gels, sprays and color treatments, cosmetics; 44 Int. Barber, hair cutting and salon services |
| WE CUT HEADS | United States of America | 78634611 | 5/23/2005 | 3331049 | 39992 | Lapsed | | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons and barbering services |

**Rudy's Barbership Holdings LLC**

**Schedule 3.13(d): IP used in business (excluding off-the-shelf software for which Seller pays < $30k per year per title)**

| License | Annual Cost | Comment |
|---|---|---|
| Zenoti | $            127,500.00 | Monthly cost is $400 per month per store. Monthly cost for HQ is $625 per month. |

# Schedules to Asset Purchase Agreement

## Rudy's Barbershop Holdings LLC
**Rudy's Reload APA Disclosure Schedules**

| Schedule | Contents | NONE or N/A | Responsible Party | Status / Comments |
|---|---|---|---|---|
| Schedule A | Intellectual Property Licenses | | | Complete |
| Schedule B | Other Excluded Assets | None | | Complete |
| Schedule 2.7(a) | All executory contracts and unexpired leases | | | Conmplete |
| Schedule 2.7(b) | Designation list of leases and contracts to be Assumed or Rejected | | Buyer | Complete |
| Schedule 3.6 | Location of each barbershop location | | | Complete |
| Schedule 3.7 | Pending litigation | | | Complete |
| Schedule 3.8 | Collective bargaining agreements, unions or labor organizations | None | | |
| Schedule 3.8(c) | All employees including job title, work location, date of hire, exempt or non-exempt status, employment status (active or leave of absence with date), part-time or full-time, annual base salary or regular hourly wage rate, and bonus/commission entitlement. | | | Complete - **NEED TO REDACT - DO NOT FILE** |
| Schedule 3.10 | Tax returns not filed, taxes due but not paid, pending or threatened litigation involving taxing authorities | None | | |
| Schedule 3.11 | Personal property leased with annual payments in excess of $5,000 | | | Complete |
| Schedule 3.12(a) | List of all employee benefit plans | | | Complete |
| Schedule 3.12(c) | Occurences that could impair IRC Sec. 401 qualification for any employee benefits plan | None | | |
| Schedule 3.13(a) | Patents and patent applications; registered trademarks and trademark applications; material unregistered trademarks and social media accounts; registered copyrights; internet domain names; material software | | | Complete |
| Schedule 3.13(d) | List of all IP used and necessary for conduct of business (excluding off-the-shelf software for which Seller pays < $30k per year per title) | None | | Shopify Plus costs $2,316.46 / month; 27,797.52 / year<br>Intacct costs $16,818.88 / year |
| Schedule 3.13(e) | Any options with respect to, or encumbrances placed on Owned Intellectual Property or Sellers' use thereof | None | | |
| Schedule 3.13(f) | List of received written communication alleging that any Owned IP or IP Licenses are invalid or unenforceable; cease and desists relating to licenses or IP Licenses; threatened action or claims relating to any Owned IP | None | | |
| Schedule 3.13(j) | List of material software owned, licensed, used or otherwise held for use in Business that is not in good working condition | None | | |
| Schedule 3.14(b) | List of all current Permits issued to Sellers which are related to the conduct of the Business as currently conducted or the ownership and use of the Acquired Assets, including the names of the Permits and their respective dates of issuance and expiration. | | | Complete |
| Schedule 3.16 | List of any officers, directors or executive committee members who (a) are party to any contract on Sched 2.7(b) or has any material business arrangement with the Company (other than employee benefits plan), (b) has a cause of action or claim against the Company, or (c) has a business relationship with or financial obligation to any other insider | | | Complete |
| Schedule 5.2(b) | Exceptions to prohibited business activities (see following tab) | None | | |
| Schdule 5.2(b)(xi) | Lease Rejections | None | | Complete |
| Schedule 5.4(a) | List of required third party consents or sublicenses | | | Complete |

**Rudy's Barbership Holdings LLC**

**Schedule A: Intellectual Property Licenses**

| Licensor | Description | Expiration Date | Annual Cost |
|---|---|---|---|
| Microsoft Corp | Microsoft Office 365 Premium | 11/12/2020 | $ 11,700.00 |
| Zenoti | Zenoti POS | month-to-month | $ 127,500.00 |
| Cisco Meraki | Firewall, WAP and licensing | 10/24/2023 | $ 10,314.60 |
| Shopify Plus | Website, ecomm hosting | month-to-month | $ 30,000.00 |
| ADP | HRIS | N/A | N/A |
| ASCAP Music License | Music broadcast license | 5/1/2020 | $ 6,150.00 |
| BMI Music License | Music broadcast license | 2/2/2021 | $ 6,167.25 |
| Klaviyo | Email marketing software | month-to-month | $ 9,600.00 |

# Rudy's Barbership Holdings LLC

## Schedule B: Other Excluded Assets

None

## Rudy's Barbership Holdings LLC

**Schedule 2.7(a): Executory Contracts and Unexpired Leases**

| Description / Address | Type | Lessor | Lessee | Expiration | Est. Monthly Payment |
|---|---|---|---|---|---|
| Ballard store lease<br>5229 Ballard Ave NW<br>Seattle, WA 98107 | Store location lease | Nuts N' Bolts Property (Lessor); The Derschang Group (Sublessor) | Rudy's Barbershop, LLC | 12/31/2020 | $ 4,758.71 |
| Bellevue store lease<br>10713 Main Street<br>Bellevue WA 98004 | Store location lease | Main Street Partners of Bellevue | Rudy's Barbershop, LLC | 5/31/2021 | $ 13,391.26 |
| Belltown store lease<br>89 Wall Street<br>Seattle, WA 98121 | Store location lease | Modern Housing, LLC | Rudy's Barbershop, LLC | 4/30/2023 | $ 2,647.77 |
| Capitol Hill store lease<br>614 E Pine St<br>Seattle, WA 98122 | Store location lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $ 4,490.78 |
| Columbia City store lease<br>4903 Rainier Ave S<br>Seattle, WA 98118 | Store location lease | Pagliacci Pizza, Inc. | Rudy's Barbershop, LLC | 9/30/2026 | $ 5,868.29 |
| East Capitol Hill store lease<br>428 15th Ave E<br>Seattle, WA 98102 | Store location lease | Hunters Capital | Rudy's Barbershop, LLC | 2/28/2025 | $ 4,466.77 |
| Fremont store lease<br>475 N 36th St<br>Seattle, WA 98103 | Store location lease | Blonde and Blonder, LLC | Rudy's Barbershop, LLC | 12/31/2026 | $ 4,712.96 |
| Headquarters office lease<br>1605 Boylston Ave, Ste 202<br>Seattle, WA 98122 | Office lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $ 10,570.82 |
| Laurelhurst store lease<br>3620 NE 45th St<br>Seattle WA 98105 | Store location lease | Bike Path 1, LLC | Rudy's Barbershop, LLC | 7/31/2027 | $ 5,189.78 |
| Microsoft Commons store lease<br>West Campus Commons Submixer<br>15255 NE 40th St<br>Redmond, WA 98052 | Store location lease | Compass Group Inc, | Rudy's Barbershop, LLC | 5/1/2020 (renews annually) | $ 628.35 |
| Phinney Ridge Lease<br>6415 Phinney Ave N<br>Seattle, WA 98103 | Store location lease | Sandra C. Bengtsson | Rudy's Barbershop, LLC | 6/30/2024 | $ 3,100.00 |
| Pioneer Square store lease<br>109 1st Ave S<br>Seattle WA 98103 | Store location lease | Terry Denny Building LLC | Rudy's Barbershop, LLC | 3/31/2026 | $ 7,224.83 |
| Redmond store lease<br>16095 Cleveland St, #106<br>Redmond, WA 98052 | Store location lease | Equity Residential Management | Rudy's Barbershop, LLC | 10/31/2022 | $ 5,129.31 |
| Tacoma store lease<br>2722 N Proctor St, Ste 106<br>Tacoma WA 98103 | Store location lease | Proctor Investors LLC | Rudy's Barbershop, LLC | 9/30/2026 | $ 3,863.78 |
| University store lease<br>4738 University Way NE<br>Seattle WA 98105 | Store location lease | Vinh Tran | Rudy's Barbershop, LLC | 5/31/2020 | $ 2,664.42 |
| West Seattle store lease<br>4480 Fauntleroy Way SW<br>Seattle WA 98126 | Store location lease | Westseattle LLC | Rudy's Barbershop, LLC | 9/30/2024 | $ 10,045.50 |
| Highland Park store lease<br>5633 N Figueroa St<br>Los Angeles, CA 90042 | Store location lease | Accipiter Investments, LLC | Rudy's Hollywood, LLC | 5/31/2026 | $ 6,285.91 |
| Main Street store lease<br>3101 Main St, Suite C<br>Santa Monica CA 98122 | Store location lease | 3101 Main St LLC | Rudy's Hollywood, LLC | 4/30/2022 | $ 9,878.55 |
| Melrose store lease<br>8019 Melrose Ave<br>Los Angeles CA 90046 | Store location lease | Sefton Property Management (8017 Melrose Ave Property LLC) | Rudy's Hollywood, LLC | 3/15/2025 | $ 6,375.00 |
| Silverlake store lease<br>4451 Sunset Blvd<br>Los Angeles CA90027 | Store location lease | Harry J Morley | Rudy's Hollywood, LLC | 7/31/2020 | $ 29,116.82 |
| Studio City store lease<br>12238A Ventura Blvd<br>Studio City CA 91604 | Store location lease | AVV Properties | Rudy's Hollywood, LLC | 8/31/2025 | $ 7,757.75 |
| Division store lease<br>3005 SE Division S<br>Portland OR 97214 | Store location lease | 3015 Division LLC | Rudy's Portland LLC | 12/31/2023 | $ 5,444.16 |
| Mississippi store lease<br>3956 N Mississippi Ave<br>Portland OR 97227 | Store location lease | Pearson Equity Management LLC | Rudy's Portland LLC | 9/30/2025 | $ 3,747.37 |
| Pearl store lease<br>212 NW 13th Ave<br>Portland OR 97209 | Store location lease | Wieden + Kennedy Inc. | Rudy's Portland LLC | 2/29/2024 | $ 3,934.79 |
| 29th St store lease<br>14 W 29th St<br>New York NY 10001 | Store location lease | GFI Hospitality (1186 Broadway, LLC) | Rudy's New York LLC | 1/31/2022 | $ 9,568.67 |
| Ponce City Market store lease<br>650 North Ave NE S202<br>Atlanta, GA 30308 | Store location lease | Jamestown PCM Master Tenant | Rudy's Southeast LLC | 2/29/2024 | $ 5,112.23 |
| Copiers Northwest | Samsung printer lease for HQ | Copiers Northwest | Rudy's Barbershop, LLC | 9/17/2020 | $ 344.59 |
| Cisco Meraki - all locations | 5-year license for enterprise firewalls | Cisco Systems Capital, Inc. | Rudy's Barbershop, LLC | 10/24/2023 | $ 859.55 |
| Pacific Office Automation, Inc. (TIAA Commerical Finance) | Konica Printer for HQ | TIAA Commerical Finance, Inc. | Rudy's Barbershop, LLC | 9/17/2020 | $ 379.29 |
| SoCal Self Storage | Storage unit in LA | So Cal Self Storage<br>Hollywood & Bronson, LLC | Rudy's Hollywood, LLC | Month-to-month (requires 7 days notice) | $ 411.00 |
| Public Storage | Storage unit in Seattle | Public Storage (WA) | Rudy's Barbershop, LLC | Month-to-month (requires 30 days notice) | $ 324.00 |
| Access | Records and Information storage | Access Corp | Rudy's Barbershop, LLC | Month-to-month | $ 335.86 |
| Wave Broadband | ISP for Pioneer Square location | Wave Broadband | Rudy's Barbershop | 6/1/2020 | $ 144.63 |
| Time Warner | ISP for Studio City location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ 319.00 |
| Time Warner | ISP for 29th Street location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ 226.98 |
| Time Warner | ISP for Highland Park location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ 336.98 |
| Time Warner | ISP for Melrose location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ 336.98 |
| Time Warner | ISP for Silverlake location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $ 319.00 |
| Comcast Business | ISP for Tacoma location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ 216.90 |
| Comcast Business | ISP for Laurelhurst location | Comcast Business | Rudy's Barbershop | 10/21/2022 | $ 216.90 |
| Comcast Business for CH - 614 E Pine St, Seattle WA 98122 | ISP for Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/19/2022 | $ 220.27 |
| Comcast Business | ISP for Columbia City location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ 216.90 |
| Comcast Business | ISP for West Seattle location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ 216.90 |
| Comcast Business | ISP for East Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ 216.90 |
| Comcast Business | ISP for Headquarters location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ 216.90 |
| Comcast Business | ISP for Ballard location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $ 216.90 |
| Comcast Business | ISP for Mississippi location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $ 216.90 |
| Comcast Business | ISP for Division location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ 234.64 |
| Comcast Business | ISP for Pearl location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ 234.64 |
| Comcast Business | ISP for Ponce City Market location | Comcast Business | Rudy's Barbershop | 1/19/2021 | $ 284.85 |
| Comcast Business | ISP for University location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ 234.64 |
| Comcast Business | ISP for Fremont location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ 234.64 |
| Comcast Business | ISP for Phinney Ridge location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $ 234.64 |
| Frontier Communications | ISP for Microsoft location | Frontier Communications | Rudy's Barbershop | 3/30/2021 | $ 727.57 |
| Wave Broadband | ISP for Belltown location | Wave Broadband | Rudy's Barbershop | 4/12/2020 | $ 249.89 |
| Allstream | ISP for Bellevue location | Allstream Communications | Rudy's Barbershop | 8/14/2020 | $ 569.36 |
| Time Warner | ISP for Main Street location | Time Warner Business Class | Rudy's Barbershop | 7/26/2020 | N/A |
| Soundline Communications | Phone service provider for all locations | Soundline Communications | Rudy's Barbershop | month-to-month | $ 3,386.94 |
| Ehrlich Pest Control | Pest Control for Ponce City Market location | | | | $ 54.00 |
| Background Source Intl | Background check vendor | | Rudy's Barbershop Holdings LLC | N/A | N/A |
| KDH Consulting, Inc | IT consulting vendor | KDH Consulting, Inc | Rudy's Barbershop Holdings LLC | 30 days notice | $150/hour |
| UPS | Shipping rate agreement for webstore | United Parcel Service Inc. | Rudy's Barbershop Holdings LLC | 30 days notice | See addendum B on physical contract |
| American Society of Composers, Authors and Publishers (ASCAP) | Music licensing for stores | | Rudy's Barbershop Holdings LLC | 5/1/2020 | $246/location annually |
| Broadcast Music, Inc (BMI) | Music licensing for stores | BMI | Rudy's Barbershop | 2/2/2021 | $246.69/location annually |
| Navia Benefit Solutions Client Pay | Commuter benefits administration | Navia | Rudy's Barbershop Holdings LLC | Term at any time | $ 25.00 |
| Ibsen Impound | Tow authority for Bellevue parking lot | Ibsen | Rudy's Barbershop | | N/A, payable by towee |
| Stericycle | Stericycle for Pioneer Square location | Stericycle | Rudy's Barbershop | 6/1/2020 | $39.98 per container |
| Stericycle | Stericycle for Highland Park location | Stericycle | Rudy's Barbershop | 11/1/2020 | $39.98 per container |
| Stericycle | Stericycle for Columbia City location | Stericycle | Rudy's Barbershop | 10/1/2020 | $39.98 per container |
| Stericycle | Stericycle for Tacoma location | Stericycle | Rudy's Barbershop | 9/1/2020 | $39.98 per container |
| Stericycle | Stericycle for Laurelhurst location | Stericycle | Rudy's Barbershop | 8/1/2020 | $39.98 per container |
| Stericycle | Stericycle for Ponce City Market location | Stericycle | Rudy's Barbershop | 3/1/2021 | $39.98 per container |
| ADP Master Services Agreement | HRIS and payroll software | ADP | Rudy's Barbershop, LLC | 30 days notice | N/A |
| Zenoti Subscription Agreement | Store POS | Zenoti | Rudy's Barbershop Holdings LLC | Term at any time | $400/location monthly |
| Stripe, Inc. | Merchant Service Agreement for shops | Stripe | Per location | Term at any time | 1.7% in store, card present<br>2.5% +40.30 Card not present<br>2.9% Amex card present<br>3.5% Amex card not present |
| Staples Advantage | Shop office supplies vendor | Staples Advantage | Rudy's Barbershop | Term at any time | N/A |
| Shopify Plus | Website and webstore hosting | Shopify, Inc | Rudy's Barbershop | Term at any time | N/A |
| Shipping Easy | | | | | N/A |
| PayPal | Ecommerce payments | PayPal, Inc | Rudy's Barbershop | Term at any time | N/A |
| Gravity Payments | Merchant service processing for ecomm | Gravity Payments | | | N/A |
| WageWorks | | | | | $ 69.70 |
| eFax | Fax service for 206-726-0200 (HQ) | eFax | Rudy's Barbershop | Term at any time | $ 16.95 |
| MapBox | Dynamic maps for website | | Rudy's Barbershop | Term at any time | Varies by usage |
| InFlow Cloud | Wholesale inventory software | | | April, 2020 | $1,788 annual |
| Kaye Smith | | | | | N/A |
| GAR labs | | | | | N/A |
| Vantage Packaging | | | | | N/A |
| Rogue & Co | Product sales agreement | Rogue & Co | | 10/1/2020 | N/A |
| Rogue & Co Online Sales Agreement | Product sales agreement | Rogue & Co | | 10/1/20 or on 5 days notice | N/A |
| Premera | | | | | N/A |
| Delta Dental | | | | | N/A |
| Cascade Centers | | | | | $ 730.00 |
| Vision Service Plan | | | | | N/A |
| UNUM | | | | | N/A |
| ADT Security Services - 614 E Pine St, Seattle WA 98122 | Security for Capitol Hill location | ADT | Rudy's Barbershop | | $ 117.13 |
| ADT Security Services - 6415 Phinney Ave N, Seattle WA 98103 | Security for Phinney Ridge location | ADT | | | N/A |
| ADT Security Services - 8019 Melrose Ave, Los Angeles CA 90046 | Security for Melrose location | ADT | Rudy's Barbershop | | $ 138.49 |
| ADT Security Services - 5633 N Figueroa St, Los Angeles CA 90042 | Security for Highland Park location | ADT | Rudy's Barbershop | | $ 128.54 |
| ADT Security Services - 4451 W Sunset Blvd, Los Angeles CA 90027 | Security for Silverlake location | ADT | Rudy's Barbershop | | $ 66.16 |
| ADT Security Services - 3101 Main St, Santa Monical CA 90405 | Security for Main Street location | ADT | Rudy's Barbershop | | $ 63.23 |
| ADT Security Services - 12238A Ventura Blvd, Studio City CA 91604 | Security for Studio City location | ADT | Rudy's Barbershop | | $ 136.72 |
| ADT Security Services - 650 North Ave N, Ste 202, Atlanta GA 30308 | Security for Ponce City Market location | ADT | Rudy's Barbershop | | $ 131.14 |
| ADT Security Services - 14 W 29th St, New York NY 10001 | Security for 29th Street location | ADT | Rudy's Barbershop | | $ 86.70 |
| ADT Security Services - 212 NW 14th Ave, Portland OR 97209 | Security for Pearl District location | ADT (Annual Payment) | Rudy's Barbershop | | $ 720.60 |
| ADT Security Services - 3005 SE Division St, Portland OR 97202 | Security for Division location | ADT | Rudy's Barbershop | | $ 193.08 |
| ADT Security Services - 3956 N Mississippi Ave, Portland OR 97227 | Security for Mississippi location | ADT | Rudy's Barbershop | | $ 138.46 |
| ADT Security Services - 10713 Main Street, Bellevue WA 98004 | Security for Bellevue location | ADT | Rudy's Barbershop | | $ 74.18 |
| ADT Security Services - 16095 Cleveland St Ste 106, Redmond WA 98052 | Security for Redmond location | ADT | Rudy's Barbershop | | $ 331.12 |
| ADT Security Services - 428 15th Ave E, Seattle WA 98112 | Security for East Capitol Hill location | ADT | Rudy's Barbershop | | $ 179.51 |
| ADT Security Services - 109 1st Ave S, Seattle WA 98104 | Security for Pioneer Square location | ADT | Rudy's Barbershop | | $ 199.92 |
| ADT Security Service - 3620 45th Ave St, Seattle WA 98105 | Security for Laurelhurst location | ADT | Rudy's Barbershop | | $ 138.09 |
| ADT Security Services - 4480 Fauntleroy Way SW, Seattle WA 98126 | Security for West Seattle location | ADT | Rudy's Barbershop | | $ 154.18 |
| ADT Security Services - 4903 Rainier Ave S, Seattle WA 98118 | Security for Columbia City location | ADT | Rudy's Barbershop | | $ 145.07 |
| ADT Security Services - 4738 University Way NE, Seattle WA 98105 | Security for University Way location | ADT | Rudy's Barbershop | | $ 111.37 |
| ADT Security Services - 2722 N Proctor St, Tacoma WA 98407 | Security for Tacoma location | ADT | Rudy's Barbershop | | $ 144.98 |
| EDS Security - 475 N 36th St, Seattle WA 98103 | Security for Fremont location | EDS | Rudy's Barbershop | | N/A |
| EDS Security - 1605 Boylston Ave, Ste 202, Seattle WA 98122 | Security for Headquarters | EDS | Rudy's Barbershop | | N/A |
| Comcast Business - 16095 Cleveland St Ste 106, Redmond WA 98052 | ISP for Redmond location | Comcast Business | Rudy's Barbershop | month-to-month | $ 220.27 |
| Beekeeper Marketing | Amazon marketing | Beekeeper Marketing | Rudy's Barbershop Holdings, LLC | 30 days notice | $2500 or 5% of sales, plus 10% of advertising spend |
| T-Mobile | Cell backups for firewalls | T-Mobile | Rudy's | N/A | N/A |
| Salon Centric | | | | | N/A |
| Culligan water for HQ and shops | Water service | Culligan | Rudy's Barbershop | | $ 749.21 |
| Microsoft Office 365 Business Essentials | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $ 110.00 |
| Microsoft Office 365 Business Premium | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $ 975.00 |
| Subtenant to 4459 Sunset Boulevard, Los Angeles, CA 90027 | Sublease | Rudy's Hollywood, LLC | Caffe Vita, Inc. (Subtenant) | 7/31/2020 | $ 8,360.00 |
| Subtenant to 4480 Fauntleroy Way SW, Seattle, WA | Sublease | Rudy's Barbershop, LLC | Julie's Coffee, LLC | 9/30/2024 | $ 1,457.99 |
| 4480 Fauntleroy Way SW, Seattle, WA | Use of Restroom Agreement | Rudy's Barbershop, LLC (Restroom Accessibility Information) | Julie's Coffee, LLC (Mobile Unit/Food Vendor) | N/A | N/A |
| Hazardous Waste Removal, Recycling and Disposal | Service Agreement | Athens Services | Rudy's Barbershop | N/A | N/A |
| Culligan Water for Melrose Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $ 41.00 |
| Culligan Water for Silverlake Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $ 36.85 |
| Culligan Water for Main Street Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $ 36.85 |
| Culligan Water for Highland Park Shop | Water service | Culligan of Santa Ana | Rudy's Hollywood, LLC | | $ 31.69 |
| Culligan Water for Studio City Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $ 38.95 |
| Culligan Water for Ponce City Market shop | Water service | Culligan of Atlanta | Rudy's Southeast LLC | | $ 32.27 |
| Culligan water for WA shops | Water service | Culligan | Rudy's Barbershop, LLC | | $ 595.56 |
| Sierra Springs Water for Division shop | Water service | Sierra Springs | Rudy's Portland, LLC | | N/A |
| Sierre Springs water for Pearl shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $ 39.99 |
| Sierra Springs water for Mississippi shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $ 82.98 |

## Rudy's Barbershop Holdings LLC

**Schedule 2.7(b): Executory Contracts and Unexpired Leases - Designation List**

| Description / Address | Type | Lessor | Lessee | Assumed / Rejected |
|---|---|---|---|---|
| Ballard store lease<br>5229 Ballard Ave NW<br>Seattle WA 98107 | Store location lease | Nuts N' Bolts Property (Lessor); The Derschang Group (Sublessor) | Rudy's Barbershop, LLC | Assumed |
| Bellevue store lease<br>10713 Main Street<br>Bellevue WA 98004 | Store location lease | Main Street Partners of Bellevue | Rudy's Barbershop, LLC | Assumed |
| Belltown store lease<br>89 Wall Street<br>Seattle WA 98121 | Store location lease | Modern Housing, LLC | Rudy's Barbershop, LLC | Assumed |
| Capitol Hill store lease<br>614 E Pine St<br>Seattle WA 98122 | Store location lease | Asana Partners | Rudy's Barbershop, LLC | Assumed |
| Columbia City store lease<br>4903 Rainier Ave S<br>Seattle WA 98118 | Store location lease | Pagliacci Pizza, Inc. | Rudy's Barbershop, LLC | Assumed |
| East Capitol Hill store lease<br>428 15th Ave E<br>Seattle WA 98102 | Store location lease | Hunters Capital | Rudy's Barbershop, LLC | Assumed |
| Fremont store lease<br>475 N 36th St<br>Seattle WA 98103 | Store location lease | Blonde and Blonder, LLC | Rudy's Barbershop, LLC | Assumed |
| Headquarters office lease<br>1605 Boylston Ave, Ste 202<br>Seattle WA 98122 | Office lease | Asana Partners | Rudy's Barbershop, LLC | Assumed |
| Laurelhurst store lease<br>3620 NE 45th St<br>Seattle WA 98105 | Store location lease | Bike Path 1, LLC | Rudy's Barbershop, LLC | Assumed |
| Microsoft Commons store lease<br>West Campus Commons Submixer<br>15255 NE 40th St<br>Redmond, WA 98052 | Store location lease | Compass Group Inc, | Rudy's Barbershop, LLC | Assumed |
| Phinney Ridge Lease<br>6415 Phinney Ave N<br>Seattle WA 98103 | Store location lease | Sandra C. Bengtsson | Rudy's Barbershop, LLC | Assumed |
| Pioneer Square store lease<br>109 1st Ave S<br>Seattle WA 98103 | Store location lease | Terry Denny Building LLC | Rudy's Barbershop, LLC | Assumed |
| Redmond store lease<br>16095 Cleveland St, #106<br>Redmond WA 98052 | Store location lease | Equity Residential Management | Rudy's Barbershop, LLC | Assumed |
| Tacoma store lease<br>2722 N Proctor St, Ste 106<br>Tacoma WA 98103 | Store location lease | Proctor Investors LLC | Rudy's Barbershop, LLC | Assumed |
| University store lease<br>4738 University Way NE<br>Seattle WA 98105 | Store location lease | Vinh Tran | Rudy's Barbershop, LLC | Assumed |
| West Seattle store lease<br>4480 Fauntleroy Way SW<br>Seattle WA 98126 | Store location lease | Westseattle LLC | Rudy's Barbershop, LLC | Assumed |
| Highland Park store lease<br>5633 N Figueroa St<br>Los Angeles CA 90042 | Store location lease | Accipiter Investments, LLC | Rudy's Hollywood, LLC | Assumed |
| Main Street store lease<br>3101 Main St, Suite C<br>Santa Monica CA 98122 | Store location lease | 3101 Main St LLC | Rudy's Hollywood, LLC | Assumed |
| Melrose store lease<br>8019 Melrose Ave<br>Los Angeles CA 90046 | Store location lease | Sefton Property Management (8017 Melrose Ave Property LLC) | Rudy's Hollywood, LLC | Assumed |
| Silverlake store lease<br>4451 Sunset Blvd<br>Los Angeles CA90027 | Store location lease | Harry J Morley | Rudy's Hollywood, LLC | Assumed |
| Studio City store lease<br>12238A Ventura Blvd<br>Studio City CA 91604 | Store location lease | AVV Properties | Rudy's Hollywood, LLC | Assumed |
| Division store lease<br>3005 SE Division S<br>Portland OR 97214 | Store location lease | 3015 Division LLC | Rudy's Portland LLC | Assumed |
| Mississippi store lease<br>3956 N Mississippi Ave<br>Portland OR 97227 | Store location lease | Pearson Equity Management LLC | Rudy's Portland LLC | Assumed |
| Pearl store lease<br>212 NW 13th Ave<br>Portland OR 97209 | Store location lease | Wieden + Kennedy Inc. | Rudy's Portland LLC | Assumed |
| 29th St store lease<br>14 W 29th St<br>New York NY 10001 | Store location lease | GFI Hospitality (1186 Broadway, LLC) | Rudy's New York LLC | Assumed |
| Ponce City Market store lease<br>650 North Ave NE S202<br>Atlanta GA 30308 | Store location lease | Jamestown PCM Master Tenant | Rudy's Southeast LLC | Assumed |
| Copiers Northwest | Samsung printer lease for HQ | Copiers Northwest | Rudy's Barbershop, LLC | Assumed |
| Cisco Meraki - all locations | 5-year license for enterprise firewalls | Cisco Systems Capital, Inc. | Rudy's Barbershop, LLC | Assumed |
| Pacific Office Automation, Inc. (TIAA Commerical Finance) | Konica Printer for HQ | TIAA Commerical Finance, Inc. | Rudy's Barbershop, LLC | Assumed |
| SoCal Self Storage | Storage unit in LA | So Cal Self Storage Hollywood & Bronson, LLC | Rudy's Hollywood, LLC | Assumed |
| Public Storage | Storage unit in Seattle | Public Storage (WA) | Rudy's Barbershop, LLC | Assumed |
| Access | Records and Information storage | Access Corp | Rudy's Barbershop, LLC | Assumed |
| Wave Broadband | ISP for Pioneer Square location | Wave Broadband | Rudy's Barbershop | Assumed |
| Time Warner | ISP for Studio City location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Time Warner | ISP for 29th Street location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Time Warner | ISP for Highland Park location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Time Warner | ISP for Melrose location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Time Warner | ISP for Silverlake location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Tacoma location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Laurelhurst location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business for CH - 614 E Pine St, Seattle WA 98122 | ISP for Capitol Hill location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Columbia City location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for West Seattle location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for East Capitol Hill location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Headquarters location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Ballard location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Mississippi location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Division location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Pearl location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Ponce City Market location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for University location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Fremont location | Comcast Business | Rudy's Barbershop | Assumed |
| Comcast Business | ISP for Phinney Ridge location | Comcast Business | Rudy's Barbershop | Assumed |
| Frontier Communications | ISP for Microsoft location | Frontier Communications | Rudy's Barbershop | Assumed |
| Wave Broadband | ISP for Belltown location | Wave Broadband | Rudy's Barbershop | Assumed |
| Allstream | ISP for Bellevue location | Allstream Communications | Rudy's Barbershop | Assumed |
| Time Warner | ISP for Main Street location | Time Warner Business Class | Rudy's Barbershop | Assumed |
| Soundline Communications | Phone service provider for all locations | Soundline Communications | Rudy's Barbershop | Assumed |
| Ehrlich Pest Control | Pest Control for Ponce City Market location | | | Assumed |
| Background Source Intl | Background check vendor | | Rudy's Barbershop Holdings LLC | Assumed |
| KDH Consulting, Inc. | IT consulting vendor | KDH Consulting, Inc | Rudy's Barbershop Holdings LLC | Assumed |
| UPS | Shipping rate agreement for webstore | United Parcel Service Inc. | Rudy's Barbershop Holdings LLC | Assumed |
| American Society of Composers, Authors and Publishers (ASCAP) | Music licensing for stores | | Rudy's Barbershop Holdings LLC | Assumed |
| Broadcast Music, Inc (BMI) | Music licensing for stores | BMI | Rudy's Barbershop | Assumed |
| Navia Benefit Solutions Client Pay | Commuter benefits administration | Navia | Rudy's Barbershop Holdings LLC | Assumed |
| Ibsen Impound | Tow authority for Bellevue parking lot | Ibsen | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Pioneer Square location | Stericycle | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Highland Park location | Stericycle | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Columbia City location | Stericycle | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Tacoma location | Stericycle | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Laurelhurst location | Stericycle | Rudy's Barbershop | Assumed |
| Stericycle | Stericycle for Ponce City Market location | Stericycle | Rudy's Barbershop | Assumed |
| ADP Master Services Agreement | HRIS and payroll software | ADP | Rudy's Barbershop, LLC | Assumed |
| Zenoti Subscription Agreement | Store POS | Zenoti | Rudy's Barbershop Holdings LLC | Assumed |
| Stripe, Inc. | Merchant Service Agreement for shops | Stripe | Per location | Assumed |
| Staples Advantage | Shop office supplies vendor | Staples Advantage | Rudy's Barbershop | Assumed |
| Shopify Plus | Website and webstore hosting | Shopify, Inc | Rudy's Barbershop | Assumed |
| Shipping Easy | | | | Assumed |
| PayPal | Ecommerce payments | PayPal, Inc. | Rudy's Barbershop | Assumed |
| Gravity Payments | Merchant service processing for ecomm | Gravity Payments | | Assumed |
| WageWorks | | | | Assumed |
| eFax | Fax service for 206-726-0200 (HQ) | eFax | Rudy's Barbershop | Assumed |
| MapBox | Dynamic maps for website | | Rudy's Barbershop | Assumed |
| InFlow Cloud | Wholesale inventory software | | | Assumed |
| Kaye Smith | | | | Assumed |
| GAR labs | | | | Assumed |
| Vantage Packaging | | | | Assumed |
| Rogue & Co. | Product sales agreement | Rogue & Co | | Assumed |
| Rogue & Co Online Sales Agreement | Product sales agreement | Rogue & Co | | Assumed |
| Premera | | | | Assumed |
| Delta Dental | | | | Assumed |
| Cascade Centers | | | | Assumed |
| Vision Service Plan | | | | Assumed |
| UNUM | | | | Assumed |
| ADT Security Services - 614 E Pine St, Seattle WA 98122 | Security for Capitol Hill location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 6415 Phinney Ave N, Seattle WA 98103 | Security for Phinney Ridge location | ADT | | Assumed |
| ADT Security Services - 8019 Melrose Ave, Los Angeles CA 90046 | Security for Melrose location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 5633 N Figueroa St, Los Angeles CA 90042 | Security for Highland Park location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 4451 W Sunset Blvd, Los Angeles CA 90027 | Security for Silverlake location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 3101 Main St, Santa Monical CA 90405 | Security for Main Street location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 12238A Ventura Blvd, Studio City CA 91604 | Security for Studio City location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 650 North Ave N, Ste 202, Atlanta GA 30308 | Security for Ponce City Market location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 14 W 29th St, New York NY 10001 | Security for 29th Street location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 212 NW 14th Ave, Portland OR 97209 | Security for Pearl District location | ADT (Annual Payment) | Rudy's Barbershop | Assumed |
| ADT Security Services - 3005 SE Division St, Portland OR 97202 | Security for Division location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 3956 N Mississippi Ave, Portland OR 97227 | Security for Mississippi location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 10713 Main Street, Bellevue WA 98004 | Security for Bellevue location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 16095 Cleveland St Ste 106, Redmond WA 98052 | Security for Redmond location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 428 15th Ave E, Seattle WA 98112 | Security for East Capitol Hill location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 109 1st Ave S, Seattle WA 98104 | Security for Pioneer Square location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Service - 3620 45th Ave St, Seattle WA 98105 | Security for Laurelhurst location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 4480 Fauntleroy Way SW, Seattle WA 98126 | Security for West Seattle location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 4903 Rainier Ave S, Seattle WA 98118 | Security for Columbia City location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 4738 University Way NE, Seattle WA 98105 | Security for University Way location | ADT | Rudy's Barbershop | Assumed |
| ADT Security Services - 2722 N Proctor St, Tacoma WA 98407 | Security for Tacoma location | ADT | Rudy's Barbershop | Assumed |
| EDS Security - 475 N 36th St, Seattle WA 98103 | Security for Fremont location | EDS | Rudy's Barbershop | Assumed |
| EDS Security - 1605 Boylston Ave, Ste 202, Seattle WA 98122 | Security for Headquarters | EDS | Rudy's Barbershop | Assumed |
| Comcast Business - 16095 Cleveland St Ste 106, Redmond WA 98052 | ISP for Redmond location | Comcast Business | Rudy's Barbershop | Assumed |
| Beekeeper Marketing | Amazon marketing | Beekeeper Marketing | Rudy's Barbershop Holdings, LLC | Assumed |
| T-Mobile | Cell backups for firewalls | T-Mobile | Rudy's | Assumed |
| Salon Centric | | | | Assumed |
| Culligan water for HQ and shops | Water service | Culligan | Rudy's Barbershop | Assumed |
| Microsoft Office 365 Business Essentials | SaaS | Microsoft Corp. | Rudy's Barbershop | Assumed |
| Microsoft Office 365 Business Premium | SaaS | Microsoft Corp. | Rudy's Barbershop | Assumed |
| Subtenant to 4459 Sunset Boulevard, Los Angeles, CA 90027 | Sublease | Rudy's Hollywood, LLC | Caffe Vita, Inc. (Subtenant) | Assumed |
| Subtenant to 4480 Fauntleroy Way SW, Seattle, WA | Sublease | Rudy's Barbershop, LLC | Julie's Coffee, LLC | Assumed |
| 4480 Fauntleroy Way SW, Seattle, WA | Use of Restroom Agreement | Rudy's Barbershop, LLC (Restroom Accessibility Information) | Julie's Coffee, LLC (Mobile Unit/Food Vendor) | Assumed |
| Hazardous Waste Removal, Recycling and Disposal | Service Agreement | Athens Services | Rudy's Barbershop | Assumed |
| Culligan Water for Melrose Shop | Water service | Culligan | Rudy's Hollywood, LLC | Assumed |
| Culligan Water for Silverlake Shop | Water service | Culligan | Rudy's Hollywood, LLC | Assumed |
| Culligan Water for Main Street Shop | Water service | Culligan | Rudy's Hollywood, LLC | Assumed |
| Culligan Water for Highland Park Shop | Water service | Culligan of Santa Ana | Rudy's Hollywood, LLC | Assumed |
| Culligan Water for Studio City Shop | Water service | Culligan | Rudy's Hollywood, LLC | Assumed |
| Culligan Water for Ponce City Market shop | Water service | Culligan of Atlanta | Rudy's Southeast LLC | Assumed |
| Culligan water for WA shops | Water service | Culligan | Rudy's Barbershop, LLC | Assumed |
| Sierra Springs Water for Division shop | Water service | Sierra Springs | Rudy's Portland, LLC | Assumed |
| Sierre Springs water for Pearl shop | Water service | Sierra Springs | Rudy's Portland, LLC | Assumed |
| Sierra Springs water for Mississippi shop | Water service | Sierra Springs | Rudy's Portland, LLC | Assumed |

# Rudy's Barbership Holdings LLC

**Schedule 3.6: Shop Locations**

| | Shop | Address | Address 2 | City | State | Zip Code |
|---|---|---|---|---|---|---|
| 1 | Main Street | 3101 Main Street | Suite C | Santa Monica | CA | 90405 |
| 2 | 29th Street | 14 W 29th St | | New York | NY | 10001 |
| 3 | Silverlake | 4451 W Sunset Blvd | | Los Angeles | CA | 90027 |
| 4 | Pioneer Square | 109 1st Ave S | | Seattle | WA | 98104 |
| 5 | Highland Park | 5633 N Figueroa St | | Los Angeles | CA | 90042 |
| 6 | Melrose | 8019 Melrose Ave | | Los Angeles | CA | 90046 |
| 7 | Columbia City | 4903 Rainier Ave S | | Seattle | WA | 98118 |
| 8 | Ballard | 5229 Ballard Ave NW | | Seattle | WA | 98107 |
| 9 | Capitol Hill | 614 E Pine St | | Seattle | WA | 98122 |
| 10 | Studio City | 12238A Ventura Blvd | | Los Angeles | CA | 91604 |
| 11 | Tacoma Proctor | 2722 N Proctor St | Ste 106 | Tacoma | WA | 98406 |
| 12 | Mississippi | 3956 N Mississippi Ave | | Portland | OR | 97227 |
| 13 | Phinney Ridge | 6415 Phinney Ave N | | Seattle | WA | 98103 |
| 14 | University | 4738 University Way NE | | Seattle | WA | 98105 |
| 15 | Belltown | 89 Wall Street | | Seattle | WA | 98121 |
| 16 | Fremont | 475 N 36th St | | Seattle | WA | 98103 |
| 17 | East Capitol Hill | 428 15th Ave E | | Seattle | WA | 98112 |
| 18 | Microsoft Commons | West Campus Commons | Submixer15255 NE 40th St | Redmond | WA | 98052 |
| 19 | Division | 3005 SE Division St | | Portland | OR | 97202 |
| 20 | Laurelhurst | 3620 NE 45th St | | Seattle | WA | 98105 |
| 21 | Ponce City Market | 650 North Ave NE | Suite 202 | Atlanta | GA | 30308 |
| 22 | Redmond | 16095 Cleveland St | | Redmond | WA | 98052 |
| 23 | West Seattle | 4480 Fauntleroy Way SW | | Seattle | WA | 98126 |
| 24 | Bellevue | 10713 Main Street | | Bellevue | WA | 98004 |
| 25 | Pearl District | 212 NW 13th Ave | | Portland | OR | 97209 |

**Rudy's Barbership Holdings LLC**
Schedule 3.7: Pending Litigation

| Caption | Filing Date | Venue (Court) | Case No. | Rudy's Counsel with contact info | Opposing Parties | Opposing Party Counsel with contact info | Opposing Counsel Address | Description of Litigation | Status |
|---------|-------------|---------------|----------|----------------------------------|------------------|------------------------------------------|--------------------------|--------------------------|--------|
| Cerecerez v. Rudy's Hollywood, LLC; Rudy's Barbershop, LLC | 10/25/2019 | Superior Court of California, County of Los Angeles | 19STCP04617 | Andrew McNaught, Seyfarth Shaw LLP 560 Mission Street, Suite 3100, San Francisco, California 94105-2930 415-544-1022 | Karen Cerecerez, California employee | Jacob Karczewski, Employee Justice Legal Group jkarczewsju@ejlglaw.com | 3055 Wilshire Blvd, Suite 1120, Los Angeles, CA 90010 | PAGA Wage and Hour Claims | Intended to mediate in early summer. |
| Rollins v. Morley | 11/5/2018 | Superior Court of California, County of Los Angeles | 18STLC13768 | N/A | Jerry Rollins | Morse Mehrban morse@mehrban.com | 15720 Ventura Blvd, Suite 228, Encino, CA 91436 | ADA facility complaint | Plaintiff filed suit against Silverlake landlord.  Default judgment entered for $5,155.  Landlord's attorney sent to us in January, 2020.  Rudy's paid landlord for the $5,155 fee.  $400 fee to file a satisfaction and acord outstanding to |
| Whitaker v. Van Cliet Homes, LLC; Rudy's Hollywood, LLC | 11/7/2019 | US District Court for the Central District of California | 2:19-cv-09521-JAK | Myra B. Villamor; Seyfarth Shaw LLP 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021 310-201-1522 | Anthony Ferreiro | Evan Smith, Brodsky & Smith esmith@brodskysmith.com | 9595 Wilshire Blvd, Suite 900, Beverly Hills, CA 90212 | Prop 65 notice of violation (dated 1/28/2020) | Plaintiff purchased a style kit of Rudy's products contained within a plastic zip bag that did not have a proper Prop. 65 notice for State of CA.  Purchased at Urban Outfitters.  Sent notice of violation to Urban Outfitters and Rudy's.  Rudy's agreed to absorb defense costs for Urban Outfitters. Suit not yet filed, but expecting very soon. |

# Rudy's Barbership Holdings LLC
## Schedule 3.8: Collective Bargaining Agreements

None

## Rudy's Barbership Holdings LLC

**Schedule 3.10: Tax returns not filed, taxes due but not paid, pending or threatened litigation involving taxing authorities**

None

## Rudy's Barbership Holdings LLC

**Schedule 3.11: Personal property leased with annual payments in excess of $5,000**

| Item | Lessor | Type | Annual Payment |
|------|--------|------|----------------|
| Meraki License Renewal (Firewalls) | Cisco Systems Capital CRP | Financing Agreement | $      10,314.60 |

# Rudy's Barbership Holdings LLC

## Schedule 3.12(a) List of all Employee Benefit Plans

| Plan Type | Benefit Provider |
|---|---|
| Short Term Disability | UNUM |
| Dental | Delta Dental |
| 401(k) | ForUsAll |
| Commuter Benefits | Navia |
| COBRA | WageWorks |
| Medical | Premera |
| Vision | Vision Service Plan |
| Accident | UNUM |
| Whole Life | UNUM |
| Disability - NY State | Coming from Broker |
| Cascade Centers | EAP |

## Rudy's Barbership Holdings LLC

**Schedule 3.12(c): Occurences that could impair IRC Sec. 401 qualification for any employee benefits plan**

None

**Rudy's Barbership Holdings LLC**
Schedule 3.13(a): Intellectual Property

| Trademark / Domain Name | Country | Application No. | Filing Date | Registration No. | Registration Date | Status | Next Action Due | Classes | Goods |
|---|---|---|---|---|---|---|---|---|---|
| A COMMUNITY YOU CAN COUNT ON | United States of America | 87092038 | 7/2/2016 | | | Abandoned | | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| FOR EVERYBODY | United States of America | 87092060 | 7/2/2016 | | | Abandoned | | 03 Int., 44 Int. | 03 Int. Cosmetics and non-medicated soaps, shampoos, conditioners, gels, creams, oils and moisturizers for hair and skin.; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| QUALITY CUTS SUPERIOR PRODUCTS FOR EVERYBODY | United States of America | 87092063 | 7/2/2016 | | | Abandoned | Statement of Use 4th Extension,08-May-2020,Due Date | 03 Int., 44 Int. | 03 Int. Cosmetics and non-medicated soaps, shampoos, conditioners, gels, creams, oils and moisturizers for hair and skin; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| **R** | United States of America | 87092062 | 7/2/2016 | 5302731 | 43011 | Registered | Aff of Use - 5 Year,03-Oct-2022,Due Date | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons, beauty salons, and haircutting services |
| RUDY'S | United States of America | 76285113 | 7/16/2001 | 2651510 | 37579 | Registered | Section 8 &amp; 9 Affidavit/Renewa,19-Nov-2021,Due Date | 42 Int. | 42 Int. Hairdressing salons, beauty salons and haircutting services |
| Rudy's | Japan | 2001-010790 | 2/9/2001 | 4602495 | 37505 | Registered | 1 YEAR RENEWAL REMINDER,06-Sep-2021,Due Date | 42 Int. | 42 Int. Beauty care, hairdressing care |
| RUDY'S | Japan | 2005-054533 | 6/16/2005 | 4954486 | 38856 | Registered | 1 YEAR RENEWAL REMINDER,19-May-2025,Due Date; Renewal due - 1 Year,19-May-2025,Reminder | | |
| RUDY'S | European Union (Community) | 004406476 | 5/21/2005 | 4406476 | 39408 | Registered | Renewal,21-May-2025,Due Date | 33 Int., 44 Int. | 33 Int. Hair lotions, creams, gels, sprays and color treatments, cosmetics; 44 Int. Barbery, hair cutting and salon services |
| RUDY'S | United States of America | 76416078 | 6/6/2002 | 3133394 | 38951 | Registered | Next Renewal,22-Aug-2026,Ren/Due | 03 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care |
| RUDY'S | European Union (Community) | 4406476 | 5/21/2005 | 4406476 | 39408 | Registered | Next Renewal,21-May-2025,Ren/Due | 03 Int., 44 Int. | 03 Int. Hair lotions, creams, gels, sprays and color treatments, cosmetics; 44 Int. Barber, hair cutting and salon services |
| RUDY'S California | California | 55623 | 12/4/2010 | CA55623 | 40516 | Registered | | | |
| WE CUT HEADS | United States of America | 78634611 | 5/23/2005 | 3331049 | 39392 | Lapsed | | 03 Int., 44 Int. | 03 Int. Cosmetics and soaps, shampoos, conditioners, lotions, gels, creams, oils and moisturizers for hair, skin and body care; 44 Int. Hairdressing salons and barbering services |

**Rudy's Barbership Holdings LLC**
Schedule 3.13(a)(iii): Material Unregistered Trademarks and Social Media Accounts

| Trademark | URL |
|---|---|
| Facebook | https://www.facebook.com/rudysbarbershop/ |
| Username: rudysbarbershop | |
| Instagram | |
| Username: rudysbarbershop | |
| Twitter | https://twitter.com/rudysbarbershop?lang=en |
| Username: rudysbarbershop | |
| YouTube | https://www.youtube.com/user/RudysBarbershopTV |
| Username: RudysBarbershopTV | |
| Glassdoor | https://www.glassdoor.com/Overview/Working-at-Rudy-s-Barbershop- |
| Username: Rudy's Barbershop | EI_IE645692.11,28.htm |
| Indeed.com | https://www.indeed.com/cmp/Rudy's-Barbershop-1 |
| Username: Rudy's Barbershop | |
| vimeo | https://vimeo.com/user7193478 |
| Username: Rudy's Barbershop | |
| Google My Business - 29th Street | https://business.google.com/reviews/l/06030456455035064074 |
| Google My Business - Ballard | https://business.google.com/reviews/l/04613358515022200269 |
| Google My Business - Bellevue | https://business.google.com/dashboard/l/12706987226937191912 |
| Google My Business - Belltown | https://business.google.com/reviews/l/04275296066634376399 |
| Google My Business - Capitol Hill | https://business.google.com/reviews/l/16608644097700701403 |
| Google My Business - Columbia City | https://business.google.com/reviews/l/15423534723125090387 |
| Google My Business - East Capitol Hill | https://business.google.com/reviews/l/16441065869336551418 |
| Google My Business - Fremont | https://business.google.com/reviews/l/08710293980548450371 |
| Google My Business - Laurelhurst | https://business.google.com/reviews/l/10463975789228231188 |
| Google My Business - Microsoft Commons | https://business.google.com/reviews/l/13621521019405643861 |
| | |
| Google My Business - Phinney Ridge | https://business.google.com/reviews/l/14110751179598764610 |
| Google My Business - Pioneer Square | https://business.google.com/reviews/l/09444031239372901287 |
| Google My Business - Redmond | https://business.google.com/reviews/l/04168221976366861273 |
| Google My Business - Tacoma | https://business.google.com/reviews/l/00734479986246156868 |
| Google My Business - University | https://business.google.com/reviews/l/04131846440252889897 |
| Google My Business - West Seattle | https://business.google.com/reviews/l/06938671319735871620 |
| Google My Business - Division | https://business.google.com/reviews/l/15868348357378589543 |
| Google My Business - Pearl | https://business.google.com/reviews/l/07620478896181782445 |
| Google My Business - Mississippi | https://business.google.com/reviews/l/10995937246329492923 |
| Google My Business - Highland Park | https://business.google.com/reviews/l/12643258315515910318 |
| Google My Business - Main Street | https://business.google.com/reviews/l/03294004916710405255 |
| Google My Business - Melrose | https://business.google.com/reviews/l/02369417427893542633 |
| Google My Business - Silverlake | https://business.google.com/reviews/l/11079503409189269212 |
| Google My Business - Studio City | https://business.google.com/reviews/l/15082289431595591649 |
| Google My Business - Ponce City Market | https://business.google.com/reviews/l/16292330255724664879 |
| Yelp - 29th Street | https://biz.yelp.com/home/QsM-C77H8tRo-uCZFNPzqg/ |
| Yelp - Ballard | https://biz.yelp.com/home/v5FdjtpzDtvyidDHuQ6ylQ/ |
| Yelp - Bellevue | https://biz.yelp.com/home/3BSAh4PT6eiKYEYrzY-ZOg/ |
| Yelp - Belltown | https://biz.yelp.com/home/fIwa8N7KWqm_WdSjiB6r9g/ |
| Yelp - Capitol Hill | https://biz.yelp.com/home/aInUjQudDUZS-WpdyY6vqw/ |
| Yelp - Columbia City | https://biz.yelp.com/home/FohsJdAHtMs30Nvy_oCWdw/ |
| Yelp - East Capitol Hill | https://biz.yelp.com/home/xExEf3GiUF9R19NYubScJQ/ |
| Yelp - Fremont | https://biz.yelp.com/home/FEYUCxUzZAFh1uIn6b8K6A/ |
| Yelp - Laurelhurst | https://biz.yelp.com/home/GlGMhFaNxHlTCwdE8lxxpA/ |
| Yelp - Microsoft Commons | https://www.yelp.com/biz/rudys-barbershop-redmond-2 |
| Yelp - Phinney Ridge | https://biz.yelp.com/home/pcTL8KmqlVubMT1Mowc6PQ/ |
| Yelp - Pioneer Square | https://biz.yelp.com/home/m-W8H5RxaHhkifPtFe8V4w/ |
| Yelp - Redmond | https://biz.yelp.com/home/90XhigxbRz6L75UImABAew/ |
| Yelp - Tacoma | https://biz.yelp.com/home/7o6k_vpJt8DpNGcR51tZIQ/ |
| Yelp -  University | https://biz.yelp.com/home/E1_svh9AzG6IbDw7_Y4sKw/ |
| Yelp - West Seattle | https://biz.yelp.com/home/-A40ZnfCdnLTRW08V0dPfA/ |
| Yelp - Division | https://biz.yelp.com/home/uaemvqbw5wYEUaWqRiJryQ/ |
| Yelp - Pearl | https://biz.yelp.com/home/DBgblPdRL4pBN1LyYZNQ8w/ |
| Yelp - Mississippi | https://biz.yelp.com/home/Y_AG5JdvJVjJn7w_GnBnrw/ |
| Yelp[ - Highland Park | https://biz.yelp.com/home/bpWqzlujnC1o4LzJFjaPOQ/ |
| Yelp - Main Street | https://biz.yelp.com/home/TZ2VWw8gj9PH5F3msiT9Zg/ |
| Yelp - Melrose | https://biz.yelp.com/home/cO4Xt_k3kHu_yD0ltZJPjA/ |
| Yelp - Silverlake | https://biz.yelp.com/home/diZ4vrXkNThGlRDPJjIBgA/ |
| Yelp - Studio City | https://biz.yelp.com/home/7_jm_0maAT6NW0p3EXDT7w/ |
| Yelp - Ponce City Market | https://biz.yelp.com/home/G6TUgtPImuR6tgv-tQbzpw/ |

## Rudy's Barbership Holdings LLC

**Schedule 3.13(a)(v): Internet Domain Names**

| Domain Name (URL) | Host | Notes |
|---|---|---|
| rudysbarbershop.biz | Network Solutions | Page under construction |
| rudysbarbershop.co | Network Solutions | Page under construction |
| rudysbarbershop.com | Network Solutions | Active site |
| rudysbarbershop.info | Network Solutions | Page under construction |
| rudysbarbershop.mobi | Network Solutions | Page under construction |
| rudysbarbershop.net | Network Solutions | Page under construction |
| rudysbarbershop.online | Network Solutions | Website forwarding to rudysbarbershop.com |
| rudysbarbershop.org | Network Solutions | Page under construction |
| rudysbarbershop.us | Network Solutions | Page under construction |
| rudysbarbershopfranchise.com | Network Solutions | Page under construction |
| rudysbarbershopfranchise.net | Network Solutions | Page under construction |
| rudysfranchise.com | Network Solutions | Page under construction |
| rudysfranchise.net | Network Solutions | Page under construction |
| rudysbarbershop.com | Media Temple | DV Server |

## Rudy's Barbership Holdings LLC

**Schedule 3.13(a)(vi): Material Unregistered Trademarks and Social Media Accounts**

| Trademark | URL | Owner of Record / Registrar |
|---|---|---|
| Facebook<br>Username: rudysbarbershop | https://www.facebook.com/rudysbarbershop/ | Greg.seals@rudysbarbershop.com |
| Instagram<br>Username: rudysbarbershop | | bekah.malover@rudysbarbershop.com |
| Twitter<br>Username: rudysbarbershop | https://twitter.com/rudysbarbershop?lang=en | greg.seals@rudysbarbershop.com |
| YouTube<br>Username: RudysBarbershopTV | https://www.youtube.com/user/RudysBarbershopTV | info@rudysbarbershop.com |
| Glassdoor<br>Username: Rudy's Barbershop | https://www.glassdoor.com/Overview/Working-at-Rudy-s-Barbershop-EI_IE645692.11,28.htm | jobs@rudysbarbershop.com |
| Indeed.com<br>Username: Rudy's Barbershop | https://www.indeed.com/cmp/Rudy's-Barbershop-1 | jobs@rudysbarbershop.com |
| vimeo<br>Username: Rudy's Barbershop | https://vimeo.com/user7193478 | info@rudysbarbershop.com |
| Google My Business - 29th Street | https://business.google.com/reviews/l/06030456455035064074 | greg.seals@rudysbarbershop.com |
| Google My Business - Ballard | https://business.google.com/reviews/l/04613358515022200269 | greg.seals@rudysbarbershop.com |
| Google My Business - Bellevue | https://business.google.com/dashboard/l/12706987226937191912 | greg.seals@rudysbarbershop.com |
| Google My Business - Belltown | https://business.google.com/reviews/l/04275296066634376399 | greg.seals@rudysbarbershop.com |
| Google My Business - Capitol Hill | https://business.google.com/reviews/l/16608644097700701403 | greg.seals@rudysbarbershop.com |
| Google My Business - Columbia City | https://business.google.com/reviews/l/15423534723125090387 | greg.seals@rudysbarbershop.com |
| Google My Business - East Capitol Hill | https://business.google.com/reviews/l/16441065869336551418 | greg.seals@rudysbarbershop.com |
| Google My Business - Fremont | https://business.google.com/reviews/l/08710293980548450371 | greg.seals@rudysbarbershop.com |
| Google My Business - Laurelhurst | https://business.google.com/reviews/l/10463975789228231188 | greg.seals@rudysbarbershop.com |
| Google My Business - Microsoft Commons | https://business.google.com/reviews/l/13621521019405643861 | greg.seals@rudysbarbershop.com |
| Google My Business - Phinney Ridge | https://business.google.com/reviews/l/14110751179598764610 | greg.seals@rudysbarbershop.com |
| Google My Business - Pioneer Square | https://business.google.com/reviews/l/09444031239372901287 | greg.seals@rudysbarbershop.com |
| Google My Business - Redmond | https://business.google.com/reviews/l/04168221976366861273 | greg.seals@rudysbarbershop.com |
| Google My Business - Tacoma | https://business.google.com/reviews/l/00734479986246156868 | greg.seals@rudysbarbershop.com |
| Google My Business - University | https://business.google.com/reviews/l/04131846440252889897 | greg.seals@rudysbarbershop.com |
| Google My Business - West Seattle | https://business.google.com/reviews/l/06938671319735871620 | greg.seals@rudysbarbershop.com |
| Google My Business - Division | https://business.google.com/reviews/l/15868348357378589543 | greg.seals@rudysbarbershop.com |
| Google My Business - Pearl | https://business.google.com/reviews/l/07620478896181782445 | greg.seals@rudysbarbershop.com |
| Google My Business - Mississippi | https://business.google.com/reviews/l/10995937246329492923 | greg.seals@rudysbarbershop.com |
| Google My Business - Highland Park | https://business.google.com/reviews/l/12643258315515910318 | greg.seals@rudysbarbershop.com |
| Google My Business - Main Street | https://business.google.com/reviews/l/03294004916710405255 | greg.seals@rudysbarbershop.com |
| Google My Business - Melrose | https://business.google.com/reviews/l/02369417427893542633 | greg.seals@rudysbarbershop.com |
| Google My Business - Silverlake | https://business.google.com/reviews/l/11079503409189269212 | greg.seals@rudysbarbershop.com |
| Google My Business - Studio City | https://business.google.com/reviews/l/15082289431595591649 | greg.seals@rudysbarbershop.com |
| Google My Business - Ponce City Market | https://business.google.com/reviews/l/16292330255724664879 | greg.seals@rudysbarbershop.com |
| Yelp - 29th Street | https://biz.yelp.com/home/QsM-C77H8tRo-uCZFNPzqg/ | greg.seals@rudysbarbershop.com |
| Yelp - Ballard | https://biz.yelp.com/home/v5FdjtpzDtvyidDHuQ6ylQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Bellevue | https://biz.yelp.com/home/3BSAh4PT6eiKYEYrzY-ZOg/ | greg.seals@rudysbarbershop.com |
| Yelp - Belltown | https://biz.yelp.com/home/flwa8N7KWqm_WdSjiB6r9g/ | greg.seals@rudysbarbershop.com |
| Yelp - Capitol Hill | https://biz.yelp.com/home/alnUjQudDUZS-WpdyY6vqw/ | greg.seals@rudysbarbershop.com |
| Yelp - Columbia City | https://biz.yelp.com/home/FohsJdAHtMs30Nvy_oCWdw/ | greg.seals@rudysbarbershop.com |
| Yelp - East Capitol Hill | https://biz.yelp.com/home/xExEf3GiUF9R19NYubScJQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Fremont | https://biz.yelp.com/home/FEYUCxUzZAFh1uIn6b8K6A/ | greg.seals@rudysbarbershop.com |
| Yelp - Laurelhurst | https://biz.yelp.com/home/GlGMhFaNxHlTCwdE8IxxpA/ | greg.seals@rudysbarbershop.com |
| Yelp - Microsoft Commons | https://www.yelp.com/biz/rudys-barbershop-redmond-2 | greg.seals@rudysbarbershop.com |
| Yelp - Phinney Ridge | https://biz.yelp.com/home/pcTL8KmqlVubMT1Mowc6PQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Pioneer Square | https://biz.yelp.com/home/m-W8H5RxaHhkifPtFe8V4w/ | greg.seals@rudysbarbershop.com |
| Yelp - Redmond | https://biz.yelp.com/home/90XhigxbRz6L75UlmABAew/ | greg.seals@rudysbarbershop.com |
| Yelp - Tacoma | https://biz.yelp.com/home/7o6k_vpJt8DpNGcR51tZlQ/ | greg.seals@rudysbarbershop.com |
| Yelp -  University | https://biz.yelp.com/home/E1_svh9AzG6IbDw7_Y4sKw/ | bekah.malover@rudysbarbershop.com |
| Yelp - West Seattle | https://biz.yelp.com/home/-A40ZnfCdnLTRW08V0dPfA/ | greg.seals@rudysbarbershop.com |
| Yelp - Division | https://biz.yelp.com/home/uaemvqbw5wYEUaWqRiJryQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Pearl | https://biz.yelp.com/home/DBgblPdRL4pBN1LyYZNQ8w/ | greg.seals@rudysbarbershop.com |
| Yelp - Mississippi | https://biz.yelp.com/home/Y_AG5JdvJVjJn7w_GnBnrw/ | greg.seals@rudysbarbershop.com |
| Yelp[ - Highland Park | https://biz.yelp.com/home/bpWqzlujnC1o4LzJFjaPOQ/ | greg.seals@rudysbarbershop.com |
| Yelp - Main Street | https://biz.yelp.com/home/TZ2VWwBgj9PH5F3msiT9Zg/ | greg.seals@rudysbarbershop.com |
| Yelp - Melrose | https://biz.yelp.com/home/cO4Xt_k3kHu_yD0ltZJPjA/ | greg.seals@rudysbarbershop.com |
| Yelp - Silverlake | https://biz.yelp.com/home/diZ4vrXkNThGlRDPJjlBgA/ | greg.seals@rudysbarbershop.com |
| Yelp - Studio City | https://biz.yelp.com/home/7_jm_0maAT6NW0p3EXDT7w/ | greg.seals@rudysbarbershop.com |
| Yelp - Ponce City Market | https://biz.yelp.com/home/G6TUgtPImuR6tgv-tQbzpw/ | greg.seals@rudysbarbershop.com |

## Rudy's Barbership Holdings LLC

**Schedule 3.13(d): IP used in business (excluding off-the-shelf software for which Seller pays < $30k per year per title)**

| License | Annual Cost | Comment |
|---------|-------------|---------|
| Zenoti | $ 127,500.00 | Monthly cost is $400 per month per store. Monthly cost for HQ is $625 per month. |

**Rudy's Barbership Holdings LLC**

**Schedule 3.13(e): Options with respect to, or encumbrances placed on Owned Intellectual Property or Sellers' use thereof**

None

# Rudy's Barbership Holdings LLC

## Schedule 3.13(f): Allegations or notices of IP Violations

None

# Rudy's Barbership Holdings LLC

## Schedule 3.13(j): Software not in good working condition

None

**Rudy's Barbership Holdings LLC**
Schedule 3.14(b) Business Permits

| License Type | Holder | Issuer | Number | Issue Date | Expiration Date |
|---|---|---|---|---|---|
| Georgia DOL Account | Rudy's Southeast, LLC | Georgia Dept. of Labor | 337875-09 | 1/6/2020 | 12/31/2020 |
| Seller's Permit - Studio City | Rudy's Hollywood LLC | CA State Board of Equalization | 097-514913 00007 AC | 8/1/2015 | |
| Seller's Permit - Melrose | Rudy's Hollywood LLC | CA State Board of Equalization | 97-514913 00003 AC | 9/4/2004 | |
| Seller's Permit - Silverlake | Rudy's Hollywood LLC | CA State Board of Equalization | 97-514913 00002 AC | 11/1/2000 | |
| Seller's Permit - Main Street | Rudy's Hollywood LLC | CA State Board of Equalization | 97-514913 00004 AC | 7/14/2006 | |
| Seller's Permit - Highland Park | Rudy's Hollywood LLC | CA State Board of Equalization | 97-514913 00009 AC | 10/1/2016 | |
| Seller's Permit - WA State | Rudy's Barbershop, LLC | WA State Department of Revenue | A05 8637 21 | 1/1/2018 | 12/31/2021 |
| DOL Account - 29th Street | Rudy's New York, LLC | NY State Dept of Labor | 50-42256 1 | | |
| Appearance Enhancement Business License | Rudy's New York, LLC | NY State License Center | 2015AE-02230 | 3/2/2012 | 5/12/2020 |
| Barber Shop Owner License | Rudy's New York, LLC | NY State License Center | 21RU1416458 | 1/3/2014 | 6/29/2020 |
| Salon/Shop License - Ballard | Rudy's Barbershop LLC | WA State Dept of Licensing | 21564 | 7/31/2006 | 7/31/2020 |
| Alarm Permit - Bellevue | Rudy's Barbershop | City of Bellevue | | | |
| Business License - Ballard | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 6 | | |
| Business License - Ballard | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | 511146 | 1/1/2020 | 12/31/2020 |
| Salon/Shop License - Bellevue | Rudy's Barbershop LLC | WA State Dept. of Licensing | 43039 | 7/22/2014 | 7/22/2020 |
| Business License, snack bar endorsement - Capitol Hill | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 1, snack bar 423339 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Bellevue | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 4, snack bar 350544 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Fremont | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 2, snack bar 423399 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Belltown | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 3, snack bar 423500 | 2/7/2020 | 2/28/2021 |
| Business License - University | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 5 | | |
| Business License, snack bar endorsement - Redmond | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 7, snack bar 429022 | 2/7/2020 | 2/28/2021 |
| Business License- West Seattle | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 8 | | |
| Business License, snack bar endorsement - East Capitol Hi | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 9, snack bar 423621 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Pioneer Square | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 10, snack bar 422600 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Tacoma | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 11, snack bar 423340 | 2/7/2020 | 2/28/2021 |
| Business License, snack bar endorsement - Columbia City | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 13, snack bar 406441 | 2/7/2020 | 2/28/2021 |
| Business License- Microsoft Commons | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 14 | | |
| Business License, snack bar endorsement - Laurelhurst | Rudy's Barbershop LLC | WA State Dept of Revenue | UBI 601-774-908 15, snack bar 424949 | 2/7/2020 | 2/28/2021 |
| Business License - Rudy's Holdings | Rudy's Barbershop Holdings, LLC | WA State Dept of Revenue | UBI 603-315-148 1 | | |
| Business License - CapitolHill | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 1 | 1/1/2020 | 12/31/2020 |
| Business License - Fremont | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 2 | 1/1/2020 | 12/31/2020 |
| Business License - Belltown | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 3 | 1/1/2020 | 12/31/2020 |
| Business License - University | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 5 | 1/1/2020 | 12/31/2020 |
| Business License - Phinney Ridge | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 4 | 1/1/2020 | 12/31/2020 |
| Business License - Ballard | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 6 | 1/1/2020 | 12/31/2020 |
| Business License - West Seattle | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 8 | 1/1/2020 | 12/31/2020 |
| Business License - East Capitol Hill | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 9 | 1/1/2020 | 12/31/2020 |
| Business License - Pioneer Square | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 10 | 1/1/2020 | 12/31/2020 |
| Business License - Columbia City | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 13 | 1/1/2020 | 12/31/2020 |
| Business License - Laurelhurst | Rudy's Barbershop LLC | City of Seattle Dept. of Finance | UBI 601-774-908 15 | 1/1/2020 | 12/31/2020 |
| Business License - Holdings | Rudy's Barbershop Holdings, LLC | City of Seattle Dept. of Finance | 765325 | 1/1/2020 | 12/31/2020 |
| Salon/Shop License - Belltown | Rudy's Barbershop LLC | WA State Dept. of Licensing | 6772 | 9/15/2019 | 9/15/2020 |
| Salon/Shop License - Capitol Hill | Rudy's Barbershop LLC | WA State Dept. of Licensing | 6771 | ######## | 10/22/2020 |
| Salon/Shop License - Columbia City | Rudy's Barbershop LLC | WA State Dept. of Licensing | 50226 | 8/26/2019 | 8/26/2020 |
| Salon/Shop License - Fremont | Rudy's Barbershop LLC | WA State Dept. of Licensing | 6770 | ######## | 10/22/2020 |
| Salon/Shop License - Headquarters | Rudy's Barbershop LLC | WA State Dept. of Licensing | 49224 | 4/29/2020 | 4/29/2021 |
| Salon/Shop License - Laurelhurst | Rudy's Barbershop LLC | WA State Dept. of Licensing | 52470 | 6/13/2019 | 6/13/2020 |
| Salon/Shop License - Microsoft | Rudy's Barbershop LLC | WA State Dept. of Licensing | 51575 | 2/16/2020 | 2/16/2021 |
| Salon/Shop License - Phinney Ridge | Rudy's Barbershop LLC | WA State Dept. of Licensing | 9069 | ######## | 10/22/2020 |
| Salon/Shop License - Pioneer Square | Rudy's Barbershop LLC | WA State Dept. of Licensing | 49090 | 4/18/2020 | 4/18/2021 |
| Salon/Shop License - Redmond | Rudy's Barbershop LLC | WA State Dept. of Licensing | 37851 | 7/9/2019 | 7/9/2020 |
| Salon/Shop License - Tacoma | Rudy's Barbershop LLC | WA State Dept. of Licensing | 49963 | 7/28/2019 | 7/28/2020 |
| Salon/Shop License - University | Rudy's Barbershop LLC | WA State Dept. of Licensing | 9070 | ######## | 10/22/2020 |
| Salon/Shop License - West Seattle | Rudy's Barbershop LLC | WA State Dept. of Licensing | 44983 | ######## | 12/10/2020 |
| Salon/Shop License - East Capitol Hill | Rudy's Barbershop LLC | WA State Dept. of Licensing | 45778 | 3/20/2020 | 3/20/2021 |
| Establishment License - Studio City | Rudy's Hollywood, LLC | CA Board of Barbering and Cosmetology | A300048 | | 7/31/2021 |
| Police Commission Alarm Permit - Studio City | Rudy's Hollywood, LLC | City of Los Angeles | 0286511-08 | ######## | |
| Tax Registration Certificate - Studio City | Rudy's Hollywood, LLC | City of Los Angeles | 179191-0004-4 | ######## | |
| POS Scanner Registration - Studio City | Rudy's Hollywood, LLC | County of Los Angeles | 121464 | ######## | 12/31/2020 |
| Tax Registration Certificate - Hiohland Park | Rudy's Hollywood, LLC | City of Los Angeles | 179191-0005-2 | 10/1/2016 | |
| Establishment License - Highland Park | Rudy's Hollywood, LLC | CA Board of Barbering and Cosmetology | A306876 | | 7/31/2020 |
| Tax Registration Certificate - Melrose | Rudy's Hollywood, LLC | City of Los Angeles | 179191-0002-8 | 1/1/2015 | |
| Establishment License - Melrose | Rudy's Hollywood, LLC | CA Board of Barbering and Cosmetology | A233289 | | 4/30/2020 |
| Establishment License - Silverlake | Rudy's Hollywood, LLC | CA Board of Barbering and Cosmetology | A211436 | | 9/30/2020 |
| Police Commission Alarm Permit - Highland Park | Rudy's Hollywood, LLC | City of Los Angeles | 0394572-10 | ######## | |
| Tax Registration Certificate - Silverlake | Rudy's Hollywood, LLC | City of Los Angeles | 179191-0001-0 | 1/1/2015 | |
| Tax Registration - City of Atlanta | Rudy's Southeast, LLC | City of Atlanta | 176301004 | | 4/1/2021 |
| Georgia Certificate of Authority | Rudy's Southeast, LLC | State of Georgia | 16088501 | 1/1/2017 | |
| Amusement Permit - City of Portland - Pearl | Rudy's Portland LLC | City of Portland | 501463 | 1/1/2020 | 12/31/2020 |
| Amusement Permit - City of Portland - Division | Rudy's Portland LLC | City of Portland | 501437 | 1/1/2020 | 12/31/2020 |
| Amusement Permit - City of Portland - Mississippi | Rudy's Portland LLC | City of Portland | 501462 | 1/1/2020 | 12/31/2020 |
| POS Scanner Registration - Main Street | Rudy's Hollywood, LLC | County of Los Angeles | 121463 | ######## | 12/31/2020 |
| POS Scanner Registration - Highland Park | Rudy's Hollywood, LLC | County of Los Angeles | 122026 | ######## | 12/31/2020 |
| POS Scanner Registration - Silverlake | Rudy's Hollywood, LLC | County of Los Angeles | 121461 | ######## | 12/31/2020 |
| POS Scanner Registration - Melrose | Rudy's Hollywood, LLC | County of Los Angeles | 121462 | ######## | 12/31/2020 |
| Cosmetology Facility License - Ponce City Market | Rudy's Southeast, LLC | State of Georgia Professional Licensing | COSA061961 | 1/31/2020 | 6/30/2021 |
| Oregon Saves | Rudy's Portland LLC | OregonSaves | 0116825-9 | | |
| Atlanta Alarm Permit | Rudy's Southeast, LLC | City of Atlanta | 88102 | 1/10/2020 | 1/10/2021 |
| City of Redmond Business License - Redmond shop | | | RED17-000313 | | |
| City of Redmond Business License - Microsoft shop | | | RED17-000370 | | |
| City of Tacoma General Business License - Tacoma shop | Rudy's Barbershop, LLC | City of Tacoma | 300112594 | 7/15/2016 | 12/31/2020 |

# Rudy's Barbership Holdings LLC

**Schedule 3.16: Contractual Relationships with Insiders**

| Party | Description |
|---|---|
| Kathleen Trent | Employment Agreement |

# Rudy's Barbership Holdings LLC

## Schedule 5.2: Exceptions to Prohibited Business Activities

None

## Rudy's Barbership Holdings LLC

**Schedule 5.2(b)(xi): Lease Rejections**

| Description / Address | Type | Lessor | Lessee |
|---|---|---|---|

# Rudy's Barbership Holdings LLC

## Schedule 5.4(a): List of required third party consents or sublicenses

| Party | Description |
|---|---|
| Zenoti | License transfer requires approval from Zenoti |
| ADP | Not transferable |
| Klaviyo | Not transferable |
| Shopify Plus | License transfer requires approval from Shopify |

# Exhibit B

to Sale Order

(Schedule of Executory
Contracts& Unexpired
Leases)

**Rudy's Barbershop Holdings LLC**
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| **Store Lease** | | | | | |
| Ballard store lease<br>5229 Ballard Ave NW<br>Seattle, WA 98107 | Store location lease | Nuts N' Bolts Property (Lessor); The Derschang Group (Sublessor) | Rudy's Barbershop, LLC | 12/31/2020 | $ 4,758.71 |
| Bellevue store lease<br>10713 Main Street<br>Bellevue WA 98004 | Store location lease | Main Street Partners of Bellevue | Rudy's Barbershop, LLC | 5/31/2021 | $ - |
| Belltown store lease<br>89 Wall Street<br>Seattle, WA 98121 | Store location lease | Modern Housing | Rudy's Barbershop, LLC | 4/30/2023 | $ 2,647.77 |
| Capitol Hill store lease<br>614 E Pine St<br>Seattle, WA 98122 | Store location lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $ 4,490.78 |
| Columbia City store lease<br>4903 Rainier Ave S<br>Seattle, WA 98118 | Store location lease | Pagliacci Pizza, Inc. | Rudy's Barbershop, LLC | 9/30/2026 | $ 5,868.29 |
| East Capitol Hill store lease<br>428 15th Ave E<br>Seattle, WA 98102 | Store location lease | Hunters Capital | Rudy's Barbershop, LLC | 2/28/2025 | **$ 5,267.45** |
| Fremont store lease<br>475 N 36th St<br>Seattle, WA 98103 | Store location lease | Blonde and Blonder, LLC | Rudy's Barbershop, LLC | 12/31/2026 | $ 2,356.48 |
| Headquarters office lease<br>1605 Boylston Ave, Ste 202<br>Seattle, WA 98122 | Office lease | Asana Partners | Rudy's Barbershop, LLC | 3/31/2023 | $ 10,570.82 |
| Laurelhurst store lease<br>3620 NE 45th St<br>Seattle WA 98105 | Store location lease | Bike Path 1, LLC | Rudy's Barbershop, LLC | 7/31/2027 | **$ 5,189.78** |
| Microsoft Commons store lease<br>West Campus Commons Submixer<br>15255 NE 40th St<br>Redmond, WA 98052 | Store location lease | Compass Group Inc, | Rudy's Barbershop, LLC | 5/1/2020 (renews annually) | $ 8,588.55 |
| Phinney Ridge Lease<br>6415 Phinney Ave N<br>Seattle, WA 98103 | Store location lease | Sandra C. Bengtsson | Rudy's Barbershop, LLC | 6/30/2024 | **$ 4,253.91** |
| Pioneer Square store lease<br>109 1st Ave S<br>Seattle WA 98103 | Store location lease | Terry Denny Building LLC | Rudy's Barbershop, LLC | 3/31/2026 | **$ 8,100.66** |
| Redmond store lease<br>16095 Cleveland St, #106<br>Redmond, WA 98052 | Store location lease | Equity Residential Management | Rudy's Barbershop, LLC | 10/31/2022 | $ - |
| Tacoma store lease<br>2722 N Proctor St, Ste 106<br>Tacoma 98103 | Store location lease | Proctor Investors LLC | Rudy's Barbershop, LLC | 9/30/2026 | $ 4,291.98 |
| University store lease<br>4738 University Way NE<br>Seattle WA 98105 | Store location lease | Vinh Tran | Rudy's Barbershop, LLC | 5/31/2020 | $ 2,664.42 |
| West Seattle store lease<br>4480 Fauntleroy Way SW<br>Seattle WA 98126 | Store location lease | Westseattle LLC | Rudy's Barbershop, LLC | 9/30/2024 | $ - |
| Highland Park store lease<br>5633 N Figueroa St<br>Los Angeles, CA 90042 | Store location lease | Accipiter Investments, LLC | Rudy's Hollywood, LLC | 5/31/2026 | $ 6,285.91 |
| Main Street store lease<br>3101 Main St, Suite C<br>Santa Monica CA 98122 | Store location lease | 3101 Main St LLC | Rudy's Hollywood, LLC | 4/30/2022 | $ 11,809.15 |
| Melrose store lease<br>8019 Melrose Ave<br>Los Angeles CA 90046 | Store location lease | Sefton Property Management (8017 Melrose Ave Property LLC) | Rudy's Hollywood, LLC | 3/15/2025 | $ 6,375.00 |
| Silverlake store lease<br>4451 Sunset Blvd<br>Los Angeles CA90027 | Store location lease | Harry J Morley | Rudy's Hollywood, LLC | 7/31/2024 | $ 8,735.00 |
| Studio City store lease<br>12238A Ventura Blvd<br>Studio City CA 91604 | Store location lease | AVV Properties | Rudy's Hollywood, LLC | 8/31/2025 | $ 4,381.10 |
| Division store lease<br>3005 SE Division S<br>Portland OR 97214 | Store location lease | 3015 Division LLC | Rudy's Portland LLC | 12/31/2023 | $ 1,008.00 |
| Mississippi store lease<br>3956 N Mississippi Ave<br>Portland OR 97227 | Store location lease | Pearson Equity Management LLC | Rudy's Portland LLC | 9/30/2025 | $ 3,747.37 |
| Pearl store lease<br>212 NW 13th Ave<br>Portland OR 97209 | Store location lease | Wieden + Kennedy Inc. | Rudy's Portland LLC | 2/29/2024 | $ - |
| 29th St store lease<br>14 W 29th St<br>New York NY 10001 | Store location lease | GFI Hospitality (1186 Broadway, LLC) | Rudy's New York LLC | 1/31/2022 | **$ 14,968.50** |
| Ponce City Market store lease<br>650 North Ave NE S202<br>Atlanta, GA 30308 | Store location lease | Jamestown PCM Master Tenant | Rudy's Southeast LLC | 2/29/2024 | $ - |
| **STORE LEASE TOTAL** | | | | | $ 126,359.63 |

**Rudy's Barbershop Holdings LLC**
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| **Other** | | | | | |
| Copiers Northwest | Samsung printer lease for HQ | Copiers Northwest | Rudy's Barbershop, LLC | 9/17/2020 | $       344.59 |
| Cisco Meraki - all locations | 5-year license for enterprise | Cisco Systems Capital, Inc. | Rudy's Barbershop, LLC | 10/24/2023 | $    1,719.10 |
| Pacific Office Automation, Inc. (TIAA Commerical Finance) | Konica Printer for HQ | TIAA Commerical Finance, Inc. | Rudy's Barbershop, LLC | 9/17/2020 | $       758.58 |
| SoCal Self Storage | Storage unit in LA | So Cal Self Storage Hollywood & Bronson, LLC | Rudy's Hollywood, LLC | Month-to-month (requires 7 days notice) | $       411.00 |
| Public Storage | Storage unit in Seattle | Public Storage (WA) | Rudy's Barbershop, LLC | Month-to-month (requires 30 days notice) | $              - |
| Access | Records and Information storage | Access Corp | Rudy's Barbershop, LLC | Month-to-month | $       335.86 |
| Wave Broadband | ISP for Pioneer Square location | Wave Broadband | Rudy's Barbershop | 6/1/2020 | $              - |
| Time Warner | ISP for Studio City location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $              - |
| Time Warner | ISP for 29th Street location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $              - |
| Time Warner | ISP for Highland Park location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $              - |
| Time Warner | ISP for Melrose location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $              - |
| Time Warner | ISP for Silverlake location | Time Warner Business Class | Rudy's Barbershop | month-to-month | $              - |
| Comcast Business | ISP for Tacoma location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $              - |
| Comcast Business | ISP for Laurelhurst location | Comcast Business | Rudy's Barbershop | 10/21/2022 | $              - |
| Comcast Business for CH - 614 E Pine St, Seattle WA 98122 | ISP for Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/19/2022 | $              - |
| Comcast Business | ISP for Columbia City location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $              - |
| Comcast Business | ISP for West Seattle location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $              - |
| Comcast Business | ISP for East Capitol Hill location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $              - |
| Comcast Business | ISP for Headquarters location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $              - |
| Comcast Business | ISP for Ballard location | Comcast Business | Rudy's Barbershop | 10/14/2022 | $              - |
| Comcast Business | ISP for Mississippi location | Comcast Business | Rudy's Barbershop | 10/17/2022 | $              - |
| Comcast Business | ISP for Division location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $              - |
| Comcast Business | ISP for Pearl location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $              - |
| Comcast Business | ISP for Ponce City Market location | Comcast Business | Rudy's Barbershop | 1/19/2021 | $              - |
| Comcast Business | ISP for University location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $              - |
| Comcast Business | ISP for Fremont location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $              - |
| Comcast Business | ISP for Phinney Ridge location | Comcast Business | Rudy's Barbershop | 3/9/2021 | $              - |
| Frontier Communications | ISP for Microsoft location | Frontier Communications | Rudy's Barbershop | 3/30/2021 | $              - |
| Wave Broadband | ISP for Belltown location | Wave Broadband | Rudy's Barbershop | 4/12/2020 | $              - |
| Allstream | ISP for Bellevue location | Allstream Communications | Rudy's Barbershop | 8/14/2020 | $              - |
| Time Warner | ISP for Main Street location | Time Warner Business Class | Rudy's Barbershop | 7/26/2020 | $              - |
| Soundline Communications | Phone service provider for all locations | Soundline Communications | Rudy's Barbershop | month-to-month | $              - |
| Ehrlich Pest Control | Pest Control for Ponce City Market location | | | | $              - |
| Background Source Intl | Background check vendor | | Rudy's Barbershop Holdings LLC | N/A | $              - |
| KDH Consulting, Inc. | IT consulting vendor | KDH Consulting, Inc | Rudy's Barbershop Holdings LLC | 30 days notice | $              - |
| UPS | Shipping rate agreement for webstore | United Parcel Service Inc. | Rudy's Barbershop Holdings LLC | 30 days notice | $              - |
| American Society of Composers, Authors and Publishers (ASCAP) | Music licensing for stores | | Rudy's Barbershop Holdings LLC | 5/1/2020 | $              - |
| Broadcast Music, Inc (BMI) | Music licensing for stores | BMI | Rudy's Barbershop | 2/2/2021 | $              - |
| Navia Benefit Solutions Client Pay | Commuter benefits administration | Navia | Rudy's Barbershop Holdings LLC | Term at any time | $              - |
| Ibsen Impound | Tow authority for Bellevue parking lot | Ibsen | Rudy's Barbershop | | $              - |
| Stericycle | Stericycle for Pioneer Square location | Stericycle | Rudy's Barbershop | 6/1/2020 | $              - |
| Stericycle | Stericycle for Highland Park location | Stericycle | Rudy's Barbershop | 11/1/2020 | $              - |
| Stericycle | Stericycle for Columbia City location | Stericycle | Rudy's Barbershop | 10/1/2020 | $              - |
| Stericycle | Stericycle for Tacoma location | Stericycle | Rudy's Barbershop | 9/1/2020 | $              - |
| Stericycle | Stericycle for Laurelhurst location | Stericycle | Rudy's Barbershop | 8/1/2020 | $              - |
| Stericycle | Stericycle for Ponce City Market location | Stericycle | Rudy's Barbershop | 3/1/2021 | $              - |
| ADP Master Services Agreement | HRIS and payroll software | ADP | Rudy's Barbershop, LLC | 30 days notice | $              - |
| Zenoti Subscription Agreement | Store POS | Zenoti | Rudy's Barbershop Holdings LLC | Term at any time | $              - |
| Stripe, Inc. | Merchant Service Agreement for shops | Stripe | Per location | Term at any time | $              - |
| Staples Advantage | Shop office supplies vendor | Staples Advantage | Rudy's Barbershop | Term at any time | $              - |
| Shopify Plus | Website and webstore hosting | Shopify, Inc | Rudy's Barbershop | Term at any time | $              - |
| Shipping Easy | | | | | $              - |
| PayPal | Ecommerce payments | PayPal, Inc. | Rudy's Barbershop | Term at any time | $              - |
| Gravity Payments | Merchant service processing for ecomm | Gravity Payments | | | $              - |
| WageWorks | | | | | $              - |
| eFax | Fax service for 206-726-0200 (HQ) | eFax | Rudy's Barbershop | Term at any time | $              - |
| MapBox | Dynamic maps for website | | Rudy's Barbershop | Term at any time | $              - |
| InFlow Cloud | Wholesale inventory software | | | April, 2020 | $              - |
| Kaye Smith | | | | | $    38,096.57 |
| GAR labs | | | | | $              - |

**Rudy's Barbershop Holdings LLC**
Cure Amounts

| Description / Address | Type | Lessor | Lessee | Expiration | Cure Amount |
|---|---|---|---|---|---|
| Vantage Packaging | | | | | $    - |
| Rogue & Co. | Product sales agreement | Rogue & Co | | 10/1/2020 | |
| Rogue & Co Online Sales Agreement | Product sales agreement | Rogue & Co | | 10/1/20 or on 5 days notice | |
| Premera | | | | | $    - |
| Delta Dental | | | | | $    - |
| Cascade Centers | | | | | $    - |
| Vision Service Plan | | | | | $    - |
| UNUM | | | | | $    - |
| ADT Security Services - 614 E Pine St, Seattle WA 98122 | Security for Capitol Hill location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 6415 Phinney Ave N, Seattle WA 98103 | Security for Phinney Ridge location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 8019 Melrose Ave, Los Angeles CA 90046 | Security for Melrose location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 5633 N Figueroa St, Los Angeles CA 90042 | Security for Highland Park location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4451 W Sunset Blvd, Los Angeles CA 90027 | Security for Silverlake location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 3101 Main St, Santa Monical CA 90405 | Security for Main Street location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 12238A Ventura Blvd, Studio City CA 91604 | Security for Studio City location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 650 North Ave N, Ste 202, Atlanta GA 30308 | Security for Ponce City Market location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 14 W 29th St, New York NY 10001 | Security for 29th Street location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 212 NW 14th Ave, Portland OR 97209 | Security for Pearl District location | ADT (Annual Payment) | Rudy's Barbershop | | $    - |
| ADT Security Services - 3005 SE Division St, Portland OR 97202 | Security for Division location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 3956 N Mississippi Ave, Portland OR 97227 | Security for Mississippi location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 10713 Main Street, Bellevue WA 98004 | Security for Bellevue location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 16095 Cleveland St Ste 106, Redmond WA 98052 | Security for Redmond location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 428 15th Ave E, Seattle WA 98112 | Security for East Capitol Hill location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 109 1st Ave S, Seattle WA 98104 | Security for Pioneer Square location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Service - 3620 45th Ave St, Seattle WA 98105 | Security for Laurelhurst location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4480 Fauntleroy Way SW, Seattle WA 98126 | Security for West Seattle location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4903 Rainier Ave S, Seattle WA 98118 | Security for Columbia City location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 4738 University Way NE, Seattle WA 98105 | Security for University Way location | ADT | Rudy's Barbershop | | $    - |
| ADT Security Services - 2722 N Proctor St, Tacoma WA 98407 | Security for Tacoma location | ADT | Rudy's Barbershop | | $    - |
| EDS Security - 475 N 36th St, Seattle WA 98103 | Security for Fremont location | EDS | Rudy's Barbershop | | $    - |
| EDS Security - 1605 Boylston Ave, Ste 202, Seattle WA 98122 | Security for Headquarters | EDS | Rudy's Barbershop | | $    - |
| Comcast Business - 16095 Cleveland St Ste 106, Redmond WA 98052 | ISP for Redmond location | Comcast Business | | month-to-month | $    - |
| Beekeeper Marketing | Amazon marketing | Beekeeper Marketing | Rudy's Barbershop Holdings, LLC | 30 days notice | $    - |
| T-Mobile | Cell backups for firewalls | T-Mobile | Rudy's | N/A | $    - |
| Salon Centric | | | | | $    - |
| Culligan water for HQ and shops | Water service | Culligan | Rudy's Barbershop | | $    - |
| Microsoft Office 365 Business Essentials | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $    - |
| Microsoft Office 365 Business Premium | SaaS | Microsoft Corp. | Rudy's Barbershop | 11/12/2020 | $    - |
| Subtenant to 4459 Sunset Boulevard, Los Angeles, CA 90027 | Sublease | Rudy's Hollywood, LLC | Caffe Vita, Inc. (Subtenant) | 7/31/2020 | $    - |
| Subtenant to 4480 Fauntleroy Way SW, Seattle, WA | Sublease | Rudy's Barbershop, LLC | Julie's Coffee, LLC | 9/30/2024 | $    - |
| 4480 Fauntleroy Way SW, Seattle, WA | Use of Restroom Agreement | Rudy's Barbershop, LLC (Restroom Accessibility Information) | Julie's Coffee, LLC (Mobile Unit/Food Vendor) | N/A | $    - |
| Hazardous Waste Removal, Recycling and Disposal | Service Agreement | Athens Services | | N/A | $    - |
| Culligan Water for Melrose Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Silverlake Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Main Street Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Highland Park Shop | Water service | Culligan of Santa Ana | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Studio City Shop | Water service | Culligan | Rudy's Hollywood, LLC | | $    - |
| Culligan Water for Ponce City Market shop | Water service | Culligan of Atlanta | Rudy's Southeast LLC | | $    - |
| Culligan water for WA shops | Water service | Culligan | Rudy's Barbershop, LLC | | $    - |
| Sierra Springs Water for Division shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| Sierra Springs water for Pearl shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| Sierra Springs water for Mississippi shop | Water service | Sierra Springs | Rudy's Portland, LLC | | $    - |
| **OTHER CONTRACT TOTAL** | | | | | **$    41,665.70** |
| **TOTAL CURE AMOUNTS** | | | | | **$   168,025.33** |